Mark C. Scarsi (SBN 183926)
mscarsi@milbank.com
MILBANK, TWEED, HADLEY
& McCLOY LLP
2029 Century Park East, 33rd Floor
Los Angeles, California 90067
Telephone:  (424) 386-4000
Facsimile:    (213) 629-5063

Thomas A. Arena (*pro hac vice* pending)
tarena@milbank.com
MILBANK, TWEED, HADLEY
& McCLOY LLP
28 Liberty Street
New York, NY 10005
Telephone:  (212) 530-5000
Facsimile:    (212) 822-5828

*Attorneys for Defendant Milbank, Tweed, Hadley & McCloy LLP*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STM ATLANTIC N.V., a Dutch company; STM GROUP, INC., a Delaware corporation; EMIL YOUSSEFZADEH, an individual; and UMAR JAVED, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>DONG YIN DEVELOPMENT (HOLDINGS) LIMITED, a Hong Kong unlimited company; CHINA ORIENT ASSET MANAGEMENT (INTERNATIONAL) HOLDING LIMITED, a Hong Kong limited company; LUDWIG CHANG, an individual; YUEN-CHEUNG WONG, an individual; BONNIE SHIYUE LIU, an individual; SHIWEN FAN, an individual; and MILBANK, TWEED, HADLEY & McCLOY LLP, a limited liability partnership,<br><br>Defendants. | Case No. 2:18-cv-01269-JLS-JCG<br>Assigned to Hon. Josephine L. Staton<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT MILBANK, TWEED, HADLEY & McCLOY LLP TO DISMISS THE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**HEARING**<br><br>Date:      November 30, 2018<br>Time:      2:30 p.m.<br>Place:     Courtroom 10A<br><br>SAC Filed:      Aug. 14, 2018<br>Trial Date:      None set |

---

**MOTION TO DISMISS OF DEFENDANT MILBANK**

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

   **PLEASE TAKE NOTICE THAT** on November 30, 2018, at 2:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10A (10th Floor) of the above-entitled Court, located at the Ronald Reagan Federal Building and United States Courthouse, 411 W. Fourth St., Santa Ana, CA, 92701, Defendant Milbank, Tweed, Hadley & McCloy LLP ("<u>Milbank</u>") will, and hereby does, move this Court under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for an order dismissing all causes of action in the Second Amended Complaint ("<u>SAC</u>") of Plaintiffs STM Atlantic N.V., STM Group, Inc., Emil Youssefzadeh, and Umar Javed (collectively, "<u>Plaintiffs</u>") alleged against Defendant Milbank for lack of subject matter jurisdiction, lack of standing, and failure to state a claim upon which relief may be granted.

   Milbank moves to dismiss six of the SAC's causes of action on the following grounds:

| Cause of Action | Grounds for Dismissal |
|---|---|
| First Cause of Action for Conspiracy to Defraud | 1. Plaintiffs' claim is not ripe for adjudication because the alleged harms are uncertain or contingent on future events.<br>2. Failure to state a claim for fraud.<br>3. Failure to state a claim for conspiracy. |
| Second Cause of Action for Fraud | 1. Plaintiffs' claim is not ripe for adjudication because the alleged harms are uncertain or contingent on future events. |

**MOTION TO DISMISS OF DEFENDANT MILBANK**

| | |
|---|---|
| | 2. Failure to state a claim because the alleged harms are speculative and insufficient to sustain a fraud claim. |
| | 3. Failure to meet the heightened pleading requirements of Rule 9(b). |
| Fifth Cause of Action for Civil RICO Conspiracy in Violation of Title 18, United States Code, Sections 1962(d) and 1964(c) | 1. Plaintiffs' claim is not ripe for adjudication because the alleged harms are uncertain or contingent on future events. |
| | 2. Plaintiffs lack standing to bring civil RICO claims because they have not alleged concrete financial harm. |
| | 3. Plaintiffs lack standing to bring civil RICO claims because the alleged harms do not accrue to them and there is no authority for Plaintiffs to bring this suit derivatively. |
| | 4. Plaintiffs lack standing because the alleged fraud did not proximately cause any injury to Plaintiffs. |
| | 5. Failure to sufficiently allege a pattern of racketeering activity. |
| | 6. Failure to sufficiently allege that Milbank directed the affairs of a racketeering enterprise. |

**MOTION TO DISMISS OF DEFENDANT MILBANK**

| | |
|---|---|
| Sixth Cause of Action for Civil RICO Conspiracy in Violation of Title 18, United States Code, Sections 1962(c) and 1964(c) | 1. Plaintiffs' claim is not ripe for adjudication because the alleged harms are uncertain or contingent on future events.<br><br>2. Failure to state a claim for civil RICO.<br><br>3. Failure to state a claim for conspiracy. |
| Seventh Cause of Action for Civil RICO Conspiracy in Violation of Title 18, United States Code, Sections 1962(d) and 1964(c) | 1. Plaintiffs' claim is not ripe for adjudication because the alleged harms are uncertain or contingent on future events.<br><br>2. Failure to state a claim for civil RICO.<br><br>3. Failure to state a claim for conspiracy. |
| Ninth Cause of Action for Violation of California Unfair Competition Law, California Business & Professions Code Section 17200 | 1. Plaintiffs' claim is not ripe for adjudication because the alleged harms are uncertain or contingent on future events.<br><br>2. Failure to state a claim because the alleged harms are speculative and insufficient to sustain a claim. |

Moreover, the Court should dismiss the claims against Milbank in the SAC without leave to amend because Plaintiffs can allege no set of facts that would cure the deficiencies in each of these six causes of action, and therefore amendment would be futile.

**MOTION TO DISMISS OF DEFENDANT MILBANK**

1         This Motion is based on this Notice of Motion; the files and records in this

2    action; and such further evidence, argument and authorities as may be presented to the

3    Court prior to or at the hearing of this Motion.

4         This Motion is made following the conference of counsel pursuant to L.R. 7-3

5    which took place on September 13, 2018.

6

7    Dated: September 21, 2018          Respectfully submitted,

8

9                                       By: _/s/ Mark C. Scarsi_____

10                                      MILBANK, TWEED, HADLEY & MᶜCLOY LLP

11                                      Mark C. Scarsi
12                                      2029 Century Park East, 33rd Floor
                                        Los Angeles, California 90067
13                                      Telephone:   (424) 386-4000
                                        Facsimile:    (213) 629-5063
14                                      Email:        mscarsi@milbank.com

15                                      Thomas A. Arena
                                        28 Liberty Street, 47th Floor
16                                      New York, New York 10005
                                        Phone:        (212) 530-5891
17                                      Fax:          (212) 822-5891
                                        Email:        tarena@milbank.com

18                                      *Attorneys for Defendant Milbank*

19

20

21

22

23

24

25

26

27

28

**MOTION TO DISMISS OF DEFENDANT MILBANK**

# <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ...................................................................... 1

II.   THE OPERATIVE ALLEGATIONS OF THE SECOND AMENDED
     COMPLAINT ................................................................................................. 2

    A.   Plaintiffs .............................................................................................. 2

    B.   Milbank's Representation of Dong Yin ............................................... 3

    C.   Milbank's Advice Regarding Compliance with Export
        Control Laws ....................................................................................... 3

    D.   The Facility Agreement Between Amore and Bronzelink ................... 4

    E.   The Share Purchase Agreement and Shareholders
        Agreement Between Bronzelink and GIP-Cayman ............................. 4

    F.   Milbank's Subsequent Representation of GIP-Cayman ..................... 5

    G.   Youssefzadeh's and Javed's Resignation from GIP-
        Cayman ................................................................................................ 6

    H.   GIP-Cayman Continues to Pursue Its Business Plan .......................... 6

III.  APPLICABLE PLEADING STANDARDS .................................................. 7

IV.  ARGUMENT ................................................................................................. 8

    A.   Plaintiffs' Claims Are Not Ripe for Adjudication .............................. 8

        1.   *Plaintiffs Have Suffered No Immediate or Certain Harm*
            *from GIP-Cayman's Conduct of Its Business* ................................. 8

        2.   *Plaintiffs Have Not Lost an "Opportunity" to Share in GIP-*
            *Cayman's Anticipated Future Profits* ............................................. 10

        3.   *Plaintiffs Suffered No Cognizable Injury from the Dilution of*
            *Their Shares in GIP-Cayman or Their Loss of Majority*
            *Control of GIP-Cayman* ............................................................... 11

    B.   The Civil RICO Claims Fail as a Matter of Law ............................. 12

        1.   *Plaintiffs Have Not Suffered a Concrete Financial Injury to*
            *Their Business or Property* ........................................................... 13

i

a.  Plaintiffs Impermissibly Seek Redress for Harms Allegedly Suffered by GIP-Cayman ................................... 13

b.  Plaintiffs Do Not Allege Any Concrete, Financial Loss ..................................................................... 15

c.  Plaintiffs Fail to Plead that the Alleged Fraud Proximately Caused Any Injury ......................................... 16

