1   Brian A. Sun (Cal. Bar No. 089410)
    basun@jonesday.com
2   Rasha Gerges Shields (Cal. Bar No. 218248)
    rgergesshields@jonesday.com
3   Christopher K. Pelham (Cal. Bar No. 241068)
    cpelham@jonesday.com
4   JONES DAY
    555 South Flower Street
5   Fiftieth Floor
    Los Angeles, CA  90071.2300
6   Telephone: +1.213.489.3939
    Facsimile:  +1.213.243.2539
7
    Attorneys for Specially Appearing Defendant
8   CHINA ORIENT ASSET MANAGEMENT
    (INTERNATIONAL) HOLDING LIMITED
9

10                  UNITED STATES DISTRICT COURT

11                  CENTRAL DISTRICT OF CALIFORNIA

12

13   STM ATLANTIC N.V., a Dutch            Case No. 2:18-cv-1269-JLS-JCG
     company; STM GROUP, INC., a
14   Delaware corporation; EMIL            **SPECIALLY APPEARING**
     YOUSSEFZADEH, an individual; and      **DEFENDANT CHINA ORIENT**
15   UMAR JAVED, an individual,            **ASSET MANAGEMENT**
                                           **(INTERNATIONAL) HOLDING**
16                Plaintiffs,              **LIMITED'S NOTICE OF MOTION**
                                           **AND MOTION TO DISMISS THE**
17         v.                              **SECOND AMENDED COMPLAINT,**
                                           **OR IN THE ALTERNATIVE, TO**
18                                         **STAY THE ACTION PENDING**
                                           **ARBITRATION; MEMORANDUM**
19   DONG YIN DEVELOPMENT                  **OF POINTS AND AUTHORITIES IN**
     (HOLDINGS) LIMITED, a Hong Kong       **SUPPORT THEREOF; JOINDER IN**
20   unlimited company; CHINA ORIENT       **CO-DEFENDANTS' MOTIONS**
     ASSET MANAGEMENT
21   (INTERNATIONAL) HOLDING               [Proposed] Order Filed Concurrently
     LIMITED, a Hong Kong limited          Herewith
22   company; and LUDWIG CHANG, an
     individual,                           Date:      November 30, 2018
23                                         Time:      2:30 p.m.
                  Defendants.              Ctrm.:     10A
24

25

26

27

28

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 30, 2018, at 2:30 p.m., or as soon thereafter as the matter may be considered by the Honorable Josephine L. Staton in Courtroom 10A of the above-entitled Court, Specially Appearing Defendant China Orient Asset Management (International) Holding Limited ("COAMI") will, and hereby does, move the Court for an Order dismissing Plaintiffs' Second Amended Complaint ("SAC"), or in the alternative, staying the action pending arbitration. COAMI hereby also joins in the Motions to Dismiss filed (or to be filed prior to the hearing on this matter) by each of the co-defendants in this action, including Dong Yin Development (Holdings) Limited ("Dong Yin"), Ludwig Chang, and Milbank, Tweed, Hadley & McCloy LLP, and the Motion to Stay Pending Arbitration filed by Dong Yin.

This Motion is based upon: this Notice and accompanying Memorandum of Points and Authorities; the pleadings and papers filed in this action and in the related action of *Youssefzadeh, et al. v. Global-IP Cayman, et al.*, Case No. 2:18-cv-2522-JLS; the Motions to Dismiss, Motion to Stay Pending Arbitration, and supporting documents filed (or to be filed) by the co-defendants in this action; the arguments of counsel; and any other matter that the Court may properly consider.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on September 13, 2018, between undersigned counsel, counsel of record for the co-defendants, and counsel for Plaintiffs, Jerome Friedberg, Robert Gookin, and Adam Kargman.  The parties were able to agree on some issues, but not enough to obviate the need for this Motion.

Dated: September 21, 2018                    JONES DAY

By: /s/
    Rasha Gerges Shields

Attorneys for Specially Appearing
Defendant CHINA ORIENT ASSET
MANAGEMENT (INTERNATIONAL)
HOLDING LIMITED

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................. 2

    A.   The Investment Agreements and Resulting Dispute ........................... 3

    B.   Plaintiffs' Notice of Breach and Evolving Lawsuits ........................... 4

    C.   The Alleged Conduct of COAMI and Chang ..................................... 6

III. ARGUMENT ..................................................................................... 7

    A.   The Court Lacks Personal Jurisdiction Over COAMI .......................... 7

        1.   *COAMI Did Not Purposely Direct Activities to California* ....... 8

        2.   *Plaintiffs' Claims Do Not Arise Out of, or Relate to, COAMI's California Activities* ................................................ 11

        3.   *In Any Event, the Exercise of Personal Jurisdiction Over COAMI Would Be Unreasonable* .......................................... 12

    B.   The Court Should Dismiss the SAC for Failure to Join Bronzelink and GIP-Cayman ......................................................... 14

        1.   *Bronzelink and GIP-Cayman are Necessary Parties* ............... 16

        2.   *Joinder of Bronzelink and GIP-Cayman is Not Feasible* ......... 17

        3.   *GIP-Cayman and Bronzelink are Indispensable Parties* ......... 18

    C.   Plaintiffs' Claims Against COAMI Should Be Dismissed For Failure to State a Claim ................................................................. 20

        1.   *Plaintiffs Fail to Satisfy Rule 9(b) as to All Claims* ................ 21

        2.   *Plaintiffs Fail to Allege COAMI Engaged in a "Pattern of Racketeering Activity"* ...................................................... 22

        3.   *Plaintiffs Fail to Allege COAMI Directed the Affairs of the RICO Enterprises* ........................................................ 24

        4.   *Plaintiffs' RICO Conspiracy Claims Also Fail* ...................... 24

    D.   Alternatively, the Court Should Stay the Action Pending Arbitration ................................................................................... 25

IV.  CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**                                                               **PAGE(S)**

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
  260 F. Supp. 2d 941 (N.D. Cal. 2003).................................................................23

*Agric. Water v. Occidental Oil & Gas Corp.*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017).............................................................23

*Am. Greyhound Racing, Inc. v. Hull*,
  305 F.3d 1015 (9th Cir. 2002)...........................................................................19

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,
  1 F.3d 848 (9th Cir. 1993)..................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................9, 20

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
  874 F.3d 1064 (9th Cir. 2017)...............................................................8, 10, 11

*Barba v. Seung Heun Lee*,
  2009 WL 8747368 (D. Ariz. Nov. 4, 2009) .......................................................22

*Barney v. Aetna Cas. & Sur. Co.*,
  185 Cal. App. 3d 966 (1986).............................................................................23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................9, 20

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008).............................................................................7

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*,
  137 S. Ct. 1773 (2017) .........................................................................................7

*Camacho v. Major League Baseball*,
  297 F.R.D. 457 (S.D. Cal. 2013)......................................................................16

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ........................................................................ 25

*CE Distribution, LLC v. New Sensor Corp.*,
    380 F.3d 1107 (9th Cir. 2004) ........................................................ 14

*Cent. Coast Pipe Lining, Inc. v. Pipe Shield USA, Inc.*,
    2013 WL 1703023 (C.D. Cal. Apr. 19, 2013) .................................. 22

*Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*,
    2013 WL 12122308 (C.D. Cal. July 23, 2013) ................................ 23

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) .................................................... 12-14

*Corsi v. Eagle Publ'g, Inc.*,
    2008 WL 239581 (D.D.C. Jan. 30, 2008) .................................. 18, 20

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) .......................................................... 24

*Davis ex rel. Davis v. United States*,
    343 F.3d 1282 (10th Cir. 2003) ...................................................... 20

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
    276 F.3d 1150 (9th Cir. 2002) .................................................. 16, 19

*Desoto v. Condon*,
    371 Fed. App'x 822 (9th Cir. 2010) ................................................ 15