2.  *Plaintiffs Fail to Plead a Pattern of Racketeering Activity* ........... 17

3.  *The Court Should Dismiss Plaintiffs' Civil RICO Claims Against Milbank Because Plaintiffs Have Not Alleged that Milbank Directed the Affairs of an Enterprise* .............................. 20

C.  The Court Should Dismiss the Claims for Fraud and Conspiracy to Defraud Against Milbank ................................... 22

D.  The Court Should Dismiss Plaintiffs' Claim for Violation of the UCL .................................................................... 23

E.  The Court Should Dismiss the SAC Without Leave to Amend ...................................................................... 25

V.  CONCLUSION ................................................................ 25

**MOTION TO DISMISS OF DEFENDANT MILBANK**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajetunmobi v. Clarion Mortg. Capital, Inc.*,
  No. 12-0568, 2012 WL 2945051 (C.D. Cal. July 17, 2012), *aff'd*, 595
  F. App'x 680 (9th Cir. 2014) ................................................................. 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 7

*Babbitt v. United Farm Workers Nat'l Union*,
  442 U.S. 289 (1979) ............................................................................... 7

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ............................................................. 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 7

*In re Bofi Holding, Inc. S'holder Litig.*,
  No. 15-02722, 2018 WL 2731954 (S.D. Cal. June 7, 2018) ................. 10

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
  519 F.3d 969 (9th Cir. 2008) ........................................................... 13, 15

*Carter v. Berger*,
  777 F.2d 1173 (7th Cir. 1985) .............................................................. 14

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) .............................................................. 25

*Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*,
  No. C-11-2573 EMC, 2011 WL 6099394 (N.D. Cal. Dec. 7, 2011) ......... 7, 9

*Clinton v. Acequia, Inc.*,
  94 F.3d 568 (9th Cir. 1996) ................................................................ 7, 9

*Colenzo v. FDIC*,
  No. 09-0816, 2011 WL 13177024 (C.D. Cal. Apr. 25, 2011) ................ 22

*Collins v. U.S. Bank, Nat'l Ass'n*,
  No. 14-7726, 2015 WL 470289 (C.D. Cal. Feb. 3, 2015) ................ 23, 24

**MOTION TO DISMISS OF DEFENDANT MILBANK**

*Coons v. Lew*,
    762 F.3d 891 (9th Cir. 2014) ......................................................................... 7

*CornerStone Staffing Sols., Inc. v. James*,
    No. 12-1527, 2014 WL 984673 (N.D. Cal. Mar. 7, 2014) ..................................... 11

*Durning v. Citibank, Int'l*,
    990 F.2d 1133 (9th Cir. 1993) ..................................................................... 17

*Eller v. EquiTrust Life Ins. Co.*,
    778 F.3d 1089 (9th Cir. 2015) ..................................................................... 18

*Express, LLC v. Fetish Grp., Inc.*,
    464 F. Supp. 2d 965 (C.D. Cal. 2006) ......................................................... 24

*First Pac. Bancorp., Inc. v. Bro*,
    847 F.2d 542 (9th Cir. 1988) ....................................................................... 15

*Gomez v. Guthy-Renker, LLC*,
    No. 14-01425, 2015 WL 4270042 (C.D. Cal. July 13, 2015) ................................. 21

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    492 U.S. 229 (1989) ................................................................................... 17

*Hamid v. Price Waterhouse*,
    51 F.3d 1411 (9th Cir. 1995) ....................................................................... 13

*Harmoni Int'l Spice, Inc. v. Wenxuan Bai*,
    No. 16-00614, 2016 WL 9275400 (C.D. Cal. Nov. 14, 2016) ............................... 16

*Hecht v. Commerce Clearing House, Inc.*,
    897 F.2d 21 (2d Cir. 1990) ......................................................................... 15

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992) ............................................................................. 13, 16

*Izenberg v. ETS Servs., LLC*,
    589 F. Supp. 2d 1193 (C.D. Cal. 2008) ....................................................... 15

*Jarvis v. Regan*,
    833 F.2d 149 (9th Cir. 1987) ....................................................................... 17

*Kan-Di-Ki, LLC v. Sorenson*,
    723 F. App'x 432 (9th Cir. 2018) ................................................................. 17

iv

**MOTION TO DISMISS OF DEFENDANT MILBANK**

*Lumens Co. Ltd. v. GoEco LED LLC*,
    No. 14-01286, 2018 WL 1942768 (C.D. Cal. Jan. 3, 2018) .................................. 10

*McDonald v. Palacios*,
    710 F. App'x 318 (9th Cir. 2018) .............................................................. 16, 17

*Medallion Television Enters., Inc. v. SelecTV of Cal., Inc.*,
    833 F.2d 1360 (9th Cir. 1987) ....................................................................... 17

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
    730 F.3d 1111 (9th Cir. 2013) ....................................................................... 16

*Ove v. Gwinn*,
    264 F.3d 817 (9th Cir. 2001) ......................................................................... 25

*Ozeran v. Jacobs*,
    No. 17-7965, 2018 WL 1989525 (C.D. Cal. Apr. 25, 2018)............................. 13

*Pillsbury, Madison & Sutro v. Lerner*,
    31 F.3d 924 (9th Cir. 1994) ........................................................................... 13

*Ponzio v. 3M Co.*,
    No. 16-3521, 2016 WL 6407376 (C.D. Cal. Oct. 28, 2016)............................ 10

*Rand v. Anaconda-Ericsson, Inc.*,
    794 F.2d 843 (2d Cir. 1986) .......................................................................... 14

*Religious Tech. Ctr. v. Wollersheim*,
    971 F.2d 364 (9th Cir. 1992) ......................................................................... 17

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)....................................................................................... 20

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
    682 F.3d 1043 (D.C. Cir. 2012)..................................................................... 21

*Saul v. United States*,
    928 F.2d 829 (9th Cir. 1991) ......................................................................... 25

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) ....................................................................... 17

*Shaw v. Nissan N. Am., Inc.*,
    220 F. Supp. 3d 1046, 1052 (C.D. Cal. 2016)................................................ 13

**MOTION TO DISMISS OF DEFENDANT MILBANK**

*Shum v. Intel Corp.*,
   630 F. Supp. 2d 1063 (N.D. Cal. 2009) ................................................... 23

*Song Fi, Inc. v. Google, Inc.*,
   No. 14-5080, 2016 WL 1298999 (N.D. Cal. Apr. 4, 2016) ..................................... 11

*Sparling v. Hoffman Constr. Co.*,
   864 F.2d 635 (9th Cir. 1988) ............................................................... 14

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................... 7

*Streamcast Networks, Inc. v. Skype Techs., S.A.*,
   No. 06-391, 2006 WL 5437323 (C.D. Cal. Sept. 14, 2006) .................................... 18

*Taylor v. Bettis*,
   976 F. Supp. 2d 721 (E.D.N.C. 2013) ....................................................... 21

*Urica, Inc. v. Pharmaplast S.A.E*,
   No. 11-02476, 2013 WL 12123230 (C.D. Cal. May 6, 2013) ................................... 10

*Uthe Tech. Corp. v. Aetrium, Inc.*,
   No. 16-16664, 2018 WL 3215143 (9th Cir. July 2, 2018) ..................................... 15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................... 7, 22

*Walter v. Drayson*,
   538 F.3d 1244 (9th Cir. 2008) ............................................................. 21

*Welte v. Wells Fargo Bank, N.A.*,
   No. 13-00463, 2013 WL 6728889 (C.D. Cal. Dec. 18, 2013) ................................. 24

*Williams v. Wraxall*,
   33 Cal. App. 4th 120 (1995), *as modified on denial of reh'g* (Apr. 12,
   1995) ................................................................................... 22

**Statutes**

18 U.S.C. § 1962(c) ............................................................... 2, 12, 21

18 U.S.C. § 1962(d) ............................................................... 2, 3, 12

18 U.S.C. § 1964(c) .................................................................. 2, 3

Cal. Penal Code § 494(a) ............................................................... 24

vi

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................*passim*

Fed. R. Civ. P. 12(b)(1) ................................................................ 1

Fed. R. Civ. P. 12(b)(6) ................................................................ 1

vii

**MOTION TO DISMISS OF DEFENDANT MILBANK**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Milbank, Tweed, Hadley & McCloy LLP ("Milbank") hereby moves to dismiss the First, Second, Fifth, Sixth, Seventh, and Ninth Causes of Action filed against Milbank in the Second Amended Complaint ("SAC") by Plaintiffs STM Atlantic N.V. ("STM Atlantic"), STM Group, Inc. ("STM Group"), Emil Youssefzadeh, and Umar Javed (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of ripeness and standing, and 12(b)(6) for failure to state a claim upon which relief may be granted.