*Destfino v. Reiswig*,
    630 F.3d 952 (9th Cir. 2011) .......................................................... 22

*Doe v. Am. Nat'l Red Cross*,
    112 F.3d 1048 (9th Cir. 1997) ........................................................ 11

*E.E.O.C. v. Peabody W. Coal Co.*,
    610 F.3d 1070 (9th Cir. 2010) .......................................... 16, 18, 19

*FDIC v. British-American Ins. Co.*,
    828 F.2d 1439 (9th Cir. 1987) ............................................................................ 13

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) ............................................................................ 11

*Goh, et al. v. Prima Fin. Grp. Inc. et al.*,
    2017 WL 7887860 (C.D. Cal. July 26, 2017) ................................................... 21

*Goodyear Dunlop Tires Operations, SA v. Brown*,
    564 U.S. 915 (2011) ............................................................................................ 7

*Grosset v. Wenaas*,
    42 Cal. 4th 1100 (Cal. 2008) ............................................................... 15, 17, 19

*Harmoni Int'l Spice, Inc. v. Wenxuan Bai*,
    2016 WL 9275400 (C.D. Cal. Nov. 14, 2016) ................................................... 23

*Howard v. Am. Online Inc.*,
    208 F.3d 741 (9th Cir. 2000) ............................................................................ 25

*In re Gilead Sci. Secs. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................ 21

*In re Toyota Motor Corp.*,
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ............................................................ 9, 17

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012) ........................................................ 23, 24

*Ins. Co. of N. Am. v. Marina Salina Cruz*,
    649 F.2d 1266 (9th Cir. 1981) ............................................................................ 13

*Ivy Bridge Univ., LLC v. Higher Learning Comm'n*,
    2015 WL 6555428 (N.D. Cal. Oct. 28, 2015) ................................................... 10

*Jackson v. Fischer*,
    2013 WL 6732872 (N.D. Cal. Dec. 20, 2013) ................................................... 22

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................ 21

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cir. 1991) .................................................................. 21

*Lennard v. Yeung*,
    2012 WL 13006214 (C.D. Cal. Feb. 23, 2012) ........................................ 9

*Lomayaktewa v. Hathaway*,
    520 F.2d 1324 (9th Cir. 1975) ................................................................ 18

*LST Fin., Inc. v. Four Oaks Fincorp, Inc.*,
    2014 WL 3672982 (W.D. Tex. July 24, 2014) ........................................ 18

*Meyer v. Kalanick*,
    2016 WL 3509496 (S.D.N.Y. June 20, 2016) ......................................... 19

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) .................................................................. 21

*Morrill v. Scott Fin. Corp.*,
    873 F.3d 1136 (9th Cir. 2017) .......................................................... 10, 11

*Nevada Ass'n Servs., Inc. v. Tumanan*,
    2014 WL 3845150 (D. Nev. Aug. 5, 2014) ............................................ 17

*Odom v. Microsoft Corp.*,
    486 F.3d 541 (9th Cir. 2007) .................................................................. 23

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) ............................................................ 8-11

*Quach v. Cross*,
    2004 WL 2860346 (C.D. Cal. June 10, 2004) ........................................ 21

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ................................................................................ 24

*Rose v. Simms*,
   1995 WL 702307 (S.D.N.Y. Nov. 29, 1995) ........................................................ 17

*Rush v. Savchuk*,
   444 U.S. 320 (1980) .......................................................................................... 8

*Ryan v. Volpone Stamp Co., Inc.*,
   107 F. Supp. 2d 369 (S.D.N.Y. 2000) ............................................................... 16

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ......................................................................... 24-25

*Shinde v. Nithyanada Found.*,
   2014 WL 12597121 (C.D. Cal. Aug. 25, 2014) .................................................. 8

*Sparling v. Hoffman Const. Co., Inc.*,
   864 F.2d 635 (9th Cir. 1988) ......................................................................... 14-15

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ....................................................................... 7, 22

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
   2 Cal. App. 4th 153 (1991) .............................................................................. 22

*Terracom v. Valley Nat'l Bank*,
   49 F.3d 555 (9th Cir. 1995) ........................................................................... 12-14

*Turner v. Cook*,
   362 F.3d 1219 (9th Cir. 2004) .......................................................................... 23

*U.S., ex rel. Hill v. Coulter*,
   1998 WL 460239 (N.D.N.Y. July 31, 1998) ...................................................... 19

*United States v. Persico*,
   832 F.2d 705 (2d Cir. 1987) ............................................................................ 23

*United States v. Scan Health Plan*,
   2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) ..................................................... 22

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ............................................................. 21

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................... 8

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ............................................................. 24

*Weinberg & Co., P.A. v. Beasley Food Serv., Inc.*,
    2008 WL 4500004 (C.D. Cal. Oct. 3, 2008) ........................................ 11

*Williams v. Yamaha Motor Co. Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ............................................................. 9

**STATUTES**

18 U.S.C. § 1961 ......................................................................................... 23

18 U.S.C. § 1962 ......................................................................................... 23

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .............................................................................. 21, 22

Fed. R. Civ. P. 12(b)(2) ........................................................................ 7, 25

Fed. R. Civ. P. 12(b)(6) ............................................................................. 20

Fed. R. Civ. P. 12(b)(7) ............................................................................. 14

Fed. R. Civ. P. 19 ............................................................................... *passim*

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   <u>INTRODUCTION</u>

Plaintiffs are disgruntled minority shareholders who regret selling away their controlling interests in a company they started, Global-IP Cayman ("GIP-Cayman"), to Bronzelink Holdings Limited ("Bronzelink").  Rather than litigate their grievances with Bronzelink in the forum they agreed to (arbitration in Hong Kong), Plaintiffs have spent over one year manufacturing claims against tangential third parties through the filing of successive complaints, all to avoid mandatory arbitration in Hong Kong.

Plaintiffs' Second Amended Complaint ("SAC") is the ***fourth*** complaint Plaintiffs have filed over the past year against third parties claiming fraud and other malfeasance.  Although Plaintiffs use labels such as "fraud" and "racketeering" in an attempt to transform their simple shareholder dispute into something more sinister, such wordsmithing is not enough to make it so.  Like Plaintiffs' related employment action that the Court recently stayed pending arbitration, the shareholder agreement involving Plaintiffs, GIP-Cayman, Bronzelink, and others (none of whom are defendants in this action) is "at the very core of this dispute."  *Youssefzadeh, et al. v. Global-IP Cayman, et al.*, Case No. 2:18-cv-2522-JLS (the "GIP Action"), Dkt. 30 (the "Arbitration Order") at 11 (citation omitted).  Plaintiffs' allegations in this case are nearly identical to their allegations in the GIP Action, all of which stem from the same conduct Plaintiffs claimed amounted to Bronzelink's breach of the shareholder agreement in a letter they sent to Bronzelink in June 2017 (the "Notice of Breach").

Putting aside Plaintiffs' creative pleadings, one thing is clear—China Orient Asset Management (International) Holding Limited ("COAMI") is not a proper party to this litigation.  Despite spilling much ink over their 123-page SAC, Plaintiffs failed to articulate any plausible theory of liability against COAMI, or even this Court's jurisdiction over it.  Instead, Plaintiffs seek to hold COAMI liable based exclusively on the supposed wrongful conduct of COAMI's former Co-President, defendant Ludwig Chang ("Chang"), because Chang attended some meetings and had some

discussions with Plaintiffs relating to their deal with Bronzelink. But Plaintiffs fail to allege facts that Chang was acting on behalf of COAMI, rather than for other entities involved in the transaction. Even if Chang's limited conduct was attributed to COAMI, it is not enough to support Plaintiffs' claims against, or this Court's jurisdiction over, COAMI. The Court should dismiss the SAC for several reasons.