## I.   **PRELIMINARY STATEMENT**

Plaintiffs' SAC is devoid of any claims that are appropriate for resolution by this Court.  Plaintiffs' basic story—that a group of defendants conspired to induce Plaintiffs to sell a majority stake in non-party Global IP-Cayman ("GIP-Cayman") to a company controlled by PRC nationals in violation of the US export control laws—suffers from a fatal flaw.  To date, there has been no finding of any violation.  GIP-Cayman is still operating.  Boeing is still building a satellite for GIP-Cayman, and SpaceX is still on board to launch the satellite.  And Plaintiffs still have a right to share in the profits of GIP-Cayman.  Whether, and to what extent, GIP-Cayman may run afoul of the US export control laws in the future is pure speculation and certainly not a matter that is ripe for this Court.

Plaintiffs have also failed to allege how they, personally, suffered damages from the alleged RICO conspiracy.  Any damages caused by a violation of the export control laws would be suffered by GIP-Cayman, not by Plaintiffs—who at best own a minority interest in GIP-Cayman.  But the law on this point is clear, a RICO claim for injury to a corporate entity must be brought by that entity.  Therefore, even if the RICO claims were valid (and they are not), Plaintiffs are simply the wrong parties to bring them.

Finally, Plaintiffs' eleventh-hour addition of Milbank as a defendant does nothing to bolster the viability of Plaintiffs' claims.  While Milbank represented a

1

1    lender to non-party Bronzelink, a Hong Kong-based entity that made a large equity

2    investment in GIP-Cayman, Plaintiffs admit in the SAC that Milbank did so with

3    Plaintiffs' full knowledge.  Milbank did not represent Plaintiffs, did not represent

4    Bronzelink, and represented GIP-Cayman only after GIP-Cayman entered into the

5    transactions Plaintiffs allege constituted the conspiracy.  There are simply no facts in

6    the SAC to support a claim that Milbank in any way directed the alleged RICO

7    conspiracy.  To the contrary, the limited allegations added in the SAC regarding

8    Milbank merely describe a law firm acting in the ordinary course as a service

9    provider.  And under clear law from this Court, such actions do not create RICO

10    liability.  Plaintiffs' fraud claims against Milbank fare no better.  While Plaintiffs

11    complain that Milbank did not share with them the lending agreement between

12    Milbank's client and Bronzelink, Plaintiffs fail to allege that Milbank had any duty to

13    do so.

14        Because Plaintiffs' claims are not ripe, do not allege Plaintiffs suffered any

15    direct harm, and are at odds with clear legal principles, the Court should dismiss them.

16   **II.   THE OPERATIVE ALLEGATIONS OF THE SECOND AMENDED
17        COMPLAINT**

      **A.   *Plaintiffs***

18        The SAC alleges that Plaintiff STM Atlantic is a company founded by Plaintiff

19    Youssefzadeh for the purpose of developing a satellite project (the "Satellite Project")

20    designed to deliver internet service to parts of Africa.  SAC ¶¶ 54-55.  According to

21    the SAC, STM Atlantic sought to participate in the Satellite Project through its

22    shareholding in GIP-Cayman to which STM Atlantic assigned its business, technical,

23    and marketing plans.  SAC ¶¶ 153-54.  The SAC alleges that, to obtain the necessary

24    capital to pursue this business venture, Plaintiffs solicited a sizeable equity investment

25    in GIP-Cayman by Bronzelink, a Hong Kong-based company, in return for a majority

26    interest in GIP-Cayman.  SAC ¶¶ 78, 151.  The SAC alleges that Bronzelink thereafter

27    received a loan from Dong Yin, a company organized under the laws of the PRC, and

28

2

**MOTION TO DISMISS OF DEFENDANT MILBANK**

1   invested $175 million in GIP-Cayman in exchange for newly issued shares in that

2   company.  SAC ¶ 152.  As a result of Bronzelink's equity infusion, STM Atlantic's

3   ownership stake in GIP-Cayman went from 63% to 15.75%.  SAC ¶ 151.

4         The SAC alleges that Plaintiff Youssefzadeh is the founder of STM Group, the

5   parent company of Plaintiff STM Atlantic, and that, through a family trust,

6   Youssefzadeh owns a majority interest in STM Group.  SAC ¶ 9.  The SAC alleges

7   that, after the formation of GIP-Cayman, Plaintiffs Youssefzadeh and Javed became

8   officers and directors of that company.  SAC ¶¶ 74, 76.  While the SAC alleges that

9   STM Atlantic owns a minority interest in GIP-Cayman (SAC ¶ 151), the SAC does

10  not allege that either Plaintiff Youssefzadeh or Javed owns shares in GIP-Cayman.

11        **B.    *Milbank's Representation of Dong Yin***

12        The SAC alleges that "at various times relevant to the events in question

13  [Milbank] has represented STM Group, Dong Yin, Amore and GIP-Cayman."  SAC

14  ¶ 5.  The SAC alleges that in 2010, STM Group engaged Milbank with respect to the

15  "Satellite Project," but contains no other allegations regarding the legal services

16  Milbank provided to STM Group at that time (SAC ¶ 69), nor does it allege that

17  Milbank's representation of STM Group continued after 2010.

18        The SAC alleges that beginning in September 2015, five years after Milbank's

19  representation of STM Group, Plaintiffs discussed the possibility of Dong Yin

20  financing Bronzelink's equity investment in GIP-Cayman.  SAC ¶ 79.  The SAC

21  acknowledges that Milbank agreed to represent Dong Yin in this transaction (SAC

22  ¶ 106), and alleges numerous communications involving Plaintiffs in which Milbank

23  represented Dong Yin's interests, without objection by Plaintiffs (*see, e.g.*, SAC ¶¶

24  112, 117, 120, 123, 130, 140).

25        **C.    *Milbank's Advice Regarding Compliance with Export Control Laws***

26        The SAC is replete with allegations that Milbank advised Dong Yin and the

27  other parties to the financing transaction of their obligation to comply with US export

28  control laws.  SAC ¶¶ 106-07, 117, 233.  The SAC also alleges that Milbank reminded

3

**MOTION TO DISMISS OF DEFENDANT MILBANK**

Plaintiffs Youssefzadeh and Javed, and others, that the parties should "be mindful of any direct/indirect PRC (not [Hong Kong]) influence or control of GIP, via Board Members or otherwise, and need[ed] to be accordingly careful as regards the identity, domicile and bona fides of the Board members."  SAC ¶ 117.  The SAC alleges that, consistent with Milbank's advice, representatives of Bronzelink informed Plaintiffs that Bronzelink was an "independent, stand-alone entity" (SAC ¶ 118), and that representatives of Dong Yin advised Plaintiffs that Dong Yin had no intention of asserting control over GIP-Cayman or the Satellite Project (SAC ¶¶ 109, 115, 120).

### D. *The Facility Agreement Between Amore and Bronzelink*

The SAC alleges that Milbank negotiated an agreement between Amore (a Dong Yin subsidiary) and Bronzelink, pursuant to which Amore provided a $175 million lending facility to Bronzelink (the "Facility Agreement").  SAC ¶ 141. Although the SAC uses the pejorative "secret" to describe the terms of that agreement and alleges that Milbank "refused to provide Mr. Youssefzadeh or Mr. Javed with a copy of the Facility Agreement" (SAC ¶ 133), the SAC fails to allege that Milbank, as counsel to Dong Yin, had any right or obligation to provide Plaintiffs with a copy of this agreement to which Plaintiffs were not parties.  Nor do Plaintiffs allege that they sought a copy of the Facility Agreement from Bronzelink, with which Plaintiffs were engaged in direct negotiations over Bronzelink's equity investment in GIP-Cayman.

### E. *The Share Purchase Agreement and Shareholders Agreement Between Bronzelink and GIP-Cayman*

Although the SAC alleges that the rights afforded to Bronzelink in its Share Purchase Agreement ("SPA") with GIP-Cayman did not mirror the terms of the Facility Agreement between Amore and Bronzelink (SAC ¶ 131), the SAC does not allege that Milbank negotiated the terms of the SPA or that Milbank represented any of Bronzelink, GIP-Cayman or Plaintiffs in this transaction.  Nor does the SAC allege that Milbank had any role in the negotiation of the Shareholders Agreement ("SHA") between Bronzelink and GIP-Cayman and others, including Plaintiffs Youssefzadeh

4

1    and Javed.  The only entity that was a party to both sets of transactions is Bronzelink,

2    which is not a party to this action.