**First**, this Court lacks personal jurisdiction over COAMI. COAMI, a Hong Kong entity with its principal place of business in Hong Kong, did not purposely direct any relevant activities toward California, nor do Plaintiffs' claims arise out of or relate to COAMI's California activities.

**Second**, Plaintiffs filed this lawsuit challenging the management and control of GIP-Cayman and Bronzelink, but refused to name them in this lawsuit to avoid mandatory arbitration in Hong Kong. Because these companies' interests are at the heart of Plaintiffs' claims, they are indispensable parties, and the Court should not permit this action to proceed in their absence. As an alternative, the Court should, at a minimum, stay this action pending arbitration, for the reasons set forth in Dong Yin Development (Holdings) Limited's ("Dong Yin") Motion to Stay.[1]

**Third**, for the reasons set forth in Milbank, Tweed, Hadley & McCloy LLP's ("Milbank") Motion to Dismiss and below, Plaintiffs' RICO and state law claims must be dismissed because, among other reasons, they are not ripe for review, Plaintiffs lack standing to bring them, and they have not been sufficiently pled in any event (particularly as they relate to COAMI).

The Court should dismiss all claims against COAMI, or, at a minimum, stay the action pending arbitration.

## II.   **BACKGROUND**

The SAC is Plaintiffs' fourth iteration of their claims as disgruntled minority

---

[1]  COAMI hereby incorporates by reference and joins each of the arguments asserted by each of the co-defendants in their respective Motions to Dismiss, as well as Dong Yin's Motion to Stay Pending Arbitration, to the extent their arguments apply to COAMI directly or by analogy. For succinctness purposes, COAMI has not repeated those arguments here.

shareholders of GIP-Cayman, a company they founded in 2013 to develop, launch and operate a communications satellite to provide high-speed internet access to parts of Africa (the "Satellite Project"). (SAC ¶ 18.) The relevant facts have not changed since Plaintiffs served Bronzelink with the Notice of Breach in June 2017. Yet, Plaintiffs' legal theories and targets continue to evolve, as they attempt to transform an ordinary shareholder dispute into something that it is not—a criminal conspiracy by several third parties, including a reputable international law firm, all to avoid binding arbitration.

### A.   The Investment Agreements and Resulting Dispute

After pursuing several other sources of financing for the Satellite Project, Plaintiffs eventually sold a 75% interest in GIP-Cayman to Bronzelink, in exchange for $175 million and a $25 million line of credit. (SAC ¶¶ 151-52.) In May 2016, Plaintiffs, GIP-Cayman, Bronzelink, and others negotiated and entered into a Series A Preferred Share Purchase Agreement ("SPA") and a Shareholders Agreement ("SHA" and, together with the SPA, the "Investment Agreements").[2] (SAC ¶¶ 123, 147.) The Investment Agreements entitled Bronzelink to appoint six of the nine members of the GIP-Cayman Board, with the remaining three directors to be appointed by Plaintiffs and Pourmand. (SAC ¶ 160(a).) Bronzelink and Plaintiffs executed the closing documents for the Investment Agreements on or around June 3, 2016. (SAC ¶ 159.)

During the following year, a series of disputes arose involving the management and control of GIP-Cayman. Plaintiffs allege they became concerned that GIP-Cayman was running afoul of U.S. export control laws because the Bronzelink-appointed directors of the GIP-Cayman Board were under the influence and control of Dong Yin, a purported instrumentality of the People's Republic of China ("PRC"). (*See generally* SAC ¶¶ 198-253.) According to Plaintiffs, Dong Yin was able to exercise such control over Bronzelink (and thus GIP-Cayman) because Bronzelink separately entered into a funding agreement (the "Facility Agreement") on March 15,

---

[2]   The other parties to the Investment Agreements were Plaintiffs' former business partner, Bahram Pourmand ("Pourmand"); Steadyspace Limited, an entity controlled by Pourmand; and Amir Irani, Pourmand's stepson. (SAC ¶ 147.)

2016, with a company controlled by Dong Yin (Amore Resources Ltd. ("Amore")), which gave Amore power to approve the appointment of four directors to the Bronzelink Board of Directors, and those same directors had to be appointed to the GIP-Cayman Board.  (SAC ¶¶ 125-138, 165(a).)  Plaintiffs further claim that the Bronzelink-appointed directors prevented Plaintiffs from raising their concerns at noticed board meetings, which eventually caused the individual Plaintiffs to resign from their executive positions at GIP-Cayman (and its subsidiary, Global-IP USA, Inc. ("GIP-USA")) in mid-2017.  (*Id.*; SAC ¶¶ 257-263.)

## B.   Plaintiffs' Notice of Breach and Evolving Lawsuits

On June 4, 2017, Plaintiffs sent the Notice of Breach to Bronzelink, raising many of the same issues they now complain about in this lawsuit.[3]

On August 15, 2017, Plaintiffs Umar Javed ("Javed") and STM Atlantic N.V. ("STM Atlantic"), an entity controlled by Plaintiff Emil Youssefzadeh ("Youssefzadeh"), filed a complaint against Dong Yin, asserting claims for fraud and intentional interference with contract in connection with the operation of GIP-Cayman and the Satellite Project.  (*See STM Atlantic N.V. v. Dong Yin*, No. 17-cv-1405 (C.D. Cal. Aug. 15, 2017), Dkt. 1.)  Plaintiffs Javed and STM Atlantic voluntarily dismissed their complaint on September 22, 2017.  (*Id.* at Dkt. 9.)

Six months later—even though no new facts had arisen involving COAMI or Chang—Plaintiffs filed their initial complaint in this action in February 2018, this time bringing RICO and state law claims against Dong Yin, COAMI, and Chang.  *See* Dkt. 1.  In that complaint, Plaintiffs alleged that, at all relevant times, Chang was the Executive Director and Co-President of COAMI, and was also a director of non-party Amore.  (*Id.* ¶ 27.)  Plaintiffs also alleged, on information and belief, that Dong Yin and COAMI were alter egos of each other.  (*Id.* ¶ 26.)

---

[3]   The Notice of Breach, and related documents, including the Investment Agreements, were filed as exhibits in connection with GIP-Cayman's motion to compel arbitration in the GIP Action.  (*See* GIP Action, Dkt. 20.)  These documents, and related filings, are hereby incorporated by reference.

On February 23, 2018, Plaintiffs Youssefzadeh and Javed filed the GIP Action against GIP-Cayman, GIP-USA, and Dong Yin.  The GIP Action was originally filed in California Superior Court, and then removed to this Court.  (GIP Action, Dkt. No. 1.)  In that case, Plaintiffs Youssefzadeh and Javed asserted 20 claims against GIP-Cayman and GIP-USA, including breach of their employment agreements with GIP-Cayman and GIP-USA.  Plaintiffs also alleged one claim against Dong Yin for intentional interference with contractual relations.

Two days later, on February 25, 2018, Plaintiffs filed a First Amended Complaint in this action, asserting essentially the same claims and allegations against the same defendants as the original complaint.  (*See* Dkt. 14.)

On July 30, 2018, in the GIP Action, the Court granted GIP-Cayman's motion to compel arbitration and stayed the case against the remaining defendants.  (GIP Action, Dkt. 30 (Arbitration Order).)[4]  The Court "ha[d] no trouble" concluding that Plaintiffs' claims in the GIP Action—which focused on the conduct of the Bronzelink-appointed directors leading up to Plaintiffs Youssefzadeh's and Javed's resignations as officers of GIP-Cayman and GIP-USA—"touch matters" covered by the SHA, and were thus subject to the broad arbitration provision contained therein.  (Arbitration Order at 10.)  The Court stayed the remaining claims against GIP-USA and Dong Yin, finding those claims to be factually intertwined with the claims asserted against GIP-Cayman.  (*Id.* at 13-14.)