3        The SAC alleges that, pursuant to the SPA, Bronzelink made a $175 million

4    equity investment in GIP-Cayman in exchange for the issuance of new shares—an

5    equity infusion critical to GIP-Cayman's pursuit of the Satellite Project.  SAC ¶¶ 78,

6    141.  The SHA, according to the SAC, provided that Bronzelink would be entitled to

7    appoint six of the nine members to the GIP-Cayman Board of Directors and to

8    designate the Chairman of the GIP-Cayman Board.  SAC ¶ 160.  Thus, Plaintiffs

9    knowingly negotiated an agreement that gave majority control over GIP-Cayman to

10   Bronzelink in exchange for Bronzelink's equity investment.

11       **F.    *Milbank's Subsequent Representation of GIP-Cayman***

12       The SAC alleges that in July 2016, after the Facility Agreement between Amore

13   and Bronzelink closed, Milbank agreed to provide legal services to GIP-Cayman in

14   connection with its business plan to manufacture and launch a satellite.  SAC ¶ 172.

15   The SAC makes clear that GIP-Cayman had great success in pursuit of that business

16   strategy: in August 2016, it entered into a contract with Boeing to manufacture the

17   satellite for the Satellite Project, and in March 2017, it entered into a contract with

18   SpaceX to provide launch services for the Satellite Project.  SAC ¶¶ 176, 225.

19       The SAC alleges that, from April 2016 through July 2017, Dong Yin

20   representatives purportedly sought to exercise "dominance and control over the

21   governance, management and operations of the Satellite Project."  SAC ¶ 190.  The

22   SAC conclusorily alleges that various individuals nominally acting as representatives

23   of Bronzelink were secretly acting at the direction of Dong Yin.  *See, e.g.*, SAC ¶¶

24   113, 118, 120.  The SAC, however, contains no particularized allegations that any of

25   the Bronzelink representatives were in fact beholden to Dong Yin.  Moreover, the

26   SAC fails to plead facts showing that Milbank had actual knowledge that Bronzelink

27   representatives were acting at the direction of Dong Yin.

28

**MOTION TO DISMISS OF DEFENDANT MILBANK**

## G.    *Youssefzadeh's and Javed's Resignation from GIP-Cayman*

The SAC alleges that, after Bronzelink's equity investment in GIP-Cayman, Plaintiffs and representatives of Bronzelink became involved in a series of disputes relating to the operations of GIP-Cayman, including a dispute over whether Dong Yin controlled Bronzelink.  *See* SAC ¶ 238.  The SAC alleges that, although Plaintiffs Youssefzadeh and Javed formally resigned from their officer positions at GIP-Cayman, they were in fact "constructively discharged" against their will.[1]  SAC ¶ 257. The SAC does not allege that Milbank had any role in the resignations of Plaintiffs Youssefzadeh and Javed.

As it relates to the operation of GIP-Cayman, the only allegations relating to Milbank refer to an April 2017 memorandum that Milbank prepared for GIP-Cayman outlining relevant legal provisions of US export control laws.  SAC ¶ 233.  Although the SAC alleges that Milbank failed to disclose in the memorandum Dong Yin's purported control of Bronzelink (SAC ¶ 234), Plaintiffs do not allege that Milbank's legal memorandum misstated the law in any respect or that in addition to summarizing applicable law, it sought to set forth the conditions of Dong Yin's loan to Bronzelink. Nor does the SAC allege that Milbank owed any duty to Plaintiffs in providing this advice.

## H.    *GIP-Cayman Continues to Pursue Its Business Plan*

The SAC makes no allegation that either Boeing or SpaceX has sought to terminate, or otherwise is refusing to perform under, its contractual arrangement with GIP-Cayman.  The SAC also does not allege that any governmental or regulatory agency has conducted any investigations into a possible violation of US export control rules, much less that any such agency has concluded that GIP-Cayman or any Defendant has committed a violation.  According to the SAC, GIP-Cayman continues to pursue the Satellite Project.  SAC ¶ 277.

---

[1] These claims are subject to a separate action before this Court.  *See Youssefzadeh, et al., v. Global-IP Cayman, et al.*, No. 18-2552 (JLS)(JCG).

**MOTION TO DISMISS OF DEFENDANT MILBANK**

### III.   APPLICABLE PLEADING STANDARDS

Article III ripeness is a threshold issue of subject matter jurisdiction the Court should address before turning to the legal sufficiency of Plaintiffs' claims. *See, e.g., Coons v. Lew*, 762 F.3d 891, 897 (9th Cir. 2014).  A ripe action must present a "real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citation and internal quotation marks omitted). Thus, "[i]n the absence of an immediate and certain injury to a party, a dispute has not matured sufficiently to warrant judicial intervention." *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996) (citation and internal quotation marks omitted).  A case is not ripe for adjudication where it "involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, No. C-11-2573 EMC, 2011 WL 6099394, at *3 (N.D. Cal. Dec. 7, 2011) (citation and internal quotation marks omitted).

In addition to establishing legal standing, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Because each of the SAC's claims is grounded in fraud, they are all subject to the heightened pleading standards of Rule 9(b), which provides that "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

7

1   ("Rule 9(b) demands that, when averments of fraud are made, the circumstances

2   constituting the alleged fraud be specific enough to give defendants notice of the

3   *particular* misconduct . . . so that they can defend against the charge. . . .") (emphasis

4   added) (citation and internal quotation marks omitted).

5   **IV.   ARGUMENT**

6       **A.   *Plaintiffs' Claims Are Not Ripe for Adjudication***

7       Plaintiffs' claims center on an alleged conspiracy by Defendants to enable Dong

8   Yin, a PRC entity, to take control of GIP-Cayman in a manner purportedly violative

9   of US export control laws.  The SAC alleges three broad categories of harm resulting

10  from Defendants' purported conspiracy:  (1) alleged harms relating to GIP-Cayman's

11  conduct of its business (SAC ¶¶ 278(c), (d), (e), and (f)); (2) alleged harms resulting

12  from the deprivation of Plaintiffs' "opportunity . . . to obtain a share of the projected

13  US$1.5 billion or more in anticipated profits from the Satellite Project when

14  completed" (SAC ¶ 278(g)); and (3) alleged harms resulting from the dilution of STM

15  Atlantic's ownership stake in GIP-Cayman after Bronzelink's $175 million equity

16  infusion (SAC ¶¶ 278(a) and (b)).  As explained below, each of these alleged harms

17  either depends on a future contingency (*i.e.*, a regulatory agency finding a violation of

18  the US export control laws) or is not legally cognizable.  As a result, Plaintiffs' claims

19  are not ripe for this Court's adjudication.

20          **1.   Plaintiffs Have Suffered No Immediate or Certain Harm from
                   GIP-Cayman's Conduct of Its Business**

21
22      The SAC alleges a variety of purported injuries relating to GIP-Cayman's

23  conduct of its business.  These alleged injuries include (i) the loss of "the benefits of

24  the contracts" GIP-Cayman negotiated with Boeing and SpaceX, (ii) the loss of "the

25  benefits of the insurance" for GIP-Cayman, (iii) the supposed transfer to Dong Yin of

26  GIP-Cayman's proprietary business plans and marketing studies, and (iv) the loss of

27  GIP-Cayman's trademark.  SAC ¶ 278.  Putting aside that these injuries are alleged to

28  have been suffered by GIP-Cayman and not Plaintiffs (*see infra*, Section IV.B.1.a),

1   the SAC makes clear that these alleged harms are not "immediate and certain," and

2   therefore they cannot establish a basis for Plaintiffs' standing. *Clinton*, 94 F.3d at

3   572.

4        Plaintiffs have not lost any benefits of GIP-Cayman's contracts with Boeing

5   and SpaceX.  The SAC does not allege that Boeing has terminated its contract to build

6   the satellite or that SpaceX has cancelled its agreement to launch the satellite.  Nor do

7   Plaintiffs allege that Boeing and SpaceX identified any compliance issues when

8   alerted (by Plaintiffs) about possible US export control violations.  Any loss of

9   benefits under the Boeing and SpaceX contracts therefore would depend on a

10  contingent event in which Boeing or SpaceX cancels its contract with GIP-Cayman or

11  refuses to perform thereunder.  The SAC does not allege any facts supporting an

12  inference that any such event is immediate and certain.

13       Similarly, the SAC does not allege that GIP-Cayman has lost the "benefits of

14  the insurance terms" it negotiated.  As with the Boeing and SpaceX contracts, any loss

15  of insurance benefits would occur only in the event GIP-Cayman's insurer refused to

16  pay a claim under the policy it issued to GIP-Cayman.  The SAC does not allege,

17  however, that any insured under the GIP-Cayman insurance policy has made such a

18  claim, much less that GIP-Cayman's insurer has denied one.  This alleged injury also

19  does not establish an immediate and concrete harm sufficient to confer standing.