On August 14, 2018, Plaintiffs filed the SAC, which added Milbank as a defendant in this action, along with three Bronzelink and GIP-Cayman directors, Yuen-Cheung (Tony) Wong ("Wong"), Bonnie Shiyue Liu ("Liu"), and Shiwen Fan ("Fan").  (Dkt. 68.)  Notably as to COAMI, Plaintiffs abandoned their earlier allegation that Dong Yin and COAMI were alter egos of each other.

---

[4] In its Arbitration Order, the Court indicated that Plaintiffs added China Orient Asset Management Corporation ("COAMC") as an additional defendant in their FAC in this action.  (Arbitration Order at 9.)  However, COAMC has never been a defendant in this action, and, although it is related to COAMI, both companies are separate legal entities.

### C.     The Alleged Conduct of COAMI and Chang

The SAC is devoid of any allegations that COAMI directly attempted to assert control over the management of GIP-Cayman (or any other entity).  Nor do Plaintiffs allege that COAMI was a party to, or had an interest in, *any* of the agreements identified in the SAC.  Plaintiffs' claims against COAMI are based solely on the alleged conduct of Chang, who Plaintiffs allege was the Executive Director and Co-President of COAMI until August 2016, as well as a director of Amore, and "an agent of COAMI and DONG YIN, acting within the scope of that dual agency and with the intent to benefit COAMI and DONG YIN in whole or in part."  (SAC ¶ 23.)  And despite Plaintiffs' filing of successive complaints over the past year, the only allegations they have been able to string together relating to Chang are as follows:

- Chang attended meetings in late 2015 and early 2016 relating to transactions that were never consummated (SAC ¶¶ 83, 108-109);

- On February 16, 2016, several months before Plaintiffs closed their deal with Bronzelink and before the Facility Agreement was executed, Chang allegedly told Plaintiffs that Dong Yin would have no control over GIP-Cayman, and that Dong Yin had no intention of controlling or seeking to influence GIP-Cayman (SAC ¶¶ 115, 120(b)); and

- In April 2016, approximately two months before Plaintiffs closed their deal with Bronzelink, Chang allegedly: (1) asked Plaintiff Javed for GIP-Cayman's "detailed operating plan" and indicated that Amore would not authorize the disbursement of funds without knowing more about the specific uses, milestones, and conditions of such funds (SAC ¶¶ 142, 191); and (2) informed Plaintiffs Youssefzadeh and Javed that Dong Yin wished to hire consultants that Chang knew to assist in the operation of GIP-Cayman (SAC ¶¶ 144, 195).

The SAC is silent as to Chang's authority to act for COAMI, and does not allege that Chang made any representations about COAMI or that he was purporting to act for it.

III.   **ARGUMENT**

A.   **The Court Lacks Personal Jurisdiction Over COAMI.**

The Court should dismiss the claims against COAMI—a Hong Kong entity that did not direct any activities to California—for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  On a motion to dismiss for lack of personal jurisdiction, a plaintiff "bears the burden of establishing that jurisdiction is proper."  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  "[M]ere 'bare bones' assertions of minimum contacts with the forum" or conclusory allegations "will not satisfy a plaintiff's pleading burden."  *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).  Due process—the relevant standard here (*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015))—requires that "the defendant ha[ve] certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 923 (2011).  Personal jurisdiction comes in "two forms"—"general jurisdiction and specific jurisdiction."  *Boschetto*, 539 F.3d at 1016.  Plaintiffs concede the Court lacks general jurisdiction over COAMI,[5] and they cannot establish that specific jurisdiction exists either.

For a court to exercise specific jurisdiction, "'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'  In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).  For claims sounding in tort (as is the case here), the Ninth Circuit employs a three-part test to determine whether a court can exercise specific jurisdiction over a non-resident defendant: (1) the defendant must "'purposefully directed [its] activities' toward the forum"; (2) "the claim must be one

---

[5] During the parties' Rule 7-3 conference and subsequently, Plaintiffs' counsel confirmed that Plaintiffs do not intend to argue that COAMI, Chang, or Dong Yin are subject to general jurisdiction in California.

which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citations omitted).

Plaintiffs bear the burden of proving the first two prongs. *Id.* And Plaintiffs must meet this burden as to *each* defendant—they cannot simply lump defendants together. *See Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980) ("aggregating [multiple defendants'] forum contacts" was "plainly unconstitutional"). Thus, for each defendant, Plaintiffs must establish that the defendant "purposefully direct[ed]" its activities to California and that Plaintiffs' claims arise out of that defendant's forum-related activities. *See Axiom*, 874 F.3d at 1068. If Plaintiffs can meet that burden, only then does the burden shift to the defendant to show that exercising jurisdiction would be unreasonable. *Id.* at 1068-69.

Here, Plaintiffs cannot show that COAMI purposely directed its activities toward California or that their claims arise out of any forum-related activities by COAMI. Either failure alone precludes specific jurisdiction. In any event, the exercise of jurisdiction would be unreasonable.

### 1.  <u>COAMI Did Not Purposely Direct Activities to California.</u>

The purposeful direction test requires Plaintiffs to demonstrate that COAMI "(1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom*, 874 F.3d at 1069; *see also Shinde v. Nithyanada Found.*, 2014 WL 12597121, at *5 (C.D. Cal. Aug. 25, 2014) (applying "purposeful direction" test in civil RICO case). In applying this test, a court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom*, 874 F.3d at 1070. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

Plaintiffs fail to satisfy this test. To start, Plaintiffs have failed to allege that

COAMI committed any "intentional act"—that it acted "with the intent to perform an actual, physical act in the real world." *Picot*, 780 F.3d at 1214 (quotations omitted).

Plaintiffs' entire theory of liability against COAMI rests on the conclusory allegation that Chang "is, and at all relevant times was, an agent of COAMI and DONG YIN, acting within the scope of that dual agency and with the intent to benefit COAMI and DONG YIN in whole or in part" (SAC ¶ 23). Such a conclusory agency allegation is insufficient to establish that Chang was acting on behalf of COAMI in these transactions. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 911 (C.D. Cal. 2011) (finding "boilerplate/cross-authority/cross-agency/ratification allegations run afoul of *Twombly* and *Iqbal*"); *see also Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 n. 5 (9th Cir. 2017) (disregarding "conclusory legal statement unsupported by any factual assertion" that defendants "were agents or employees of each other and were acting at all times within the course and scope of such agency…").

Plaintiffs do not allege that COAMI (or Chang for that matter) did anything to cause Plaintiffs to believe that Chang was acting on COAMI's behalf, or that COAMI had any role in the transactions. *See Lennard v. Yeung*, 2012 WL 13006214, at *16 (C.D. Cal. Feb. 23, 2012) ("the question is whether the corporate defendants behaved in such a fashion that [plaintiff] could reasonably have believed that [the corporate officer] acted for them, not that plaintiffs could reasonably have reached such a conclusion"). Plaintiffs do not even allege that Chang ever told them that he was acting on behalf of COAMI or made any statements about COAMI at all. Quite the contrary, Plaintiffs allege that Chang made statements about Dong Yin's intent (SAC ¶¶ 115, 120(b)) and about what Amore required before it would release funds (SAC ¶¶ 142, 191). Given that Plaintiffs also allege that Chang was a board member of Amore (SAC ¶ 23), the Court cannot infer that Chang was acting as COAMI's agent (rather than on behalf of Amore or Dong Yin) simply because Chang simultaneously held executive positions at COAMI.