20       The SAC also fails to allege that GIP-Cayman has suffered losses associated

21  with any misuse of its proprietary business plans, marketing studies, or trademarks.

22  The SAC pleads only that Dong Yin purportedly gained access to this information or

23  property, not that it used any of this information to GIP-Cayman's financial detriment.

24  SAC ¶ 278.  As in *Clear Channel Outdoor, Inc.*, this alleged injury, like each of

25  Plaintiffs' other supposed injuries, depends on "uncertain or contingent future events

26  that may not occur as anticipated, or indeed may not occur at all."  2011 WL 6099394,

27  at *3 (citation and internal quotation marks omitted).  Accordingly, this alleged injury

28  also does not provide a basis for Plaintiffs' legal standing.

9

**MOTION TO DISMISS OF DEFENDANT MILBANK**

### 2. Plaintiffs Have Not Lost an "Opportunity" to Share in GIP-Cayman's Anticipated Future Profits

Plaintiffs seek damages based on their alleged lost opportunity "to obtain a share of the projected US$1.5 billion or more in anticipated profits from the Satellite Project when completed and the satellite is operational." SAC ¶ 278(g). Even assuming this allegation were well-pleaded, it states a speculative injury that is not actionable. *See, e.g., Lumens Co. Ltd. v. GoEco LED LLC*, No. 14-01286, 2018 WL 1942768, at *6 (C.D. Cal. Jan. 3, 2018) (dismissing claims for lost profits from prospective business opportunities with potential clients); *Urica, Inc. v. Pharmaplast S.A.E*, No. 11-02476, 2013 WL 12123230, at *9-10 (C.D. Cal. May 6, 2013) (collecting cases holding that claims based on lost profits are not actionable).

Plaintiffs' alleged loss of GIP-Cayman's future profits is unquestionably speculative and contingent. Plaintiffs do not allege that any conduct by Defendants has impeded the Satellite Project; Boeing and SpaceX continue to perform under their respective contracts, and Bronzelink's equity infusion has provided GIP-Cayman with the necessary capital to pursue its business plan. Instead, Plaintiffs allege that their right to participate in the project's "anticipated" future profits has been placed at risk because Dong Yin's purported control of Bronzelink is a violation of US export control laws. Plaintiffs, however, ignore that US government agencies, not private parties, are tasked with enforcing these regulations. *See, e.g., Ponzio v. 3M Co.*, No. 16-3521, 2016 WL 6407376, at *1 (C.D. Cal. Oct. 28, 2016) ("The Department of State Directorate of Defense Trade Controls ("DDTC") interprets and enforces ITAR. . . . "). Plaintiffs do not allege that any government agency has made a determination of a legal violation. Until then, Plaintiffs have not lost their "opportunity" to share in the project's anticipated future profits. *See, e.g., In re Bofi Holding, Inc. S'holder Litig.*, No. 15-02722, 2018 WL 2731954, at *11 (S.D. Cal. June 7, 2018) (alleged injury of "loss of revenues and profits due to any 'subsequent restatements'" not ripe because allegation was "not accompanied by any reference to an actual loss of revenue or profit").

In addition to being speculative and contingent, Plaintiffs' alleged loss of the opportunity to share in GIP-Cayman's anticipated "future" profits suffers from a further impairment.  Lost profits are not recoverable for claims sounding in fraud; instead, the measure of damages for claims based on fraud is "out-of-pocket" costs. *See, e.g., Song Fi, Inc. v. Google, Inc.*, No. 14-5080, 2016 WL 1298999, at *7 (N.D. Cal. Apr. 4, 2016) ("Under California law, when no fiduciary relationship exists, a fraudulent concealment plaintiff may only recover out-of-pocket losses."); *CornerStone Staffing Sols., Inc. v. James*, No. 12-1527, 2014 WL 984673, at *10 (N.D. Cal. Mar. 7, 2014) ("In California, in the absence of a fiduciary relationship, recovery for the tort of fraud is limited to the actual, out-of-pocket damages suffered by the plaintiff.").  Plaintiffs, however, do not allege any out-of-pocket costs resulting from the purported fraud.

### 3. Plaintiffs Suffered No Cognizable Injury from the Dilution of Their Shares in GIP-Cayman or Their Loss of Majority Control of GIP-Cayman

As a third category of injury, Plaintiffs allege they have suffered harm as a consequence of the dilution of STM Atlantic's ownership stake in GIP-Cayman to a minority interest after Bronzelink's $175 million equity infusion.  SAC ¶¶ 278(a) and (b).  These allegations fail to plead any cognizable injury to Plaintiffs.

The SAC identifies no harm resulting from Bronzelink's $175 million equity infusion into GIP-Cayman.  Bronzelink's investment in GIP-Cayman was not *per se* harmful to Plaintiffs.  Although the issuance of new shares did cause STM Atlantic's equity stake to shrink on a *percentage* basis, Bronzelink's massive investment dramatically increased the equity in GIP-Cayman—*i.e.*, STM Atlantic received a smaller slice of a much larger pie.  SAC ¶ 151.  The SAC does not allege that STM Atlantic lost its equity stake or that the value of GIP-Cayman has been diminished in the aftermath of Bronzelink's massive investment.  To the contrary, the SAC makes clear that without this equity infusion, GIP-Cayman would have lacked the financial wherewithal to enter into its contracts with Boeing and SpaceX.  SAC ¶¶ 75, 78.

11

Similarly, Plaintiffs' allegation that they lost "control of the Satellite Project" does not state an immediate and concrete injury to Plaintiffs. The SAC's allegation that STM Atlantic would not have given up majority control of GIP-Cayman had Plaintiffs known of Dong Yin's purported control of Bronzelink says only that Plaintiffs would not have negotiated the GIP-Cayman transaction with Bronzelink; it says nothing about whether that transaction caused Plaintiffs an immediate and concrete injury. That missing allegation is crucial to pleading that Plaintiffs have suffered an actionable injury. *See infra*, Section IV.B.1. As discussed above, the SAC fails to make any such allegation. No government agency has found that Bronzelink's investment in GIP-Cayman constitutes a violation of US export control laws. GIP-Cayman is continuing to pursue the Satellite Project. Boeing and SpaceX are not alleged to have terminated their contracts to build and launch the satellite. And Plaintiffs are still entitled to share in the project's future profits through whatever ownership interest they have in GIP-Cayman.

## B.   *The Civil RICO Claims Fail as a Matter of Law*

The SAC asserts three RICO claims against Milbank. The Fifth Cause of Action asserts a claim under §1962(d) and alleges that Defendants conspired to enable Dong Yin to acquire and maintain control over an alleged "Victim Enterprise." The Sixth and Seventh Causes of Action assert claims under §§ 1962(c) and 1962(d) relating to the purported existence of an alleged "Criminal Enterprise," which purportedly includes Defendants Dong Yin and COSEIG, together with non-parties Amore and Bronzelink, and after June 2016, non-parties GIP-Cayman and GIP-USA. The alleged purpose of the Criminal Enterprise was to defraud "Plaintiffs of their ownership interests in and control of the Satellite Project." SAC ¶ 324. The SAC does not allege that Milbank was a member of either the Victim Enterprise or the Criminal Enterprise. As set forth below, the SAC fails to plead, with the requisite particularity required by Rule 9(b), either Plaintiffs' standing or a cognizable civil RICO claim.

**MOTION TO DISMISS OF DEFENDANT MILBANK**

### 1. Plaintiffs Have Not Suffered a Concrete Financial Injury to Their Business or Property

Civil RICO prohibits the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1052 (C.D. Cal. 2016) (citation and internal quotation marks omitted).  In addition, a plaintiff asserting a civil RICO claim must allege a legally cognizable theory of damages and causation.  This requires the pleading of two additional elements.  First, a plaintiff must allege a concrete financial harm specific to the plaintiffs' business or property.  *See*, *e.g., Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (Ninth Circuit requires showing of concrete financial loss to specific business or property interest); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1419-21 (9th Cir. 1995) (affirming dismissal of RICO claims brought by plaintiffs not directly injured by alleged conduct).  Second, a RICO plaintiff must plead facts sufficient to show that the alleged racketeering activity proximately caused the injury to the plaintiff's business or property.  *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992) (proximate cause requires "direct relation between the injury asserted and the injurious conduct alleged"); *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928-31 (9th Cir. 1994) (affirming dismissal of RICO claims for failure to allege proximate causation); *Ozeran v. Jacobs*, No. 17-7965, 2018 WL 1989525, at *9-10 (C.D. Cal. Apr. 25, 2018) (dismissing plaintiffs' RICO claims where harm was not proximately caused by predicate acts).

As set forth below, Plaintiffs fail to allege a non-derivative injury; they fail to allege a concrete, financial harm to their business or property; and they fail to allege a direct relationship between any purported harm and the alleged racketeering activity.