Even if Chang's limited alleged conduct was attributed to COAMI, it was not

"expressly aimed" at California.  Plaintiffs allege that Chang: (i) attended and/or made misrepresentations during meetings that did not occur in California (SAC ¶¶ 83, 108, 109, 115, 120(b)), (ii) emailed Plaintiff Javed to request certain information (*id.* ¶¶ 142, 191), and (iii) had one telephone conversation with Plaintiffs, where he is not alleged to have made any misrepresentations (*id.* ¶¶ 144, 195).  Plaintiffs include only passing references to California in these paragraphs, namely that: (i) while Chang and several others attended an in-person meeting in Washington, D.C., Plaintiff Youssefzadeh participated by telephone from California (*id.* ¶ 115); (ii) Chang knew that Plaintiff Javed was in California when he emailed him asking for information (*id.* ¶¶ 142, 191); and (iii) Plaintiffs were in California when they had one telephone conversation with Chang, during which, no misrepresentations were made (*id.* ¶¶ 144, 195).

     Thus, California comes into play only because Plaintiffs reside there.  That is not enough.  *See Axiom*, 874 F.3d at 1070 (sending 55 emails to companies in California did not amount to sufficient contacts because they reflected only "the defendant's contacts with persons who reside [in the forum state]"); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144 (9th Cir. 2017) (finding alleged contacts with Arizona insufficient because "[a]ny links to Arizona, which included Defendants' communications with Plaintiffs by telephone and email . . . occurred only because it happened to be where Plaintiffs resided"); *see also Picot*, 780 F.3d at 1213 (defendant's two trips to California did not establish personal jurisdiction because the trips were short, defendant's role in California was "relatively small," and both trips "grew incidentally" out of the broader non-California relationship); *Ivy Bridge Univ., LLC v. Higher Learning Comm'n*, 2015 WL 6555428, at *4 (N.D. Cal. Oct. 28, 2015) ("[P]ersonal jurisdiction analysis must focus on the defendants' contacts with the forum state, not the defendant's contacts with a resident of the forum.").

     In the end, Plaintiffs fail to satisfy the purposeful direction test because they are "the only link between [COAMI or Chang] and the forum."  *Axiom*, 874 F.3d at 1070.  Moreover, Plaintiffs do not even allege that Chang knew Plaintiffs resided in

1   California, or that he knew they were participating on telephone calls from California

2   (nor would these allegations be enough, in any event). *Id.* at 1069-70. The SAC merely

3   alleges that, on one occasion, Chang emailed Plaintiff Javed knowing that Plaintiff

4   Javed was in California at the time. (SAC ¶ 142.) Surely this is not enough to satisfy

5   due process.

### 2. Plaintiffs' Claims Do Not Arise Out of, or Relate to, COAMI's California Activities.

8   Even assuming Plaintiffs could show that COAMI purposely directed its (non-

9   existent) activities to California, they have not shown that their claims arise out of, or

10   relate to, those activities. The Ninth Circuit uses a "but for" causation test to determine

11   whether a plaintiff's claims arise out of the forum's activities. *See Doe v. Am. Nat'l*

12   *Red Cross*, 112 F.3d 1048, 1051-52 (9th Cir. 1997). This test is satisfied only if the

13   plaintiff would not have been injured "but for" the defendant's forum activities. *See*

14   *id.*; *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114,

15   1123-24 (9th Cir. 2002).

16   As an initial matter, Plaintiffs' claims cannot "'arise out of' [COAMI's]

17   contacts with California because [COAMI] has no contacts with California." *Weinberg*

18   *& Co., P.A. v. Beasley Food Serv., Inc.*, 2008 WL 4500004, at *4 (C.D. Cal. Oct. 3,

19   2008). In any event, the SAC alleges no facts that would suggest a close nexus between

20   COAMI or Chang's California activities and Plaintiffs' claims. At most, Plaintiffs

21   allege that Chang made certain misrepresentations at meetings that occurred in Dubai

22   and Washington, D.C. (SAC ¶¶ 109, 115, 120(b).) In other words, and as stated above,

23   Plaintiffs' claims are not "tethered to [California] in a meaningful way," but rather,

24   arise out of conduct that purportedly occurred outside of California. *Picot*, 780 F.3d

25   at 1214; *Morrill*, 873 F.3d at 1144 ("Any links to [the forum] . . . occurred only because

26   it happened to be where Plaintiffs resided.").

27   Nor can Plaintiffs establish that Chang's request for certain information in April

28   2016—months before the Bronzelink deal closed—caused any of their purported

injuries.  Indeed, Plaintiffs cannot have it both ways.  Plaintiffs cannot claim they were deceived by, and detrimentally relied upon, Chang's alleged representation in February 2016 that Dong Yin would not seek to assert control over GIP-Cayman or the Satellite Project (SAC ¶ 120), while at the same time claim that Chang's conduct in April 2016—months before Plaintiffs executed the Investment Agreements—was evidence that Dong Yin "began to assert dominance and control over the governance, management, and operations of the Satellite Project."  (SAC ¶ 190-91, 195.)  Chang's purported conduct (and COAMI's purported imputed conduct) is tangential to any supposed injuries suffered by Plaintiffs.  In fact, Plaintiffs do not allege that Chang took *any* actions after April 2016, which only highlights the implausibility of their claims against Chang (and, even more, COAMI).[6]  Plaintiffs thus fail to show that their claims arise out of, or relate to, any conduct by COAMI or Chang, let alone any activities directed towards California.

### 3.   In Any Event, the Exercise of Personal Jurisdiction Over COAMI Would Be Unreasonable.

Plaintiffs' inability to satisfy the first two elements of the specific-jurisdiction analysis precludes a finding of specific jurisdiction.  But even if Plaintiffs had satisfied their burden, the exercise of jurisdiction over COAMI would be unreasonable under the multi-factor balancing test applied by the courts.[7]

Given that Plaintiffs have not satisfied the purposeful-direction prong, "the first

---

[6]  Plaintiffs themselves acknowledged the lack of relevance of COAMI and Chang in this dispute by failing to include them in a list of 10 entities/individuals who they allege were "participants in the wrongful conduct." (*See* Dkt. 18 at 4-5 (identifying Dong Yin, COAMC, GIP-Cayman, GIP-USA, Bronzelink, Fan, Wong, Liu, Milbank, and Amore).)

[7]  Courts in the Ninth Circuit balance the following seven factors in analyzing reasonableness for purposes of personal jurisdiction: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487-89 (9th Cir. 1993) (citation omitted).

factor of purposeful interjection weighs heavily in [COAMI's] favor." *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995). And even if Plaintiffs could show purposeful direction, any contacts here are so attenuated that COAMI's "degree of interjection" weighs against exercising jurisdiction. *See Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) ("The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise.").

The second factor—COAMI's burden of litigating in California—likewise weighs against exercising jurisdiction. COAMI's principal place of business is in Hong Kong, and Chang resides in New York. And, as explained above, the alleged misrepresentations that Chang made to Plaintiffs occurred at meetings that took place in Dubai and Washington, D.C. *See FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1444 (9th Cir. 1987) (where a "defendant has done little to reach out to the forum state," the defendant's burden weighs against jurisdiction).

The third factor—the potential conflict with Hong Kong's sovereignty—likewise weighs against exercising jurisdiction because "[w]here, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 852 (9th Cir. 1993).

Similarly, as to the fifth factor, disputes are most efficiently resolved in the forum where the evidence and the witnesses are located—here, Chang's purported conduct took place in Dubai and Washington, D.C., not in California. *See Terracom*, 49 F.3d 555 at 561. Moreover, as the Court recognized in the GIP Action, Plaintiffs agreed to resolve disputes relating to the Satellite Project through arbitration in Hong Kong, not through litigation in California.