### a. Plaintiffs Impermissibly Seek Redress for Harms Allegedly Suffered by GIP-Cayman

At the outset, Plaintiffs' RICO claims are infirm because any harm Plaintiffs suffered was derivative of the harm allegedly incurred by GIP-Cayman.  Courts have repeatedly held that a RICO claim for direct injury to a corporate entity can be

13

1  brought only by the injured entity.  *See, e.g.*, *Sparling v. Hoffman Constr. Co.,* 864

2  F.2d 635, 640-41 (9th Cir. 1988) (shareholders may not bring derivative RICO claims

3  where alleged harm accrued to corporation).  As the Ninth Circuit has stated, "[T]here

4  is no shareholder standing to assert RICO claims where the harm is derivative of harm

5  to the corporation."  *Sparling*, 864 F.2d at 640 (collecting cases); *see also Carter v.*

6  *Berger*, 777 F.2d 1173, 1175 (7th Cir. 1985) ("The investors in the firm suffer when

7  the firm incurs a loss, yet only the firm may vindicate the rights at issue. . . . .  These

8  principles should apply to RICO cases.").

9         Here, Plaintiffs lack standing to assert their RICO claims because whatever

10  alleged harm they suffered is derivative of the harm suffered by non-party GIP-

11  Cayman.  The thrust of the SAC is that Defendants participated in a scheme by which

12  Bronzelink representatives purportedly beholden to Dong Yin obtained control of the

13  GIP-Cayman Board and allowed Dong Yin to obtain access to unspecified GIP-

14  Cayman business plans, marketing studies, and intellectual property.  As a

15  consequence, Plaintiffs assert that Defendants have placed at risk GIP-Cayman's

16  future ability to engage in its satellite manufacture and launch operations.  But even

17  assuming these allegations were true, it is GIP-Cayman, not Plaintiffs, that allegedly

18  has suffered a direct injury as a result of the scheme described in the SAC.  *See, e.g.,*

19  *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986) ("The RICO

20  action . . . is a corporate asset, and shareholders cannot bring it in their own names

21  without impairing the rights of prior claimants to such assets.").

22         Nor are the SAC's allegations that Defendants fraudulently induced Plaintiffs

23  into selling "control of the Satellite Project" to Bronzelink sufficient to establish a

24  concrete, financial loss to Plaintiffs.  To begin with, the SAC does not allege that

25  Plaintiff Youssefzadeh or Javed ever owned any shares in GIP-Cayman; as to Plaintiff

26  Javed, the SAC does not even allege that he owned any shares in Plaintiff STM

27  Atlantic.  And, although the SAC alleges that STM Atlantic owned a stake in GIP-

28  Cayman, the SAC does not plead that STM Atlantic ever sold its stake in GIP-

14

**MOTION TO DISMISS OF DEFENDANT MILBANK**

Cayman.  Instead, the SAC alleges that Bronzelink acquired a new issuance of shares directly from GIP-Cayman in exchange for a $175 million equity infusion.  SAC ¶¶ 151-52.  The fact that a corporation's issuance of new shares dilutes an existing shareholder's ownership stake, however, does not suffice to confer standing on the shareholder to sue for an alleged fraud to the corporation.  *See, e.g., Uthe Tech. Corp. v. Aetrium, Inc.*, No. 16-16664, 2018 WL 3215143, at *2 (9th Cir. July 2, 2018) (shareholder claims alleging "devaluation of stock" are "'clearly derivative' because 'that is an injury that fell on every stockholder, majority and minority alike'") (quoting *Pan Pac. Retail Props., Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 968 (9th Cir. 2006)).

### b.   Plaintiffs Do Not Allege Any Concrete, Financial Loss

Even assuming Plaintiffs could plausibly allege that any purported harm they suffered was direct and not derivative, they lack standing because the SAC fails to allege any concrete, financial loss to Plaintiffs' business or property.  *See, e.g.*, *Canyon Cnty.*, 519 F.3d at 975-80 (dismissing civil RICO claims where plaintiffs' alleged injuries were not actual harms to plaintiffs' property interests).  Absent such allegations of concrete, financial injury, "the RICO claim cannot be sustained."  *First Pac. Bancorp., Inc. v. Bro*, 847 F.2d 542, 547 (9th Cir. 1988).

For the same reason that Plaintiffs' alleged harms are too speculative and contingent to constitute an immediate and concrete injury sufficient to confer Article III standing (*see supra*, Section IV.A), they do not qualify as a cognizable RICO injury.  *See Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008) (prospective injury alleging possibility of loss related to additional mortgage costs or attorney fees is "not actionable [because] RICO liability cannot attach to future contingent damages") (citation and internal quotation marks omitted); *see also Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (affirming dismissal where alleged lost business commissions had not occurred and were therefore "too speculative to confer standing").  In addition, as noted above, Plaintiffs'

15

alleged loss of the opportunity to share in GIP-Cayman's anticipated "future" profits is not a cognizable injury; lost profits are not recoverable for claims sounding in fraud. *See Harmoni Int'l Spice, Inc. v. Wenxuan Bai*, No. 16-00614, 2016 WL 9275400, at *17-18 (C.D. Cal. Nov. 14, 2016) (dismissing RICO claim for lack of standing where plaintiffs' alleged harm consisted of lost profits).

### c. Plaintiffs Fail to Plead that the Alleged Fraud Proximately Caused Any Injury

The SAC also fails to allege adequate proximate cause for its RICO claims—that is, "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. Because Plaintiffs' RICO claims are grounded in fraud, Plaintiffs must plead both transaction and loss causation. *See McDonald v. Palacios*, 710 F. App'x 318, 319 (9th Cir. 2018) ("Transaction and loss causation are distinct elements of a . . . fraud claim."). Transaction causation arises when misrepresentations are reasonably relied upon by the victim of the fraud when deciding to enter into the fraudulent transaction. *See, e.g., Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1121 (9th Cir. 2013). Loss causation, on the other hand, arises where there is "a causal connection between the alleged [misrepresentations] and the economic loss . . . suffered." *Id*.

Here, while the SAC attempts to plead a basis for transaction causation, it does not come close to pleading loss causation. At its core, the SAC alleges that Plaintiffs would have declined to do business with Bronzelink had they known Bronzelink was purportedly under Dong Yin's secret control. That allegation, however, pleads only transaction causation. Missing from the SAC are any allegations of loss causation that Bronzelink's investment in GIP-Cayman caused Plaintiffs to suffer any concrete, financial loss. To the contrary, the SAC pleads that the Bronzelink transaction enabled GIP-Cayman to obtain an equity infusion of $175 million that enabled it to pursue, and enter into, contracts with Boeing and SpaceX. There is no allegation that Defendants' alleged misrepresentations about Bronzelink's independence from Dong

16

1  Yin directly caused Plaintiffs to lose any money or property.  *McDonald*, 710 F.
2  App'x at 319 (dismissing claims for failure to plead loss causation).  Accordingly, the
3  SAC should be dismissed for failure to plead loss causation.

### 2.     Plaintiffs Fail to Plead a Pattern of Racketeering Activity

5  To allege a pattern of racketeering activity, a plaintiff must allege (1) that at
6  least "two acts of racketeering activity" were committed; (2) that the acts were
7  "related" in the sense that they had "the same or similar purposes, results, participants,
8  victims, or methods of commission, or otherwise are interrelated by distinguishing
9  characteristics"; and (3) that the acts "amount to or pose a threat of continued criminal
10  activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-41 (1989).  Specifically, a
11  plaintiff must allege either a series of related acts extending over a substantial period
12  of time (closed-ended continuity) or past conduct that projects into the future with a
13  threat of repetition (open-ended continuity). *Id*. at 241-42; *Religious Tech. Ctr. v.
14  Wollersheim*, 971 F.2d 364, 365-66 (9th Cir. 1992).

15  The Ninth Circuit has long held that, regardless of the number of predicate acts,
16  alleged conduct relating to a single scheme of finite duration does not constitute a
17  pattern of racketeering activity.  *See, e.g., Kan-Di-Ki, LLC v. Sorenson*, 723 F. App'x
18  432, 434 (9th Cir. 2018) (affirming dismissal of RICO claims on ground that "the
19  alleged scheme was too limited and short in duration to sufficiently establish closed-
20  ended continuity"); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992)
21  (holding that complaint failed to plead  pattern of racketeering where alleged conduct
22  had "singular purpose of impoverishing" plaintiff); *Durning v. Citibank, Int'l*, 990
23  F.2d 1133, 1139 (9th Cir. 1993) (affirming dismissal of RICO claims where predicate
24  acts "all . . . arose from a single, isolated event"); *Jarvis v. Regan*, 833 F.2d 149, 153
25  (9th Cir. 1987) (pattern requirement not satisfied by allegations that defendants
26  committed several acts of mail and wire fraud in obtaining federal grant); *Medallion
27  Television Enters., Inc. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1365 (9th Cir. 1987)
28  (no pattern of racketeering where plaintiff's allegations of mail fraud, wire fraud, and

17

1   interstate transport of stolen property amounted to "a single, isolated, allegedly

2   fraudulent inducement" to enter into contract); *see also Streamcast Networks, Inc. v.*

3   *Skype Techs., S.A.*, No. 06-391, 2006 WL 5437323, at \*8 (C.D. Cal. Sept. 14, 2006)

4   (no pattern of racketeering where complaint alleged "a single scheme with the singular

5   goal of effectuating the secretion of the . . . technology" from plaintiffs).