The seventh factor also counsels against jurisdiction because Plaintiffs cannot meet their "burden of proving the unavailability of an alternative forum." *Core-Vent*, 11 F.3d at 1490. Plaintiffs themselves agreed to an alternative forum to resolve

disputes relating to the financing of the Satellite Project—Hong Kong, where COAMI has its principal place of business.  New York would also be an available alternative forum because it is where Chang resides and COAMI maintains an office.  *See id.* (factor favors unreasonableness finding when alternative forum was identified); *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004) (same). And while California might be more convenient for Plaintiffs under the sixth factor, "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff." *Core-Vent*, 11 F.3d at 1490.  Particularly where, as here, "a plaintiff has the power to select a different forum." *Ins. Co. of N. Am.*, 649 F.2d at 1273.

Accordingly, the only factor that might weigh in favor of jurisdiction is California's interest in adjudicating disputes involving its own residents.  But balanced against the remaining factors, California's interest is insufficient—particularly given that COAMI "does not operate exclusively [or at all] in California." *Terracom*, 49 F.3d at 561-62.  Indeed, Hong Kong has a greater interest in adjudicating this dispute.

Because Plaintiffs cannot satisfy their burden under the first two prongs of the specific-jurisdiction test, and exercising jurisdiction would be unreasonable, the Court should dismiss the SAC for lack of specific jurisdiction over COAMI.

**B.      The Court Should Dismiss the SAC for Failure to Join Bronzelink and GIP-Cayman.**

The SAC should be dismissed because Plaintiffs failed to join two indispensable parties—Bronzelink and GIP-Cayman—as required under Rule 19 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(b)(7).

Both Bronzelink and GIP-Cayman should be parties to this dispute.  At the outset, as set forth in Milbank's Motion to Dismiss, any harm Plaintiffs allegedly suffered was derivative of the harm allegedly suffered by GIP-Cayman, and claims for direct injury to a corporate entity can be brought only by the entity itself. *See, e.g., Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 640-41 (9th Cir. 1988)

(shareholders may not bring derivative RICO claims where alleged harm accrued to corporation); *see also Desoto v. Condon*, 371 Fed. App'x 822, 824 (9th Cir. 2010) (affirming dismissal of complaint brought by limited partners and shareholders alleging theft of partnership assets); *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1108 (Cal. 2008) ("When a derivative suit is brought to litigate the rights of the corporation, the corporation is an indispensable party and must be joined as a nominal defendant.").

Indeed, Plaintiffs' 123-page SAC hinges on a single theory: that Bronzelink's investment in, and relationship with, GIP-Cayman is illegal. (*See, e.g.*, SAC ¶¶ 2, 113, 119, 121-22, 128, 149, 158, 168.)  Specifically, Plaintiffs claim that Bronzelink is "a fraudulent device that DONG YIN was using to further its plans and efforts to gain and maintain dominance and control over GIP-Cayman," rather than "an independent stand-alone and legitimate investment vehicle." (*Id.* ¶ 122.)  At the center of this dispute are the Investment Agreements, which Plaintiffs contend were fraudulently induced and misleading. (*Id.* ¶ 147, 149, 151, 158.)  The parties to those agreements include Plaintiffs, Bronzelink, and GIP-Cayman. (*Id.*)  Plaintiffs expressly allege that the named Defendants are ***not*** parties to those agreements. (*Id.*)

Yet, despite the central roles that Bronzelink and GIP-Cayman play in this dispute, neither was named as a defendant.  This omission was no accident: Plaintiffs could not join either Bronzelink or GIP-Cayman without risking that this dispute would be sent to arbitration. (*See* Arbitration Order at 2 (granting GIP-Cayman's motion to compel arbitration and noting that the parties to the arbitration provisions included "GIP-Cayman, STM Atlantic, … Youssefzadeh, Javed, [and] Bronzelink").) [8]

Plaintiffs' gerrymandered list of defendants is impermissible under Federal Rule of Civil Procedure 19.  Under that rule, a court must dismiss an action if: (1) an absent party is necessary (*i.e.*, required to be joined if feasible); (2) it is not feasible to join the absent party; and (3) the absent party is indispensable such that "in equity and good

---

[8]  Plaintiffs themselves recognize that Bronzelink and GIP-Cayman have an interest in this case, as reflected in their Certification of Interested Parties. (Dkt. 3.)

conscience" the action cannot proceed among the existing parties.  *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010).  Each element is met here.

### 1.    Bronzelink and GIP-Cayman Are Necessary Parties.

Bronzelink and GIP-Cayman are necessary parties for two independent reasons.

*First*, it is "well-established that a party to a contract which is the subject of the litigation is considered a necessary party."  *Ryan v. Volpone Stamp Co., Inc.,* 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) (collecting cases).  Both Bronzelink and GIP-Cayman are parties to the Investment Agreements. (SAC ¶ 147.)  It was through these agreements that Plaintiffs allege Bronzelink gained ownership and ultimately control of GIP-Cayman—actions that comprise the mainspring of Plaintiffs' claims.  (*Id.* ¶¶ 147-61.)  This Court has already recognized the fundamental nature of these agreements, explaining that the "SHA creates and defines the legal relationship between Bronzelink, the [Bronzelink-appointed] Directors, and GIP-Cayman," and touches on matters as diverse as GIP-Cayman board members' purported failure "to comply with the export control laws." (Arbitration Order at 11.)  Plaintiffs' allegations that the Bronzelink and the Bronzelink-appointed board members exerted improper control over GIP-Cayman therefore puts these agreements at "the very core of this dispute." (*Id.*)  And as signatories, Bronzelink and GIP-Cayman have a protectable interest in this action.  *See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002) (explaining that a party is "necessary" to a litigation "that threatens to impair [that party's] contractual interests").[9]

*Second*, Bronzelink and GIP-Cayman are necessary parties because "complete relief" cannot be accorded without them.  *See* Fed. R. Civ. P. 19(a)(1)(A).  As described

---

[9]  Moreover, Bronzelink is a party to the Facility Agreement with Amore, which Plaintiffs allege "gave DONG YIN control over Bronzelink, and, therefore, GIP-Cayman." (SAC ¶ 128.)  Plaintiffs claim that this agreement violates export control laws. (*See, e.g., id.* ¶¶ 132-33.)  Bronzelink therefore is a necessary party to this litigation, which challenges the Facility Agreement's legality.  *Camacho v. Major League Baseball*, 297 F.R.D. 457, 461 (S.D. Cal. 2013) (finding Red Devils a necessary party where "entire action hinges on one game-winning issue—the validity of the Red Devils contracts").

above and in Milbank's Motion to Dismiss, the harm alleged by Plaintiffs is derivative of the harm suffered by GIP-Cayman. *Grosset*, 42 Cal. 4th at 1108 ("When a derivative suit is brought to litigate the rights of the corporation, the corporation is an indispensable party and must be joined as a nominal defendant.").  It is difficult to imagine how Plaintiffs could wrest control of GIP-Cayman back from Bronzelink—the very purpose of this suit—without GIP-Cayman or Bronzelink as parties to this litigation.  For example, Plaintiffs' core allegation that Bronzelink-appointed directors dominate and control the GIP-Cayman board, and do "not allow Plaintiffs to have any say in the governance of GIP-Cayman," cannot be remedied without GIP-Cayman and Bronzelink as parties.  (*See* SAC ¶ 151.)

In addition, Plaintiffs seek not only monetary damages against Defendants, but also injunctive relief. (SAC ¶ 353.)  The "unlawful, unfair and fraudulent business acts and practices" that Plaintiffs seek to enjoin include actions taken by Bronzelink, Bronzelink-appointed GIP-Cayman directors, and GIP-Cayman.  (*Id.*; *see also id.* ¶ 5 (listing both GIP-Cayman and Bronzelink as parties "primarily responsible for the fraudulent conduct described in this SAC").)   Because the Court cannot enjoin Bronzelink or GIP-Cayman's conduct, it cannot accord complete relief among the existing parties.  *See Nevada Ass'n Servs., Inc. v. Tumanan*, 2014 WL 3845150, at *3 (D. Nev. Aug. 5, 2014) ("[W]here a plaintiff seeks injunctive or declaratory relief, and a third-party has an enforceable interest in the subject matter of the dispute, the court cannot grant complete relief in the third party's absence."); *Rose v. Simms*, 1995 WL 702307, at *3 (S.D.N.Y. Nov. 29, 1995) ("Courts are most likely to rule that complete relief may not be accorded among the parties present in circumstances where the absent party plays a significant role in the provision of some form of injunctive relief.").