6           These cases require the dismissal of Plaintiffs' RICO claims.  Each of

7   Plaintiffs' racketeering claims alleges a single-purpose scheme by which Dong Yin

8   purportedly acquired improper control of GIP-Cayman.  SAC ¶ 324.  Not only do the

9   RICO claims center on the same alleged single-purpose scheme, but the predicate acts

10  all plead the same basic misconduct—Defendants' use of interstate wires in which

11  they failed to disclose the very fact in dispute—namely, Dong Yin's allegedly secret

12  control of Bronzelink.  But there is nothing surprising about sophisticated business

13  entities using telephones and email to communicate with one another to consummate a

14  large business transaction.  Plaintiffs should not be able to invoke otherwise

15  unremarkable email communications and telephone calls, made for the purpose of

16  finalizing a $175 million business deal, as predicate acts.  That is particularly the case

17  here, where most of the predicate acts allege that parties with no disclosure obligation

18  did not volunteer in communications with Plaintiffs the very fact in dispute—Dong

19  Yin's alleged control over Bronzelink.  Nor does the one predicate act not based on

20  wire fraud aid Plaintiffs in pleading a pattern of racketeering activity.  Racketeering

21  Act 31 pleads a money laundering violation in connection with Bronzelink's wire

22  transfer of $25 million to GIP-Cayman, made as part of Bronzelink's equity infusion

23  in that company.  SAC ¶ 315.  But this wire transfer did not deprive Plaintiffs of any

24  money or property; the wire transfer provided funding for GIP-Cayman to pursue its

25  satellite business.

26          As they relate to Milbank, the predicate acts are especially suspect given that

27  Milbank was not acting as counsel to Plaintiffs and did not owe them a disclosure

28  obligation.  *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015)

18

**MOTION TO DISMISS OF DEFENDANT MILBANK**

1    (affirming dismissal for failure to allege wire fraud through non-disclosure where no

2    disclosure duty existed).  Indeed, Racketeering Act Two alleges that Milbank phoned

3    Plaintiffs Youssefzadeh and Javed in December 2015 to confirm that the firm "could

4    help ensure compliance with U.S. export control laws" as Dong Yin's counsel (SAC

5    ¶ 313).  Nothing in this predicate act identifies any affirmative misconduct by

6    Milbank except its alleged failure to disclose the fact in dispute.  Similarly,

7    Racketeering Act Seven alleges only that a Milbank attorney told Plaintiffs

8    Youssefzadeh and Javed that Milbank represented Dong Yin, not Bronzelink—a

9    representation that is not alleged to have been false.

10          The predicate acts that allege Milbank made an affirmative misrepresentation to

11   Plaintiffs are also infirm.  Racketeering Act Five alleges that sometime during "Jan.-

12   Feb. 2016," a Milbank attorney purportedly advised Plaintiffs by telephone that

13   "Dong Yin would have no control or influence over GIP Cayman."  SAC ¶ 313.

14   Aside from being unable to identify a precise date for this telephone call, this

15   predicate act does not allege that the alleged representation was false at the time it was

16   made, much less that Milbank had actual knowledge of the statement's falsity.  There

17   is no well-pleaded allegation that as early as February 2006 Milbank had a belief that

18   Dong Yin would take control over GIP-Cayman.  Indeed, according to the SAC, the

19   Facility Agreement had not even closed at the time of this alleged communication.

20   *See* SAC ¶ 126.  Racketeering Act Ten is based on an allegation that on April 5, 2016,

21   a Milbank attorney provided comments to the SPA to an undisclosed person and

22   stated that he "intended to align the conditions" of the SPA with the Facility

23   Agreement.  This predicate act, however, does not allege to whom this communication

24   was sent, what comments Milbank made about the SPA, or even that Plaintiffs

25   received and relied upon this communication.  SAC ¶ 140.  Finally, Racketeering Act

26   Eleven alleges that on May 31, 2016, Milbank told Plaintiff Javed, by telephone, that

27   Milbank believed the four Bronzelink-directors were independent of Dong Yin and

28   that Defendant Wong worked for Bronzelink, not Dong Yin.  Plaintiffs, however, do

**MOTION TO DISMISS OF DEFENDANT MILBANK**

1  not allege that Milbank had any actual knowledge that this information was false or

2  that Milbank acted with an intent to defraud Javed.

3          Nor do the number or duration of alleged predicate acts in the SAC suffice to

4  plead continuity.  The First Amended Complaint alleged a pattern of racketeering

5  activity occurring over just a 10-month period—essentially, the period starting with

6  Dong Yin's initial communication with Plaintiffs in October 2015 and concluding

7  with Bronzelink's equity investment in GIP-Cayman in June 2016.  Apparently

8  concerned that a 10-month pattern would not suffice to establish continuity, Plaintiffs

9  amended their RICO claims in the SAC to allege 31 racketeering acts over a 27-month

10  period.  Plaintiffs now plead that the pattern of racketeering activity did not stop with

11  Bronzelink's investment in GIP-Cayman in June 2016, but instead continued

12  throughout 2017 as Plaintiffs and Bronzelink struggled for operational control over

13  GIP-Cayman.  But the post-June 2016 predicate acts relating to the conduct of GIP-

14  Cayman's business do not allege the commission of any misconduct by which Dong

15  Yin allegedly gained control of GIP-Cayman; rather, these predicate acts simply

16  identify business communications between Plaintiffs and representatives of

17  Defendants in which Defendants allegedly kept secret Dong Yin's purported control

18  of Bronzelink.  SAC ¶ 313 (alleged racketeering acts nos. 14-27).  This conduct does

19  not suffice to establish an ongoing RICO conspiracy.  No Defendant had an

20  affirmative disclosure obligation to Plaintiffs, and as it relates to the newly added

21  post-June 2016 predicate acts, none of the acts include an allegation that any money or

22  property was taken from Plaintiffs.

23          **3.      The Court Should Dismiss Plaintiffs' Civil RICO Claims**
                    **Against Milbank Because Plaintiffs Have Not Alleged that**
24                  **Milbank Directed the Affairs of an Enterprise**

25  Plaintiffs' allegations do not support an inference that Milbank "participated in

26  the operation or management of the enterprise itself" or that it played a role in the

27  direction of either the Victim Enterprise or the Criminal Enterprise.  *See Reves v.*

28  *Ernst & Young*, 507 U.S. 170, 179 (1993) ("Once we understand the word 'conduct'

20

to require some degree of direction and the word 'participate' to require some part in that direction, the meaning of § 1962(c) comes into focus.").  As applied in this Circuit, the "operation or management" test "requires an element of direction." *Walter v. Drayson*, 538 F.3d 1244, 1247-49 (9th Cir. 2008) (affirming dismissal of RICO claims against law firm defendants on ground that "[s]imply performing services for the enterprise does not rise to the level of direction"); *see also Taylor v. Bettis*, 976 F. Supp. 2d 721, 735-36 (E.D.N.C. 2013) (dismissing civil RICO claims against law firm defendants who provided "traditional legal services" that could have been provided by other law firms).

The SAC falls well short of pleading that Milbank directed the affairs of a racketeering enterprise.  The SAC alleges that, while representing Dong Yin, Milbank negotiated the Facility Agreement between Dong Yin and Bronzelink; that the Facility Agreement purportedly contained provisions that conferred on Dong Yin certain rights that, if exercised, would give Dong Yin the ability to control Bronzelink; and that Milbank purportedly failed to provide a copy of the Facility Agreement to Plaintiffs or otherwise tell Plaintiffs that Bronzelink directors purportedly were not independent of Dong Yin.  These allegations—even assuming they are true—are insufficient to establish that Milbank "directed" a racketeering enterprise.  As alleged in the SAC, Milbank provided legal services to its client Dong Yin; it had no obligation or ability to share Dong Yin's confidential client information with Plaintiffs, who were not Milbank's clients.  *See RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 (D.C. Cir. 2012) (affirming dismissal of RICO claims against law firm where allegations targeted "services as attorneys, nothing more"); *Gomez v. Guthy-Renker, LLC*, No. 14-01425, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) (citing cases holding "that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client").