### 2.   Joinder of Bronzelink and GIP-Cayman Is Not Feasible.

The second step in the Rule 19 inquiry is to determine whether it is "feasible" to order that the absentee be joined.  *In re Toyota Motor Corp.*, 785 F. Supp. 2d at 907.

Joinder of Bronzelink and GIP-Cayman is not feasible because the Court would not have subject matter jurisdiction over the dispute, as Bronzelink, GIP-Cayman, and Plaintiffs have agreed to arbitrate their claims in Hong Kong.  (*See* SAC ¶ 147; Arbitration Order at 2.)  *See, e.g.*, *Corsi v. Eagle Publ'g, Inc.*, 2008 WL 239581, at *5 (D.D.C. Jan. 30, 2008) (dismissing case where defendant "is necessary under Rule 19(a) but cannot be joined because of the arbitration clause in the contracts"); *LST Fin., Inc. v. Four Oaks Fincorp, Inc.*, 2014 WL 3672982, at *4 (W.D. Tex. July 24, 2014) (dismissing case where the "mandatory arbitration provisions" made joinder of necessary parties "unfeasible").  And as this Court already held, Plaintiffs' allegations regarding GIP-Cayman's internal governance and the conduct of the Bronzelink-appointed directors are at "the core of Plaintiffs' claims" and plainly "touch matters" covered by the arbitration provision.  (Arbitration Order at 11.)[10]

### 3.  GIP-Cayman and Bronzelink Are Indispensable Parties.

The final step of the Rule 19 inquiry is determining whether the absent party is an indispensable party such that in "equity and good conscience" the action cannot proceed among the existing parties.  *Peabody Western Coal Co.*, 610 F.3d at 1083.

As an initial matter, Bronzelink and GIP-Cayman are indispensable because of their contractual rights at stake and because Plaintiffs' alleged harm is derivative of harm allegedly suffered by GIP-Cayman.  *See Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.");

---

[10]  In addition, joinder of Bronzelink may not be feasible because it is a foreign entity that is not likely subject to personal jurisdiction in California. (*See* Declaration of Yeun Cheung Wong filed in GIP Action, Dkt. 20, stating that Bronzelink is incorporated under the laws of the British Virgin Islands, and is headquartered in Hong Kong.)  *See In re Toyota*, 785 F. Supp. 2d at 907 (joinder not feasible where "[t]here is nothing in the record to suggest that the Court has personal jurisdiction over the unnamed foreign entities . . . [as] these entities appear to be foreign corporations lacking contacts with the United States.").  If the Court determines that joinder of GIP-Cayman and Bronzelink is feasible, COAMI respectfully requests that the Court order them joined and order that the action be stayed pending arbitration.

*Dawavendewa*, 276 F.3d at 1157 ("[A] party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022-24 (9th Cir. 2002) (absent parties are indispensable if the lawsuit affects their "substantial" rights "aris[ing] from terms in bargained contracts"); *Grosset*, 42 Cal. 4th at 1108 ("When a derivative suit is brought to litigate the rights of the corporation, the corporation is an indispensable party and must be joined as a nominal defendant.").

Moreover, both Bronzelink and GIP-Cayman are indispensable under the relevant four-factor test which considers: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by shaping the judgment or the relief; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed. *Peabody Western Coal Co.*, 610 F.3d at 1083; Fed. R. Civ. P. 19(b).

These factors favor dismissal. Prejudice to Bronzelink and GIP-Cayman is not only likely—but practically presumed—given the contractual interests at stake. *See U.S., ex rel. Hill v. Coulter*, 1998 WL 460239, at *2 (N.D.N.Y. July 31, 1998) ("[P]rejudice is almost presumed given that a contracting party is often the prime example of illustrating a prejudiced party."). Moreover, a finding by the Court that Bronzelink or GIP-Cayman were not independent entities, but instead instrumentalities of the PRC, could have serious real-world impact for both entities. *See Meyer v. Kalanick*, 2016 WL 3509496, at *3 (S.D.N.Y. June 20, 2016) ("As Rule 19 recognizes, it is the practical effects of non-joinder on which the Court must focus, and [absent party] faces real-world impediments to its interests that justify the application of mandatory joinder.").

Defendants would also be prejudiced by Bronzelink and GIP-Cayman's absence. For example, if the Court was to rule that Dong Yin's alleged indirect debt financing in Bronzelink through Amore is illegal and enjoin Dong Yin from providing

such financing or taking other action, then Dong Yin would be subjected to potentially inconsistent obligations in eventual suits against it by Bronzelink and GIP-Cayman. *See Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1292 (10th Cir. 2003) (defendant "might well be prejudiced by multiple litigation or even inconsistent judgments"). As explained above, the Court could not shape effective relief without Bronzelink or GIP-Cayman in the suit. *See* Fed. R. Civ. Proc. 19(b)(2)-(3).

And finally, Plaintiffs clearly have an adequate remedy available despite the dismissal of this action: to arbitrate their dispute in Hong Kong, as they agreed to do. *See Corsi*, 2008 WL 239581, at *5 ("Obviously, plaintiffs have a remedy. They may pursue arbitration… [T]here is no legal or equitable reason for the Court to exercise its discretion under Rule 19(b) to permit the plaintiffs to evade their contractual obligations by instituting suit against a non-party to the contract.").

**C.    Plaintiffs' Claims Against COAMI Should Be Dismissed For Failure to State a Claim.[11]**

The Court should dismiss the SAC under Rule 12(b)(6) because Plaintiffs fail to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). And "allegations that are merely conclusory, unwarranted deductions of fact, or

---

[11] For the reasons set forth in the Motions to Dismiss filed by co-defendants Milbank, Dong Yin, and Chang, each of Plaintiffs' claims are fatally flawed and should be dismissed for several reasons, including because they are not ripe for review, Plaintiffs lack standing to bring them, and they are not sufficiently pled. In addition to the arguments raised by co-defendants, which are applicable to COAMI either directly or by analogy, the claims against COAMI fail to state a claim for the additional reasons set forth in this section.

unreasonable inferences" are not entitled to the presumption of truth. *In re Gilead Sci. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Moreover, given the "quasi-criminal" nature of a civil RICO suit and the stigmatizing effects of such suits on defendants, courts should "strive to flush out frivolous RICO allegations at an early stage of the litigation." *Quach v. Cross*, 2004 WL 2860346, at *5 (C.D. Cal. June 10, 2004), aff'd, 252 F. App'x 775 (9th Cir. 2007) (quoting *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1108 (9th Cir. 2003)). Federal courts in this District and elsewhere therefore require careful scrutiny of RICO cases and routinely dispose of claims unsupported by sufficient allegations.