### C.    *The Court Should Dismiss the Claims for Fraud and Conspiracy to Defraud Against Milbank*

Plaintiffs' fraud claim suffers from similar infirmities.  Plaintiffs allege that in various communications with Plaintiffs, Milbank failed to disclose that the Facility Agreement contained several provisions that, according to Plaintiffs' interpretation, could theoretically be exercised by Dong Yin to exercise control over GIP-Cayman.  But an action for fraudulent concealment requires that "the defendant must have been under a duty to disclose the [concealed] fact to the plaintiff."  *Williams v. Wraxall*, 33 Cal. App. 4th 120, 131 n.9 (1995), *as modified on denial of reh'g* (Apr. 12, 1995).  Plaintiffs do not (and cannot) allege that Milbank owed a duty to Plaintiffs, who were neither parties to the Facility Agreement nor clients of Milbank at any relevant time.

The two affirmative misrepresentations that the SAC alleges against Milbank are also infirm.  As noted above, the SAC pleads that on some unspecified date between January and February 2016, Milbank told Plaintiffs that Dong Yin "would have no control" over Bronzelink.  SAC ¶ 313.  This alleged conversation, however, took place before the closing of the Facility Agreement, and Plaintiffs do not plead any basis to establish that Milbank believed this statement, which opined on the future relationship between Dong Yin and Bronzelink, was false when made.  Equally deficient is Plaintiffs' allegation that on May 31, 2016, Milbank told Plaintiff Javed, by telephone, that Milbank believed the four Bronzelink-directors were independent of Dong Yin and that Defendant Wong worked for Bronzelink, not Dong Yin.  Plaintiffs, however, do not allege that Milbank had any actual knowledge that the Bronzelink directors purportedly were acting at the direction of Dong Yin or that Defendant Wong supposedly was a secret agent of Dong Yin.  Plaintiffs' allegations therefore fall far short of the particularized pleading requirements of Rule 9(b).  *Vess*, 317 F.3d, at 1106; *Colenzo v. FDIC*, No. 09-0816, 2011 WL 13177024, at *5-6 (C.D. Cal. Apr. 25, 2011) (dismissing fraud claims on Rule 9(b) ground for failure to allege actual knowledge of fraud).

1   Moreover, as with civil RICO claims, claims for fraud must plead actual, non-
2   speculative harm to survive a motion to dismiss. *Shum v. Intel Corp.*, 630 F. Supp. 2d
3   1063, 1075 (N.D. Cal. 2009) (stating that "[u]nder California law, [plaintiff] must
4   have incurred actual monetary loss as a result of [d]efendants' alleged fraud" and
5   holding that plaintiff's claim that "had he not been fraudulently induced into entering
6   into [a contract], he would now possess $29.2 million" was too speculative a harm).
7   For the reasons set forth in Section IV.B.1.b, above, Plaintiffs have failed to allege
8   concrete, financial harm as a result of any alleged conduct of Milbank.

9   Because Plaintiffs fail adequately to plead a claim for fraud, their claim for
10  conspiracy to defraud based on the same set of facts also fails. *See, e.g., Ajetunmobi*
11  *v. Clarion Mortg. Capital, Inc.*, No. 12-0568, 2012 WL 2945051, at *5 (C.D. Cal. July
12  17, 2012), *aff'd*, 595 F. App'x 680 (9th Cir. 2014).

13      **D.    *The Court Should Dismiss Plaintiffs' Claim for Violation of the UCL***
14  To satisfy the UCL's standing requirement, a plaintiff must: (1) "'establish a
15  loss or deprivation of money or property sufficient to qualify as injury in fact, i.e.,
16  *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused*
17  *by*, the unfair business practice . . . that is the gravamen of the claim.'" *Collins v.*
18  *U.S. Bank, Nat'l Ass'n*, No. 14-7726, 2015 WL 470289, at *3 (C.D. Cal. Feb. 3, 2015)
19  (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011)). Under the
20  UCL, injury in fact is "limited to a person who 'has lost money or property as a result
21  of the unfair competition.'" *Id*. (quoting Cal. Bus & Prof. Code § 17204). The lost
22  money or profits for which the plaintiff claims deprivation, moreover, must be that to
23  which plaintiff has a cognizable claim. *Id*. at *4. Plaintiffs' UCL claim fails on
24  multiple grounds.

25  First, Plaintiffs do not adequately allege a violation by Milbank of the UCL
26  statute. Plaintiffs allege that Milbank engaged in unlawful business acts in violation
27  of the "*unlawful conduct*" prong of that statute (*see* SAC ¶ 349), but the SAC pleads
28  no facts to support its conclusory assertion that Milbank conspired to violate any laws,

including "obtaining and receiving stolen property, in violation of California Penal Code section 494(a)." SAC ¶ 349(f). Missing are any well-pleaded allegations that Milbank engaged in conduct "'that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1266 (2006) ((quoting *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)). Plaintiffs also fail to allege that Milbank engaged in conduct that violates the "fraudulent conduct" prong of the UCL. The SAC does not allege that Milbank performed any acts that would be likely to deceive "members of the public," as required under the UCL. *See Express, LLC v. Fetish Grp., Inc.*, 464 F. Supp. 2d 965, 980 (C.D. Cal. 2006) (granting summary judgment to defendant on plaintiff's claim under the "fraudulent" prong of § 17200 because plaintiff "does not point to any evidence suggesting that the representations . . . were disseminated to the public, let alone likely to deceive the public"); *Welte v. Wells Fargo Bank, N.A.*, No. 13-00463, 2013 WL 6728889, at *9-10 (C.D. Cal. Dec. 18, 2013) (dismissing UCL claims under fraudulent prong because complaint failed to "allege particular allegations as to *what* the affirmative statements and material nondisclosures were and *how* they are likely to deceive the public").

The SAC also does not plead a cognizable injury in fact suffered by Plaintiffs as required by *Collins*. As noted above, the SAC only alleges a series of speculative, contingent injuries suffered by GIP-Cayman; the SAC does not allege an immediate, concrete harm suffered by Plaintiffs. The SAC also does not plead a basis for "restitutionary disgorgement," another remedy that Plaintiffs seek under their UCL claim. The SAC does not identify any money or property *owned* by Plaintiffs that Defendants improperly obtained. The SAC alleges that GIP-Cayman, not Plaintiffs, issued new shares in exchange for Bronzelink's investment. Similarly, the SAC alleges that GIP-Cayman, not Plaintiffs, owned the business plans, marketing studies,

**MOTION TO DISMISS OF DEFENDANT MILBANK**

1  and intellectual property to which Dong Yin purportedly obtained access.  Plaintiffs
2  have not alleged that Defendants obtained any property owned by Plaintiffs, which
3  could be the subject of a restitution order.

4        **E.**    ***The Court Should Dismiss the SAC Without Leave to Amend***

5        A district court should deny leave to amend a complaint "where the amendment
6  would be futile . . . or where the amended complaint would be subject to dismissal."
7  *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).  Here, as discussed above,
8  Plaintiffs cannot plausibly allege any concrete, financial harm they suffered directly as
9  a result of any conduct by Milbank.  C*ervantes v. Countrywide Home Loans, Inc.*, 656
10  F.3d 1034, 1046 (9th Cir. 2011) (dismissing complaint without leave to amend
11  because plaintiffs did not show alleged misconduct injured them).

12        Moreover, in the event the Court dismisses the RICO claims against Milbank
13  but declines to dismiss the SAC's state law claims, Milbank requests that the Court
14  decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See*
15  *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001).

16  **V.**    **CONCLUSION**

17        For the foregoing reasons, the Court should grant Defendant Milbank's Motion
18  to Dismiss without leave to amend.

19
20
21
22
23
24
25
26
27
28

Dated: September 21, 2018          Respectfully submitted,

                                  By: /s/ Mark C. Scarsi_____

                                  MILBANK, TWEED, HADLEY & McCLOY LLP

                                  Mark C. Scarsi
                                  2029 Century Park East, 33rd Floor
                                  Los Angeles, California 90067
                                  Telephone:  (424) 386-4000
                                  Facsimile:    (213) 629-5063
                                  Email:        mscarsi@milbank.com

                                  Thomas A. Arena
                                  28 Liberty Street
                                  New York, New York 10005
                                  Phone:        (212) 530-5891
                                  Fax:          (212) 822-5891
                                  Email:        tarena@milbank.com

                                  *Attorneys for Defendant Milbank*

26
**MOTION TO DISMISS OF DEFENDANT MILBANK**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document has been served via the Court's CM/ECF system on all counsel of record on September 21, 2018.

/s/ Ashlee N. Lin_____

Ashlee N. Lin

#4842-1136-7792

27

**MOTION TO DISMISS OF DEFENDANT MILBANK**