### 1.    Plaintiffs Fail to Satisfy Rule 9(b) As To All Claims.

Each of Plaintiffs' claims against COAMI is grounded in fraud, including the RICO and UCL claims, and therefore, subject to Rule 9(b). *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) ("We have applied the particularity requirements of rule 9(b) to RICO claims."); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (applying Rule 9(b) to UCL claim, and stating that if "the claim is said to be 'grounded in fraud'. . . the pleading of that claim as a *whole* must satisfy the particularity requirement of Rule 9(b).") (citation omitted) (emphasis in original); *Goh, et al. v. Prima Fin. Grp. Inc. et al.*, No. CV 17-03630-SVW-PJW, 2017 WL 7887860, at *3 (C.D. Cal. July 26, 2017) (applying Rule 9(b) to RICO conspiracy where the predicate acts sound in fraud).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (allegations "grounded in fraud" must be pled with particularity). Rule 9(b) requires a party to plead "with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). "When a plaintiff alleges fraud by multiple defendants, the plaintiff may not merely lump the defendants together; Rule

9(b) requires plaintiffs to 'inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Cent. Coast Pipe Lining, Inc. v. Pipe Shield USA, Inc.*, 2013 WL 1703023, at *4 (C.D. Cal. Apr. 19, 2013) (quoting *Swartz*, 476 F.3d at 764–65). And this rule applies even "when the defendants are related corporate entities," *United States v. Scan Health Plan*, 2017 WL 4564722, at *7 (C.D. Cal. Oct. 5, 2017). Moreover, "where a plaintiff alleges that a defendant is liable for fraud under an agency theory, Rule 9(b) requires that the existence of the agency relationship be pled with particularity." *Jackson v. Fischer*, 2013 WL 6732872, at *17 (N.D. Cal. Dec. 20, 2013).

Nowhere in Plaintiffs' 123-page SAC do Plaintiffs allege COAMI's purported role or interest in the alleged fraudulent scheme. Rather, Plaintiffs rely on conclusory allegations that Chang was acting as COAMI's agent in his dealings with Plaintiffs (while simultaneously acting as Dong Yin's agent and as a director for Amore). Plaintiffs' allegations fall far short of pleading agency with particularity, as they do not allege that COAMI authorized any fraudulent conduct, that Chang made any representations regarding COAMI's purported role in the transaction, or that Chang ever stated he was acting on behalf of COAMI. *See Barba v. Seung Heun Lee*, 2009 WL 8747368, at *7 (D. Ariz. Nov. 4, 2009) (finding plaintiffs' conclusory statements of an agency relationship insufficient to satisfy Rule 9(b) where plaintiffs failed to allege, among other things, that corporate defendants consented to commit fraudulent acts); *see also Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991) (in a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.").[12]

---

[12] Similarly, Plaintiffs' conclusory and unfounded allegation that "Defendants, and each of them, made and caused others to make the following false and misleading representations and false promises, among others, to Plaintiffs . . ." (SAC ¶ 286) plainly violates Rule 9(b). *See Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) ("Rule 9(b) does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant.") (internal quotations and citation omitted).

Thus, each of Plaintiffs' claims against COAMI fail.[13]   And even if Plaintiffs had sufficiently alleged agency (they did not), the SAC's fleeting references to Chang are insufficient to plead fraudulent conduct with particularity as to Chang (and therefore as to COAMI) as explained in more detail in Chang's Motion to Dismiss, or that Chang's alleged conduct proximately caused any cognizable injury for the reasons explained above and in co-defendants' Motions to Dismiss.

### 2.   **Plaintiffs Fail to Allege COAMI Engaged in A "Pattern of Racketeering Activity."**

To allege a plausible substantive RICO claim under either 18 U.S.C. § 1962(b) or (c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007).

Plaintiffs fail to allege COAMI participated in any conduct, let alone a pattern of racketeering activity.   To plead a pattern of racketeering activity, Plaintiffs must allege that COAMI committed *at least two* of the statutorily enumerated predicate acts, which Plaintiffs have failed to do.  *See* 18 U.S.C. § 1961(5); *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1177 (E.D. Cal. 2017) ("Where RICO claims under § 1962(c) are asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant.").[14]

Plaintiffs do not allege COAMI committed any predicate acts, and even if Chang's conduct is attributed to COAMI (it should not), Plaintiffs allege that Chang

---

[13]  Because Plaintiffs have failed to sufficiently allege fraud, their conspiracy to defraud claim likewise fails. *See Barney v. Aetna Cas. & Sur. Co.*, 185 Cal. App. 3d 966, 981 (1986) ("[A] cause of action for civil conspiracy cannot stand by itself, but must rest upon the successful allegation of an underlying wrong"); *see also AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 947 (N.D. Cal. 2003) (holding plaintiff "cannot plead conspiracy as an independent cause of action" because "civil conspiracy is not a separate and distinct cause of action under California law").

[14]  *See also Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (at least two acts of racketeering activity are required, but not necessarily sufficient, under RICO to establish a pattern); *United States v. Persico*, 832 F.2d 705, 721 (2d Cir. 1987); *Harmoni Int'l Spice, Inc. v. Wenxuan Bai*, 2016 WL 9275400, at *15 (C.D. Cal. Nov. 14, 2016); *Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*, 2013 WL 12122308, at *7 (C.D. Cal. July 23, 2013); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 914 (C.D. Cal. 2012).

engaged in only one racketeering act.  (SAC ¶ 313 (Racketeering Act Six).)  Thus, Plaintiffs fail to plead a pattern of racketeering as to Chang (and thus as to COAMI).

### 3. Plaintiffs Fail to Allege COAMI Directed the Affairs of the RICO Enterprises.

To plausibly plead a violation of the RICO statute, Plaintiffs must allege that each defendant "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original).  This requires a defendant to have had "some part in directing" the "operation and management" of the enterprise itself.  *Id.* at 179.  And more is required than "simply being involved," and "[s]imply performing services for the enterprise does not rise to the level of direction." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).  "Relevant considerations include whether the defendant occup[ies] a position in the chain of command . . . through which the affairs of the enterprise are conducted, whether the defendant knowingly implement[ed] the decisions of upper management, and whether the defendant's participation was vital to the mission's success." *Wellpoint*, 903 F. Supp. 2d at 910 (quoting *Walter*, 538 F.3d at 1249) (internal quotations omitted).

Plaintiffs do not allege that COAMI took any action to direct the enterprise, and Chang's alleged conduct (as discussed above) was tangential at best and in no way "vital to the mission's success." *Id.*; *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) ("The [RICO] statute does not penalize tangential involvement in an enterprise . . . .").

### 4. Plaintiffs' RICO Conspiracy Claims Also Fail.

Plaintiffs' RICO conspiracy claims fail for two separate reasons.  First, as set forth above and in the co-defendants' Motions to Dismiss, Plaintiffs do not adequately plead any substantive RICO claims, so their RICO conspiracy claims must also fail. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead

a substantive violation of RICO.") (internal quotations and citation omitted).  Second, Plaintiffs' conspiracy allegations are wholly conclusory, particularly as to COAMI and Chang.  Plaintiffs do not plead facts showing "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses."  *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  Nor do they plead with particularity, as they must, facts showing that each defendant was "aware of the essential nature and scope of the enterprise and intended to participate in it."  *Id.* (internal quotations and citation omitted).[15]

**D.    Alternatively, the Court Should Stay the Action Pending Arbitration.**

For the reasons set forth in Dong Yin's Motion to Stay, the Court should alternatively stay this action pending arbitration.

## IV.    CONCLUSION

For the reasons set forth above and in the Motions to Dismiss filed by the co-defendants, COAMI respectfully requests that the Court dismiss Plaintiffs' SAC for lack of personal jurisdiction under Rule 12(b)(2), or, in the alternative, for failure to join indispensable parties, lack of ripeness and standing, and failure to state a claim. At a minimum, COAMI requests that the Court stay this action pending arbitration, for the reasons set forth in Dong Yin's Motion to Stay Pending Arbitration.

Dated:  September 21, 2018

JONES DAY

By:   /s/
Rasha Gerges Shields

Attorneys for Specially Appearing Defendant CHINA ORIENT ASSET MANAGEMENT (INTERNATIONAL) HOLDING LIMITED

---

[15] Because the Court's jurisdiction is premised on the RICO claims that should be dismissed (*See* SAC ¶ 32), the Court should decline to exercise supplemental jurisdiction over the state law claims and dismiss those claims as well. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citations omitted) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.").