John C. Hueston, State Bar No. 164921
*jhueston@hueston.com*
Alison Plessman, State Bar No. 250631
*aplessman@hueston.com*
Adam Olin, State Bar No. 298380
*aolin@hueston.com*
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:   (213) 788-4340
Facsimile:    (888) 775-0898

Attorneys for Defendant
DONG YIN DEVELOPMENT (HOLDINGS)
LIMITED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STM ATLANTIC N.V., a Dutch company; STM GROUP, INC., a Delaware corporation; EMIL YOUSSEFZADEH, an individual; and UMAR JAVED, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>DONG YIN DEVELOPMENT (HOLDINGS) LIMITED, a Hong Kong unlimited company; CHINA ORIENT ASSET MANAGEMENT (INTERNATIONAL) HOLDING LIMITED, a Hong Kong limited company; and LUDWIG CHANG, an individual,<br><br>Defendants. | Case No. 2:18-cv-1269-JLS (JCGx)<br>Assigned to the Hon. Josephine L. Staton<br><br>**SPECIALLY APPEARING DEFENDANT DONG YIN DEVELOPMENT (HOLDINGS) LIMITED'S NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        November 30, 2018<br>Time:        2:30 p.m.<br>Courtroom:  10A<br><br>SAC Filed:  August 14, 2018<br>Trial Date:  Not Set |

1 **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2 **PLEASE TAKE NOTICE** that on November 30, 2018, at 2:30 p.m., before the

3 Honorable Josephine L. Staton of the United States District Court for the Central

4 District of California located at the Ronald Reagan Federal Building and U.S.

5 Courthouse, 411 West 4th Street, Santa Ana, CA 92701, Courtroom 10A, Specially

6 Appearing Defendant Don Yin Development (Holdings) Limited ("Defendant") will

7 and hereby does move the Court for an Order dismissing Plaintiffs' Second Amended

8 Complaint. This Motion is based on this Notice of Motion, the Memorandum of Points

9 and Authorities filed herewith, the pleadings and papers filed in this action, the

10 Motions to Dismiss filed or to be filed by Dong Yin's co-Defendants, and such other

11 matters as may be presented to the Court at the time of the hearing.

12 Dong Yin makes this Motion on the grounds that Plaintiffs have failed to state

13 a claim against Dong Yin and the Court lacks personal jurisdiction over Dong Yin.

14 Dong Yin also joins in the Motions to Dismiss filed or to be filed by its co-Defendants,

15 including Defendant Milbank, Tweed, Hadley & McCloy, Defendant China Orient

16 Asset Management (International) Holding Limited ("COAMI"), and Defendant

17 Ludwig Chang.

18 This motion is made following the conference of counsel pursuant to L.R. 7-3,

19 which took place on September 13, 2018. The parties were unable to reach a resolution

20 that would obviate the need for this motion.

21 Dated: September 21, 2018

22 HUESTON HENNIGAN LLP

23

24 By: /s/ John C. Hueston
    John C. Hueston
25 Attorneys for Specially Appearing
    Defendant DONG YIN
26 DEVELOPMENT (HOLDINGS)
    LIMITED

27

28

---

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   OVERVIEW OF PLAINTIFFS' ALLEGATIONS .......................................... 3

      A.    Plaintiffs Seek Funding for Their Business Idea ..................... 3

      B.    Plaintiffs Accept Bronzelink's Investment and Understood
            Dong Yin's Role ......................................................................... 4

      C.    Plaintiffs Disagree with Bronzelink's Management of GIP ................. 5

      D.    Plaintiffs Resign from GIP and File Lawsuits ....................... 5

III.  ARGUMENT ....................................................................................... 6

      A.    Standard of Review ................................................................ 6

      B.    Plaintiffs' Claims Against Dong Yin Must Be Dismissed
            Because They Are Based on Conclusory Allegations of
            Agency Liability ..................................................................... 6

      C.    The Court Lacks Personal Jurisdiction Over Dong Yin ..................... 11

            1.    Plaintiffs' Personal Jurisdiction Allegations Against
                  Dong Yin Are Based on Insufficiently Pleaded
                  Agency Relationships .............................................. 12

            2.    Plaintiffs Cannot Establish Personal Jurisdiction
                  Even with the Contacts of Its Purported Agents ....................... 12

            3.    Plaintiffs' Claims Do Not Arise from These Alleged
                  Contacts ................................................................. 14

            4.    The Exercise of Personal Jurisdiction over Dong Yin
                  Would be Unreasonable .......................................... 15

      D.    The Court Should Dismiss the RICO And Fraud Claims ................. 18

      E.    Plaintiffs' State Law Claims Should Be Dismissed ......................... 20

            1.    Neither Unjust Enrichment Nor Civil Conspiracy
                  Are Standalone Claims ............................................ 21

            2.    Plaintiffs Have Not Pleaded A Claim For Receipt of
                  Stolen Property ....................................................... 21

            3.    Plaintiffs Have Not Pleaded A Tortious Interference
                  Claim ...................................................................... 22

            4.    Plaintiffs' UCL Claim Should Be Dismissed ......................... 23

IV.   CONCLUSION ................................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*,
1 F.3d 848 (9th Cir. 1993) ................................................................. 16

*Asahi Metal Indus. Co., Ltd. v. Superior Court*,
480 U.S. 102 (1987) .......................................................................... 16

*Ashcroft v. Iqbal*,
556 U.S. 6628 (2009) .......................................................................... 6

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
874 F.3d 1064 (9th Cir. 2017) ........................................................... 13

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ............................................................. 15

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*,
223 F.3d 1082 (9th Cir. 2000) ........................................................... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 6

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
727 F.3d 917 (9th Cir. 2013) .............................................................. 7

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ........................................................... 11

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017) ...................................................................... 11

*Buchanan v. Neighbors Van Lines*,
2010 WL 4916644 (C.D. Cal. Nov. 29, 2010) ...................................... 7

*Calvert v. Huckins*,
875 F. Supp. 674 (E.D. Cal. 1995) .................................................... 10

*Chapter 7 Tr. v. Gate Gourmet, Inc.*,
683 F.3d 1249 (11th Cir. 2012) ......................................................... 14

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993) ....................................................... 17, 18

*Derby City Capital, LLC v. Trinity HR Servs.*,
949 F. Supp. 2d 712 (W.D. Ky. 2013) .............................................. 19

*Ferguson v. Moeller*,
2016 WL 1106609 (W.D. Pa. Mar. 22, 2016) ..................................... 19

*Fifty-Six Hope Rd. v. Jammin Java Corp.*,
2017 WL 2457487 (C.D. Cal. Jan. 25, 2017) ..................................... 22

- ii -

<u>TABLE OF AUTHORITIES (cont.)</u>

Page(s)

*Grouse River Outfitters Ltd. v. NetSuite, Inc.,*
   2016 WL 5930273 (N.D. Cal. Oct. 12, 2016)................................................22

*GT Sec., Inc. v. Klastech GmbH,*
   2014 WL 2928013 (N.D. Cal. June 27, 2014) ............................................16

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*
   328 F.3d 1122 (9th Cir. 2003)........................................................................8

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984) ....................................................................................11

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.,*
   865 F. Supp. 2d 1002 (C.D. Cal. 2011)........................................................18

*Ins. Co. of N. Am. v. Marina Salina Cruz,*
   649 F.2d 1266 (9th Cir. 1981)......................................................................16

*Int'l Shoe Co. v. Washington,*
   326 U.S. 310 (1945) ....................................................................................11

*Jackson v. Fischer,*
   931 F. Supp. 2d 1049 (N.D. Cal. 2013) .....................................................7, 9

*J'Aire Corp. v. Gregory,*
   24 Cal. 3d 799 (1979)...................................................................................22

*Lacagnina v. Comprehend Sys., Inc.,*
   25 Cal. App. 5th 955 (2018)..........................................................................22

*Lachmund v. ADM Investor Servs., Inc.,*
   191 F.3d 777 (7th Cir. 1999)..........................................................................7

*Lennard v. Yeung,*
   2012 WL 13006214 (C.D. Cal. Feb. 23, 2012)............................................8

*Loral Terracom v. Valley National Bank,*
   49 F.3d 555 (9th Cir.1995).............................................................................14

*Low v. LinkedIn Corp.,*
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......................................................21

*Menken v. Emm,*
   503 F.3d 1050 (9th Cir. 2007)........................................................................14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
   243 F. Supp. 2d 1073 (C.D. Cal. 2003)........................................................15

*Morrill v. Scott Fin. Corp.,*
   873 F.3d 1136 (9th Cir. 2017)........................................................................13

*Nahid Kabir v. Flagstar Bank, FSB et al.,*

- iii -

## TABLE OF AUTHORITIES (cont.)

Page(s)

2016 WL 10999326 (C.D. Cal. May 11, 2016) ................................................ 7

*Navarrete v. Meyer*,
237 Cal. App. 4th 1276 (2015)....................................................................... 21

*Neilson v. Union Bank of CA., N.A.*,
290 F. Supp. 2d. 1101 (C.D. Cal. Oct. 2003)................................................. 10

*Palomares v. Bear Stearns Residential Mortg. Corp.*,
2008 WL 686683 (S.D. Cal. Mar. 13, 2008)................................................... 8

*Picot v. Western*,
780 F.3d 1206 (9th Cir. 2015) ....................................................................... 15

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ....................................................................... 11

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
630 F.3d 866 (9th Cir. 2010) ......................................................................... 18

*Rongxiang Xu v. Nobel Assembly at Karolinska Institutet*,
2013 WL 9760036 (C.D. Cal. Nov. 20, 2013) .......................................... 16, 17

*Schaffer Family Investors, LLC v. Sonnier*,
120 F. Supp. 3d 1028 (C.D. Cal. 2015)........................................................... 8

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
119 F. Supp. 3d 1213 (C.D. Cal. 2015)......................................................... 20

*Stiles v. Trader Joe's Co.*,
2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) .................................................. 23

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ........................................................................... 7

*Thomas v. Taco Bell Corp.*,
879 F. Supp. 2d 1079 (C.D. Cal. 2012)........................................................... 8

*Thomas v. Thomas*,
2015 WL 12681311 (C.D. Cal. May 8, 2015)................................................ 16

*Vicon Fiber Optics Corp. v. Scrivo*,
201 F. Supp. 2d 216 (S.D.N.Y. 2002) ........................................................... 19

*Walden v. Fiore*,
571 U.S. 277 (2014) ........................................................................... 11, 12, 13

*Williams v. Wraxall*,
33 Cal. App. 4th 120 (1995).......................................................................... 20

*Williams v. Yamaha Motor Co. Ltd.*,
851 F.3d 1015 (9th Cir. 2017)............................................................... 7, 8, 12

- iv -

<u>TABLE OF AUTHORITIES</u> (cont.)

<u>Page(s)</u>

*Youssefzedeh v. Global-IP Cayman*,
     2:18-cv-02522-JLS-JCG ................................................................................ 6

*Yung v. Lee*,
     2002 WL 31008970 (S.D.N.Y. Sept. 5, 2002) ................................................ 18

**<u>Other Authorities</u>**

Black's Law Dictionary 28 (2009) ........................................................................ 19

U.S. Dep't of State, Bureau of Consular Affairs, Judicial Assistance
     Country Information, March 29, 2018 ............................................................ 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This case is fundamentally a dispute over corporate governance between the majority and minority shareholders of a Grand Caymans company, GIP-Cayman, which was formed to own and operate a satellite that would provide high-speed internet access in sub-Saharan Africa (the "Satellite Project").  Defendant Dong Yin is not one of those shareholders, but has been dragged into this dispute by Plaintiffs—GIP-Cayman's minority shareholders—in a transparent attempt to avoid arbitrating these claims in Hong Kong against GIP-Cayman's majority shareholder, Bronzelink. But Plaintiffs' artful pleading cannot evade the fact that Dong Yin—a Hong Kong investment company that provided indirect debt financing to Bronzelink in connection with Bronzelink's purchase of its stake in GIP-Cayman with Plaintiffs' knowledge and acceptance—is not the proper defendant, and the Court should dismiss all claims against it.

*First*, Plaintiffs do not sufficiently plead *any* relevant conduct by Dong Yin. The SAC rests almost entirely upon attributing to Dong Yin under an agency theory the conduct of three GIP-Cayman directors appointed by Bronzelink (Defendants Liu, Wong, and Fan).  But rather than alleging facts that would support an inference that these directors—who are not employees or officers of Dong Yin—are in fact Dong Yin's agents, Plaintiffs instead assert without any factual basis that the relationship exists, which is insufficient under Rules 8 and 9(b) of the Federal Rules of Civil Procedure.  And without imputing their contacts to Dong Yin, the few remaining scattered references to Dong Yin in the Second Amended Complaint ("SAC") cannot sustain any of Plaintiffs' claims.

*Second*, the Court lacks personal jurisdiction over Dong Yin, an investment company based in Hong Kong with no presence in the United States.  Plaintiffs' personal jurisdiction allegations against Dong Yin are based entirely on the fleeting California contacts of its purported agents.  But even if Plaintiffs had sufficiently

- 1 -

pleaded facts to support their agency allegations, the limited forum-related activities of these individuals do not give rise to Plaintiffs' claims, as they must.  Thus, the exercise of personal jurisdiction would be unreasonable. The vast majority of relevant witnesses and documents are located abroad, subject to intricate data privacy laws of both Hong Kong and the PRC.  And Hong Kong is an available forum through which Plaintiffs may vindicate their claims.

*Third*, Plaintiffs have failed to properly plead its RICO and fraud claims.  In addition to the reasons set forth in the Motion to Dismiss filed by Defendant Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), which Dong Yin joins and describes briefly below, Plaintiffs' RICO claims against Dong Yin fail for the additional reasons that Plaintiffs have failed to sufficiently allege two predicate acts by Dong Yin and base their claims against Dong Yin on insufficiently pleaded agency relationships. Plaintiffs' RICO and fraud claims moreover fail because they presume that Dong Yin had a duty to close to Plaintiffs, but have failed to allege any facts that would support an inference that any such duty existed.

*Fourth*, Plaintiffs' state law claims must be dismissed for a lack of subject matter jurisdiction.  The Court's sole basis for jurisdiction over these claims is supplemental jurisdiction under 28 U.S.C. § 1367.  Because the Court should dismiss Plaintiffs' federal claims, the Court should similarly decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.  Moreover, all of Plaintiffs' state law claims again depend on their insufficient agency allegations and fail for additional reasons set forth below.

*Finally*, Dong Yin joins in the Motions to Dismiss filed or to be filed by its co-Defendants. As set forth in the Motions to Dismiss filed concurrently by Defendants Milbank and COAMI, Plaintiffs' claims must be dismissed for the following additional reasons, among others: (1) Plaintiffs lack standing to bring their claims because their alleged harm is derivative of harm allegedly suffered by GIP- Cayman; (2) Plaintiffs' claims are not ripe because, among other things, Plaintiffs have failed to plead

cognizable damages. They assert loss of unrealized, speculative profits and a dilution of their shares in GIP-Cayman, neither of which can sustain their claims for damages; (3) Plaintiffs' RICO claims must be dismissed because they allege a singular purpose scheme, not a pattern of racketeering as required; (4) Plaintiffs' claims should be dismissed because Plaintiffs fail to allege Defendants' conduct proximately caused their alleged injury; and (5) Plaintiffs' claims must be dismissed because non-parties GIP-Cayman and Bronzelink are the entities at the center of this dispute and are indispensable.

## II.   OVERVIEW OF PLAINTIFFS' ALLEGATIONS[1]

### A.   Plaintiffs Seek Funding for Their Business Idea

This case arises out of Plaintiffs' attempts to secure investment for a business plan they had to launch a satellite to provide internet in sub-Saharan Africa. In 2013, Plaintiffs incorporated GIP-Cayman to serve as the entity that would own and operate the satellite. (SAC ¶ 73.) Although Plaintiffs had developed the concept, the Satellite Project required several hundred million dollars in investment to build and launch a satellite. (SAC ¶ 78.) Lacking those funds, Plaintiffs sought to sell an equity stake in GIP-Cayman (and therefore the Satellite Project) in return for the initial funds. *Id.*

Plaintiffs' efforts eventually led them to seek investment in China. In or about July 2015, Plaintiffs allege they were contacted by representatives of COAMC[2] and Dong Yin, both of whom allegedly expressed an interest in investing in the Satellite Project. (SAC ¶ 79.) Dong Yin is based in Hong Kong. Plaintiffs do not allege that Dong Yin has offices in California or elsewhere in the United States. They similarly fail to allege that Dong Yin has employees or agents working in the United States.

---

[1] Dong Yin sets forth allegations of Plaintiffs for purposes of this Motion to Dismiss, but does not purport to admit or deny them here.

[2] COAMC is the China Orient Asset Management Company, a state-owned entity of the People's Republic of China. (SAC ¶¶ 20, 79.)

In early October 2015, Plaintiffs allege they learned that Dong Yin was interested in investing in the Satellite Project by providing indirect debt financing to a separate company known as China Orient Smart Ecotech Investment Group Limited ("COSEIG").  (SAC ¶¶ 93, 95.)  Following negotiations, Plaintiffs and COSEIG entered into a Joint Venture Agreement (the "COSEIG JVA").  (SAC ¶ 103.)  The COSEIG JVA provided that COSEIG would purchase a 75% equity stake in GIP-Cayman in return for $175 million.  (SAC ¶ 104.)  Plaintiffs understood that COSEIG intended to participate in "the governance, management and operations of GIP-Cayman."  (SAC ¶ 119.)  To ensure that the structure complied with applicable U.S. law, Plaintiffs believed that Dong Yin, as the ultimate source of COSEIG's funds via a loan, should secure compliance advice from U.S. counsel.  (SAC ¶ 106.)  Dong Yin subsequently hired the Milbank law firm as counsel.  (*Id.*)  Plaintiffs, COSEIG, and Dong Yin subsequently conducted joint due diligence meetings in Dubai in January 2016.  (SAC ¶ 108.)  However, the COSEIG transaction was soon terminated on February 25, 2016.  (SAC ¶ 119.)

## B.    Plaintiffs Accept Bronzelink's Investment and Understood Dong Yin's Role

In February 2016, Plaintiffs allege they began to pursue a similar transaction with a different Hong Kong company, Bronzelink. (SAC ¶ 119.)  Again, Plaintiffs understood that Bronzelink intended to play "a role in the governance, management and operations of GIP-Cayman." (*Id.*) The Bronzelink JVA was subsequently replaced by a Share Purchase Agreement ("SPA") and a Shareholders Agreement ("SHA"), which were intended to replace the placeholder JVA. (SAC ¶ 123.) To effectuate the parties' decision to afford Bronzelink the right to play its desired role in governing GIP-Cayman, the SHA provided that Bronzelink would appoint six of the nine directors of GIP-Cayman's board. (SAC ¶ 160(a).) Bronzelink and Plaintiffs executed the SPA and SHA in May 2016. (SAC ¶ 147.) By doing so, GIP-Cayman agreed to issue and sell 75% of its equity to Bronzelink in return for $175 million.  (SAC ¶¶ 151-

52.) Plaintiffs' equity interest in GIP-Cayman (and therefore the Satellite Project) was reduced to 15.75%.  (SAC ¶ 151.)

Plaintiffs understood throughout this process that Dong Yin would supply the necessary financing to Bronzelink to complete the transaction. (SAC ¶ 141.) Dong Yin lent this money to Bronzelink via a British Virgin Islands company named Amore Resources Limited ("Amore"). (SAC ¶¶ 5, 141.) Plaintiffs allege that, on or about April 27 or 28, 2016, Dong Yin informed Plaintiffs that Amore was a wholly owned subsidiary of Dong Yin. (SAC ¶ 145.) Amore and Bronzelink thereafter formalized the lending arrangement in the form of a facility agreement in March 2016 (the "Facility Agreement"). (SAC ¶ 126.) This agreement provided certain terms to protect Amore's $250,000,000 investment in Bronzelink.  (SAC ¶ 128.)

### C.   Plaintiffs Disagree with Bronzelink's Management of GIP

In May 2016 Bronzelink exercised its right to appoint directors to the board of GIP-Cayman. (SAC ¶ 167.) These individuals included Shiwen Fan, Yuen-Cheung (Tony) Wong, and Bonnie Liu (the "Bronzelink Directors"). (*Id.*) GIP-Cayman thereafter formed GIP-USA in August 2016 as a wholly owned subsidiary to function as the Satellite Project's operating company.  (SAC ¶ 173.) Plaintiffs allege that they and the Bronzelink Directors began to frequently clash. For example, when a Bronzelink-appointed director suggested that the GIP-Cayman directors be compensated, Mr. Youssefzadeh objected, believing the amount too generous.  (SAC ¶ 215.) They similarly disputed over whether to obtain debt financing from Citigroup and whether the company was in compliance with U.S. export control laws.  (SAC ¶¶ 236-263.)

### D.   Plaintiffs Resign from GIP and File Lawsuits

Following their failure to cudgel Bronzelink into managing GIP-Cayman in the manner they desired, Plaintiffs resigned their officer positions in the summer of 2017. (SAC ¶ 257.) Despite their resignations, Plaintiffs were invited to rejoin GIP-Cayman but elected not to do so. (SAC ¶ 277.) Plaintiffs filed the instant lawsuit in February

- 5 -

2018, as well as a related case against GIP-Cayman, GIP-US, and Dong Yin based on their employment agreements, which has been stayed pending arbitration in Hong Kong between GIP-Cayman and Plaintiffs. *See Youssefzedeh v. Global-IP Cayman*, 2:18-cv-02522-JLS-JCG [Dkt. 30]; *see also* Dong Yin's concurrently filed Motion to Stay Pending Arbitration.

## III. ARGUMENT

### A. Standard of Review

To state a claim upon which relief can be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678.

### B. Plaintiffs' Claims Against Dong Yin Must Be Dismissed Because They Are Based on Conclusory Allegations of Agency Liability

The crux of the SAC is that Dong Yin orchestrated a fraudulent conspiracy through its purported agents to take control of GIP-Cayman through its indirect investment in Bronzelink. Indeed, the SAC alleges that "*[t]hrough its agents* and together with its co-conspirators, DONG YIN agreed, conspired and schemed to obtain control of the Satellite Project from Plaintiffs[.]" (SAC ¶ 3 (emphasis added).) But while the SAC is replete with rote repetitions that non-employees Ludwig Chang, Shiwen Fan, Tony Wong, and Bonnie Liu were each "an agent of DONG YIN," (SAC ¶¶ 23-30), it contains no allegations from which to reasonably infer an agency relationship existed and is therefore insufficient under Rules 8 and 9(b). Accordingly, Plaintiffs' conclusory agency allegations must be disregarded and cannot provide a

- 6 -

1  basis for this Court to exercise personal jurisdiction over Dong Yin or for Plaintiffs to
2  state a claim for relief against Dong Yin.

3    Allegations that one individual acted as the agent of another "without any stated
4  factual basis are insufficient as a matter of law." *Swartz v. KPMG LLP*, 476 F.3d 756,
5  765 (9th Cir. 2007); *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 n.5 (9th
6  Cir. 2017) (disregarding allegation that "[d]efendants . . . were the agents or employees
7  of each other and were acting at all times within the course and scope of such agency
8  and employment" because it was a "conclusory legal statement unsupported by any
9  factual assertion" (alteration in original)); *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727
10 F.3d 917, 926-27 (9th Cir. 2013) (holding conclusory allegation based on "information
11 and belief" that defendant "direct[ed]" the other defendants was insufficient under
12 *Iqbal* because it was not supported by any "specific factual allegations" (alteration in
13 original)); *Nahid Kabir v. Flagstar Bank, FSB et al.*, 2016 WL 10999326, *3-4 (C.D.
14 Cal. May 11, 2016) (Staton, J.) (dismissing claim because plaintiff failed to allege facts
15 demonstrating the principal's control over its purported agent).

16   Moreover, the pleading requirements are more stringent in the context of fraud
17 claims, and Plaintiffs must therefore plead the basis for the agency relationship with
18 particularity. *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1061 (N.D. Cal. 2013) (citing
19 *Swartz*, 476 F.3d at 764-65); *see also Lachmund v. ADM Investor Servs., Inc.*, 191
20 F.3d 777, 782-83 (7th Cir. 1999). Specifically, the plaintiff must allege "that the agent
21 or apparent agent holds power to alter the legal relations between the principal and
22 third persons, and between the principal and the agent; that the agent is a fiduciary
23 with respect to matters within the scope of the agency; and that the principal has the
24 right to control the conduct of the agent with respect to matters entrusted to him."
25 *Jackson*, 931 F. Supp. 2d at 1061; *Buchanan v. Neighbors Van Lines*, 2010 WL
26 4916644, at *3 (C.D. Cal. Nov. 29, 2010) (dismissing claim where plaintiff failed to
27 plead elements of agency relationship); *Palomares v. Bear Stearns Residential Mortg.*
28

- 7 -

*Corp.*, 2008 WL 686683 at *4–5 (S.D. Cal. Mar. 13, 2008) (same); *Schaffer Family Investors, LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1047 (C.D. Cal. 2015) (same).

The SAC does not even attempt to satisfy these requirements. With respect to Defendant Chang, who allegedly served as the Executive Director and Co-President of Defendant COAMI (a subsidiary of Dong Yin, (SAC ¶ 5)), the SAC includes a conclusory allegation that Chang was acting as an agent of both COAMI and Dong Yin. (SAC ¶ 23.) But the only purportedly actionable conduct attributed to Chang alleged in the SAC is alleged to have been taken "in his capacity as COAMI's Executive Director and Co-President," not as an agent of Dong Yin. (SAC ¶ 83; *see also, id.* ¶¶ 108, 109, 115, 120, 125, 142, 144, 191, 195, 282 (Act Nos. 10, 22), 313 (Racketeering Act 6); *see Lennard v. Yeung*, 2012 WL 13006214, at *15 (C.D. Cal. Feb. 23, 2012) ("[P]laintiffs must plead facts demonstrating that when [defendant] allegedly conspired with [co-conspirator], he was acting in his capacity as owner and/or president of the corporate defendants.").)

The employee or director of a one company does not become the agent of another simply because a corporate relationship exists between the two companies. Indeed, an agency relationship is not formed "merely by owning a majority of a corporation's stock or by appointing its Board of Directors." *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1086 (C.D. Cal. 2012) (citation omitted), *aff'd*, 582 F. App'x 678 (9th Cir. 2014); *see also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (rejecting agency relationship even where the two corporations were run by same senior officers and directors, occupied same office, and shared same staff). Instead, "the parent company must have the right to substantially control its subsidiary's activities" before an agency relationship is established. *Williams*, 851 F.3d at 1024-25 (citation omitted). Plaintiffs have not satisfied their pleading burden here.

Similarly, with respect to Defendants Liu and Wong, neither of whom is alleged to be an employee of Dong Yin, the SAC simply states without factual support that

- 8 -

1   each was "acting as an agent and co-conspirator of DONG YIN." (SAC ¶ 5; *see also*
2   *id.* ¶¶ 27, 29, 34(h), (j), 169, 174, 275, 286(g), 290(f), 341, 350(d); *see also id.*
3   ¶¶ 203(a) (alleging no facts supporting agency relationship between Wong and Dong
4   Yin), 208 (alleging only that Wong requested input or review from fellow director
5   Defendant Fan), 212-215 (alleging no facts sufficient to support an agency relationship
6   between Dong Yin and Wong), 222 (alleging no facts sufficient to support an agency
7   relationship between Dong Yin and Wong).) While the SAC attempts to provide
8   additional support for its agency allegations regarding Wong by stating that Wong is
9   a *relative* of Xinyi Dong (SAC ¶¶ 27, 264), who in turn is alleged to be a Director of
10  Dong Yin and Amore, such a remote connection to Dong Yin is clearly insufficient to
11  plead an agency relationship as a matter of law. *See, e.g., Jackson*, 931 F. Supp. 2d at
12  1061 (requiring plaintiffs to allege with particularity the elements of agency).

13          With respect to Defendant Fan, the SAC attempts to allege an agency
14  relationship between non-employee Fan and Dong Yin by asserting generally that Fan
15  was an attorney and "representative" for Dong Yin. (SAC ¶¶ 5, 25, 80.) However, the
16  SAC does not allege an agency relationship with particularity or any factual support
17  between Fan and Dong Yin with respect to the Bronzelink transaction at issue. To the
18  contrary, the SAC explicitly alleges that Fan made statements or took actions *on behalf*
19  *of Bronzelink*. In fact, the SAC alleges that on February 18, 2016, Bronzelink issued
20  an authorization that Fan would serve as the authorized representative to sign the
21  agreements on behalf of Bronzelink in connection with its equity investment in GIP-
22  Cayman and that Fan "would lead the Bronzelink team." (SAC ¶¶ 116, 193.) The SAC
23  further alleges that Fan did in fact sign "the SPA, SHA and the SHA Amendment *on*
24  *behalf of Bronzelink*" on or about May 11, 2016. (SAC ¶¶ 147 (emphasis added), 282
25  (Act No. 23).) The other allegations regarding Fan's statements prior to and related to
26  the Bronzelink transaction either do not specify in what capacity he was acting or on
27  whose behalf (SAC 158), or state only in conclusory terms that Fan was acting as Dong
28  Yin's agent (SAC ¶ 149(a), 158, 214). And, as explained in Section III.D, allegations

- 9 -

describing Fan's conduct after the Bronzelink transaction closed or in connection with the terminated COSEIG transaction could not have proximately caused Plaintiffs' purported injuries.  But they also insufficiently plead an agency relationship with Dong Yin in any event.  (*See, e.g.*, SAC ¶¶ 93, 119 ("the COSEIG JVA was terminated"), 162, 169, 171, 180, 199, 203, 207, 208, 212, 214, 217, 221, 222, 223, 227, 228, 238, 239, 241, 244, 246, 255, 265, 266, 267.)

The SAC contains a smattering of other allegations relating to non-employee "consultants" or "representatives" of Dong Yin that similarly fail to sufficiently plead an agency relationship existed.  For example, the SAC alleges that non-employee Ivan Chow introduced himself as a "representative" of Dong Yin to Plaintiffs.  (SAC ¶ 92.) But not only do Plaintiffs fail to allege that Chow was Dong Yin's agent or set forth any facts supporting an agency relationship, his alleged involvement was limited solely to the terminated COSEIG transaction. (SAC ¶¶ 92-111, 119, 282 (Act Nos. 1, 2, 7, 8), 313.) The SAC similarly alleges that non-employee Henry Fan was a "paid advisor" or former "outside consultant" to Dong Yin. (SAC ¶¶ 112, 245.) Such allegations again fail to sufficiently plead an agency relationship existed between Dong Yin and Henry Fan.  Plaintiffs' reference to two purported Dong Yin "consultants" who allegedly visited California in November 2017 (*i.e.*, after the conclusion of the alleged fraudulent scheme) fares no differently.  Plaintiffs have failed to allege *any* facts that would sustain a finding that an agency relationship existed.  (SAC ¶ 277 (conclusorily describing the individuals as "consultants").)

In sum, Plaintiffs' claims and the Court's personal jurisdiction over Dong Yin depend entirely on the conduct and statements of Dong Yin's purported agents.  But the SAC does not sufficiently allege an agency relationship existed between these individuals (or their entities) and Dong Yin. Because the SAC fails to sufficiently allege Dong Yin's liability on an agency theory, the Court must dismiss the claims against Dong Yin for lack of personal jurisdiction and for failure to state a claim. *See*

1  *Neilson v. Union Bank of CA., N.A.*, 290 F. Supp. 2d. 1101, 1118 (C.D. Cal. Oct. 2003);

2  *Calvert v. Huckins*, 875 F. Supp. 674, 678-80 (E.D. Cal. 1995).

3  ## C.   The Court Lacks Personal Jurisdiction Over Dong Yin

4  On a motion to dismiss for lack of personal jurisdiction, a plaintiff "bears the

5  burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d

6  1011, 1015 (9th Cir. 2008). While a plaintiff need only make a prima facie showing of

7  jurisdictional facts, a "plaintiff may not simply rest on bare allegations of the

8  complaint." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citations and

9  alterations omitted). "[A] defendant must 'have certain minimum contacts' with the

10  forum state 'such that maintenance of the suit does not offend traditional notions of

11  fair play and substantial justice.'" *Id*. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S.

12  310, 316 (1945)).

13  A court's exercise of specific jurisdiction[3] "arises out of or relates to the

14  defendant's contacts with the forum." *Ranza*, 793 F.3d at 1068 (internal quotations

15  and modifications omitted) (quoting *Helicopteros Nacionales de Colombia, S.A. v.*

16  *Hall*, 466 U.S. 408, 414 n.8 (1984) (internal quotations and modifications omitted)).

17  Importantly, the "relationship between the defendant and the forum state must arise

18  out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v.*

19  *Fiore*, 571 U.S. 277, 284 (2014) (emphasis in original) (citation omitted). "[T]he

20  defendant's suit-related conduct must create a substantial connection with the forum

21  State." *Id.* at 284.  A court's "primary concern" is "the burden on the defendant."

22  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (citation

23  omitted).

24  In light of those cautions, specific jurisdiction is only appropriate where: "(1)

25  the defendant either purposefully directs its activities or purposefully avails itself of

26  the benefits afforded by the forum's laws; (2) the claim arises out of or relates to the

27  

28  [3] Plaintiffs conceded during the L.R. 7-3 conference that there was no general jurisdiction over Dong Yin.

SPECIALLY APPEARING DEFENDANT DONG YIN DEVELOPMENT (HOLDINGS) LIMITED'S MOTION
TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES

1  defendant's forum-related activities; and (3) the exercise of jurisdiction comports with
2  fair play and substantial justice, *i.e.*, it is reasonable." *Williams*, 851 F.3d at 1023
3  (internal quotations and modifications omitted). Plaintiffs cannot meet that test here.

4          1.    *Plaintiffs' Personal Jurisdiction Allegations Against Dong Yin*
5               *Are Based on Insufficiently Pleaded Agency Relationships.*

6        Just as Plaintiffs' failure to sufficiently plead an agency relationship between
7  Dong Yin and various non-employee individuals dooms their claims substantively,
8  that failure similarly strips any connection between Dong Yin and California.
9  Plaintiffs do not allege that Dong Yin *itself* had contacts with California; rather,
10  Plaintiffs' personal jurisdiction allegations regarding Dong Yin depend on imputing
11  the California contacts of Defendants Chang, Liu, Wong, and Fan to Dong Yin on an
12  agency theory.  (SAC ¶ 34 (focusing on California contacts of Chang, Liu, Wong, and
13  Fan, not Dong Yin itself).) And because the SAC fails to sufficiently plead an agency
14  relationship between any of these individuals and Dong Yin, let alone with
15  particularity, their contacts are not attributable to Dong Yin. Without the California
16  contacts of Chang, Liu, Wong, and Fan, the SAC is left with only a few scattered
17  references to Dong Yin insufficient to support personal jurisdiction.  (*See, e.g.*, SAC
18  ¶ 109 (Dong Yin executives attended a due diligence meeting in Dubai); SAC ¶ 112
19  (a "paid advisor to DONG YIN" attended a meeting in Washington, D.C.)). The Court
20  must therefore dismiss the claims against Dong Yin because the SAC fails to allege
21  *any* California contacts that can be attributed to Dong Yin.  *Walden*, 571 U.S. at 284.

22          2.    *Plaintiffs Cannot Establish Personal Jurisdiction Even with the*
23               *Contacts of Its Purported Agents*

24        Even were the Court to impute the California contacts of the insufficiently
25  pleaded agents to Dong Yin, Plaintiffs cannot establish personal jurisdiction where
26  (1) Dong Yin did not purposefully direct its conduct to California; (2) Dong Yin's
27  purported California contacts did not cause Plaintiffs' harm, and (3) the exercise of
28  jurisdiction would be unreasonable.

(a)   *Dong Yin Did Not Purposefully Direct Its Conduct to California*

Where, as here, the "case sounds in tort," courts employ the "purposeful direction" test. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). Purposeful direction requires Plaintiffs to demonstrate that Dong Yin "(1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*. The court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Id.* at 1070. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Plaintiffs' allegations do not satisfy these requirements.

None of the alleged conduct by Dong Yin's purported agents was purposefully directed or "expressly aimed" at California. Indeed, their few alleged activities prior to the closing of the Bronzelink transaction only tangentially involved California because Plaintiffs happened to be there. As more thoroughly addressed in the Motions to Dismiss filed by Defendants COAMI and Chang, the SAC alleges that, while in California, Plaintiff Youssefzadeh participated in a telephone call with Chang (who was allegedly in Washington, D.C. for the call) (SAC ¶ 115); Chang emailed Plaintiff Javed whom he allegedly knew was in California at the time (SAC ¶ ¶ 142, 191); and Chang spoke to Plaintiffs on the telephone while Plaintiffs were in California (SAC ¶ ¶ 144, 195).

Plaintiffs' fortuitous presence in California cannot support finding that Dong Yin purposefully directed its conduct to the state. *See Axiom*, 874 F.3d at 1070 (sending 55 emails to companies in California did not amount to sufficient contacts because they reflected only "the defendant's contacts with persons who reside [in the forum state]"); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144 (9th Cir. 2017) (finding alleged contacts with Arizona insufficient because "[a]ny links to Arizona,

SPECIALLY APPEARING DEFENDANT DONG YIN DEVELOPMENT (HOLDINGS) LIMITED'S MOTION
TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES

1  which included Defendants' communications with Plaintiffs by telephone and email .
2  . . , occurred only because it happened to be where Plaintiffs resided").

3      The only other activities by Dong Yin's purported agents that tangentially
4  involved California concerned the terminated COSEIG transaction or took place after
5  the Bronzelink transaction had already closed. (SAC ¶¶ 96-97, 100, 103, 207, 213,
6  221-22, 241, 243, 256). As explained below, Plaintiffs' claims and purported harm
7  cannot and do not arise from these limited forum-related activities.

8          *3.    Plaintiffs' Claims Do Not Arise from These Alleged Contacts*

9      Plaintiffs' claims do not arise out of or relate to the forum-related activities of
10 Dong Yin's purported agents. Plaintiffs bear the burden of establishing that they
11 "would not have suffered an injury 'but for' [Dong Yin's] forum-related conduct."
12 *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007); *see also Loral Terracom v.*
13 *Valley National Bank*, 49 F.3d 555, 561 (9th Cir.1995) (plaintiffs must show that "'but
14 for' the contacts between the defendant and the forum state, the cause of action would
15 not have arisen"). But the SAC fails to allege any "but for" forum-related conduct by
16 Dong Yin's purported agents.

17     Plaintiffs' claims center on injuries they allege to have suffered when they were
18 fraudulently induced to enter into the Bronzelink transaction.  Thus, forum-related
19 activities relating to a *different* transaction that never closed (*i.e.*, the COSEIG
20 transaction) are not the "but for" cause of Plaintiffs' alleged injuries. Similarly, forum-
21 related activities taking place *after* Plaintiffs entered into the Bronzelink transaction
22 cannot be the "but for" cause of Plaintiffs' alleged injuries. The alleged post-closing
23 activities did not induce Plaintiffs to enter into the Bronzelink transaction; the deal was
24 already done.  *See* Section III.D, *infra*; *see also Chapter 7 Tr. v. Gate Gourmet, Inc.*,
25 683 F.3d 1249, 1259 (11th Cir. 2012) ("[A]n effect cannot precede the cause.").

26     The only forum-related activities alleged that both concern the Bronzelink
27 transaction *and* took place before closing are Defendant Chang's emails and phone
28 calls to Plaintiffs while Plaintiffs were fortuitously in California. (SAC ¶ ¶ 115, 142,

- 14 -

144, 191, 195.) As set forth in Motions to Dismiss filed by Defendants COAMI and Chang, none of these activities were the "but for" cause of Plaintiffs' alleged injuries. In only one of those calls do Plaintiffs' even allege Chang made a false statement, and a California nexus exists only because Plaintiff Youssefzadeh participated in the call from California. (SAC ¶ 115.) Plaintiffs allege similar statements were made by others outside California. (*See, e.g.*, SAC ¶ 118 (concerning statements made in Washington, D.C.) Moreover, had Plaintiffs happened to participate in the call from another state, Plaintiffs' purported injuries would have been the same. Thus, Plaintiffs' claims would have arisen even without Chang's minimal "contacts" with California. Such fleeting forum-related conduct therefore cannot be the "but for" cause of the claims. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1085 (C.D. Cal. 2003) ("Plaintiffs' claims would have arisen notwithstanding certain contacts, those contacts are not relevant to the jurisdictional analysis.") (citing *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)); *Picot v. Western*, 780 F.3d 1206, 1215 (9th Cir. 2015).

### 4. The Exercise of Personal Jurisdiction over Dong Yin Would be Unreasonable

The exercise of personal jurisdiction over a defendant must also be "reasonable" under the Due Process Clause. "The reasonableness determination requires the consideration of several specific factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). These factors tip decidedly in Dong Yin's favor.

*First*, Dong Yin has not meaningfully interjected itself into California's affairs. Again, Plaintiffs do not allege Dong Yin itself has any contacts with California. They rely solely on the limited California contacts of non-employee individuals who are insufficiently alleged to be its agent. The majority of the negotiations and alleged misrepresentations occurred outside of California and related to an investment in a Grand Caymans corporation. *See* Section III.C.3, *supra*. These brief, scattered contacts with California do not constitute meaningful interjection. *See Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) ("The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise."); *see also Rongxiang Xu v. Nobel Assembly at Karolinska Institutet*, 2013 WL 9760036, at *5 (C.D. Cal. Nov. 20, 2013) (Staton, J.) ("[T]he Court finds only a minimal degree of purposeful interjection into the forum state.").

*Second*, the burden on Dong Yin to litigate complex fraud claims in a California court is severe. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have *significant weight* in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114 (1987) (emphasis added). Dong Yin's burden is particularly acute because it "has no ongoing presence in the United States or California." *GT Sec., Inc. v. Klastech GmbH*, 2014 WL 2928013, at *15 (N.D. Cal. June 27, 2014). Where, as here, a defendant from a foreign state "do[es] business only in that state and ha[s] minimal contacts with this forum … it would be significantly burdened by litigating [an] action in this forum." *Thomas v. Thomas*, 2015 WL 12681311, at *6 (C.D. Cal. May 8, 2015) (Staton, J.) (declining to exercise personal jurisdiction over Tennessee corporation).

*Third*, there is a significant conflict with the sovereignty of the People's Republic of China ("PRC"). "Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*,

*Inc.*, 1 F.3d 848, 852 (9th Cir. 1993).  Dong Yin's ownership by an agency of the PRC (SAC ¶ 5) heightens the affront to China's sovereignty.  *See Ins. Co. of N. Am.,* 649 F.2d at 1272 (noting the "seriousness of the affront to sovereignty in the present case [due to the] fact that the shipyard belongs to an agency of a foreign sovereign").

*Fourth*, California's interest in adjudicating the dispute is diminished because Plaintiffs have already agreed to arbitrate disputes related to Bronzelink's purchase of an equity stake in GIP Cayman.  While California may have an interest in ensuring that *a* forum is available for its residents, it does not have an interest in overriding a valid arbitration agreement so as to substitute itself for the forum already agreed to. *See* Dong Yin's concurrently filed Motion to Stay Pending Arbitration.

*Fifth*, the most efficient resolution of this dispute is what Plaintiffs have already agreed to: arbitration in Hong Kong.  Courts look "primarily at where the witnesses and the evidence are likely to be located." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993); *see also Rongxiang Xu*, 2013 WL 9760036, at *6 (concluding California was not the most efficient forum where relevant witnesses were located abroad). There can be no reasonable dispute that the vast majority of the relevant documents and witnesses are located in Hong Kong or China.

The practical reality of conducting cross-border discovery of documents held by corporations indirectly owned by the PRC similarly militates against a finding of jurisdiction.  Strict Chinese privacy laws would significantly impede and delay American litigation of this matter.  The State Department has recognized that "China has indicated that taking depositions . . . and obtaining other evidence in China for use in foreign courts may, as a general matter, only be accomplished through requests to its Central Authority under the Hague Evidence Convention."[4]  Indeed, China's broad

---

[4] U.S. Dep't of State, Bureau of Consular Affairs, Judicial Assistance Country Information, last updated March 29, 2018, *available at* https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/China.html.

SPECIALLY APPEARING DEFENDANT DONG YIN DEVELOPMENT (HOLDINGS) LIMITED'S MOTION
TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES

1  "State Secret Laws" are likely to embroil this court in complex, timely, and expensive
2  discovery battles.

3      *Sixth*, Hong Kong is available as an alternative forum to resolve these claims.
4  Plaintiffs cannot meet their "burden of proving the unavailability of an alternative
5  forum."  *Core-Vent*, 11 F.3d at 1490.  Not only have Plaintiffs agreed to resolve
6  disputes related to the Satellite Project in Hong Kong, Hong Kong "has uniformly been
7  considered an adequate forum for commercial disputes."  *Yung v. Lee*, 2002 WL
8  31008970, at *2 (S.D.N.Y. Sept. 5, 2002), *aff'd in relevant part*, 160 Fed. App'x 37
9  (2d Cir. 2005).

10     These factors tip sharply in favor of concluding that the exercise of personal
11 jurisdiction is unreasonable.

12     **D.    The Court Should Dismiss the RICO And Fraud Claims**

13     Dong Yin joins the arguments made by Defendant Milbank relating to Plaintiffs'
14 failure to sufficiently plead the RICO and fraud claims.[5]  In particular, Plaintiffs claims
15 are not ripe and fail to allege a concrete, non-speculative financial injury to their
16 business or property, impermissibly seek redress for harms allegedly suffered by GIP-
17 Cayman, fail to plead that the alleged fraud proximately caused any injury, and fail to
18 plead a pattern of racketeering activity.  *See* Milbank Motion to Dismiss at 8-19.

19     Plaintiffs' RICO claims against Dong Yin moreover fail because Plaintiffs have
20 failed to allege two predicate acts committed by Dong Yin.  *In re WellPoint, Inc. Out-
21 of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) ("Where
22 RICO is asserted against multiple defendants, a plaintiff must allege at least two
23 predicate acts by *each* defendant.") (emphasis in original).  And these predicate acts
24 must have been "both a but-for cause and a proximate cause of [Plaintiffs'] injury."
25 *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 873-74 (9th Cir.
26 2010).  Though well organized, Plaintiffs' table of purported predicate acts, (SAC

27 _____

28 [5] Dong Yin also joins these arguments with respect to Plaintiffs' Fourth Cause of
   Action alleging Dong Yin alone violated RICO relating to the "Victim Enterprise."

¶ 313) is a mirage: only the first twelve wire transmissions took place before Plaintiffs closed the Bronzelink transaction by which they claim to have suffered their damages. The post-transaction transmissions could not have caused Plaintiffs' injuries. *See Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d 216, 219 (S.D.N.Y. 2002) (holding it was "logically impossible" for "wire transmissions to the SEC that post-dated the last act of corporate pilferage" to have caused the injury); *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 739 (W.D. Ky. 2013) ("By definition, a 'predicate act' is one 'that must be completed before legal consequences can attach to it.'") (quoting Black's Law Dictionary 28 (2009)); *Ferguson v. Moeller*, 2016 WL 1106609, at *8 (W.D. Pa. Mar. 22, 2016) ("The alleged predicate acts…occurred after Plaintiffs had paid…Defendants, and thus, the RICO acts could not have caused those losses.).

Neither do the pre-transaction acts sustain Plaintiffs' RICO claim. Of the twelve acts, the first four relate to a *different* proposed transaction that was never consummated and therefore cannot have been either a but-for or proximate cause of Plaintiffs' injuries. (SAC ¶ 313 (Racketeering Acts One Through Four).) The other acts also do not support Plaintiffs' RICO claims against Dong Yin. Racketeering Act Six concerns Defendant Chang "in his capacity as COAMI's Executive Director and Co-President," where he is alleged to be making statements about future events and contractual relations that may or may not transpire. (*Id*. (Racketeering Act Six).) *See Richard P. v. Vista Del Mar Child Care Serv.*, 106 Cal. App. 3d 860, 865 (1980) ("Fraudulent representations, to constitute ground for relief, must be as to existing and material facts; predictions of future events are ordinarily considered nonactionable expressions of opinion."). Racketeering Act Nine concerns Henry Fan, also an individual for whom Plaintiffs have not sufficiently pleaded an agency relationship, where he is simply alleged to have emailed drafts of the SPA and SHA to Plaintiffs. (*Id*. (Racketeering Act Nine).) Racketeering Act Twelve concerns Defendant Fan, who is alleged to have been acting on behalf of Bronzelink in connection with the

- 19 -

Bronzelink transaction. (SAC ¶ 116.) His statements concern future events and Plaintiffs do not allege that Fan knew them to be false at the time he made them. The remaining acts concern statements or emails from an attorney at Milbank to Plaintiffs, and there is no allegation that Dong Yin authorized his statements or knew them to be false. Moreover, Racketeering Acts Seven and Eight could not have caused Plaintiffs any injury because they involve accurate statements of fact. *See* Milbank Motion to Dismiss at 18-19. Racketeering Acts Five, Ten, and Eleven are impermissibly vague and fail to allege any facts supporting the allegation that the statements were false at the time they were made or that Milbank knew them to be false. *Id*. Put simply, there are no acts of wire fraud by Dong Yin or its purported agents that could have caused Plaintiffs' injury, and the RICO claims must therefore be dismissed.

Plaintiffs' RICO and fraud claims against Dong Yin also fail because they presume without factual support that Dong Yin had a duty to disclose the terms of the Facility Agreement to Plaintiffs. Plaintiffs do not allege that they were parties to the Facility Agreement or that Dong Yin was a party to any agreement with Plaintiffs. Indeed, they have pleaded *no* facts that would support an inference that Dong Yin had a duty to disclose *anything* to Plaintiffs. "A non-disclosure, can support a fraud charge only 'when there exists an independent duty that has been breached by the person so charged.'" *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir. 2015) (quoting *United States v. Dowling*, 739 F.2d 1445, 1449 (9th Cir.1984), *rev'd on other grounds*, 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985)); *see also Williams v. Wraxall*, 33 Cal. App. 4th 120, 131 n.9 (1995) (holding that an action for fraudulent concealment requires that "the defendant must have been under a duty to disclose the [concealed] fact to the plaintiff"). "Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir.1987) (citing *Dowling*, 739 F.2d at 1449).

Thus, not only do Plaintiffs' RICO and fraud claims fail because they do not attribute any false statements to Dong Yin (or its purported agents) that proximately caused any cognizable harm to Plaintiffs, the claims also fail because Dong Yin did not owe a duty to disclose to Plaintiffs.

**E.      Plaintiffs' State Law Claims Should Be Dismissed**

The Court should dismiss Plaintiffs' federal claims and decline to exercise supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. *ScripsAmerica, Inc. v. Ironridge Global LLC*, 119 F. Supp. 3d 1213, 1265-66 (C.D. Cal. 2015). The state law claims should also be dismissed because they depend on Plaintiffs' insufficiently pleaded agency allegations, as well as for the following reasons:

> **1.      Neither Unjust Enrichment Nor Civil Conspiracy Are Standalone Claims**

As set forth in Defendant COAMI's Motion to Dismiss more fully (*see* COAMI Motion to Dismiss at []), neither unjust enrichment nor civil conspiracy are standalone claims under California law and must be dismissed.  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (unjust enrichment); *Navarrete v. Meyer*, 237 Cal. App. 4th 1276, 1291 (2015) (civil conspiracy).

> **2.      Plaintiffs Have Not Pleaded A Claim For Receipt of Stolen Property**

Plaintiffs have failed to plead a claim under California Penal Code § 496 for three reasons: (i) Plaintiffs have not pleaded that Dong Yin "received" any stolen property; (ii) Plaintiffs have not pleaded any damages; and (iii) Plaintiffs have alleged that Dong Yin itself stole the money and therefore cannot be liable for receiving it.

*First*, there is no allegation in the SAC that Dong Yin "received" any stolen property. Plaintiffs instead point to both tangible and intangible assets that they or GIP Cayman knowingly sold or provided to Bronzelink. (SAC ¶ 299 (including "control of the Satellite Project" and "a 47.25% ownership interest in GIP-Cayman).) Plaintiffs

- 21 -

have failed to allege with particularity that Bronzelink at any point transferred that property to Dong Yin. Because there is no allegation that Dong Yin itself took possession or title of any of the property, Plaintiffs' claim relies on a theory of imputing Bronzelink's control to Dong Yin. But the SAC does not plead any facts to support such an imputation. Moreover, because the property was not "stolen" when Bronzelink acquired it, the claim must be dismissed.

*Second*, as noted both above and in Milbank's Motion to Dismiss, Plaintiffs have not alleged any concrete damages, which are essential to plead a claim. *See* Cal. Penal Code § 496(c) (creating a cause of action of persons "injured" by a violation of Section 496(a)); *Cline v. Reetz-Laiolo*, 2018 WL 3159248, at *826 (N.D. Cal. Jun. 28, 2018) (noting that "a claim for civil theft must include actual damages").

*Third*, Plaintiffs have pleaded that Dong Yin itself stole, rather than received from others, property.  (SAC ¶ 299 ("DONG YIN and its agents stole and received the following property…").)  A § 496 claim does not lie where a plaintiff alleges that the defendant is "guilty of the primary, underlying fraud."  *Grouse River Outfitters Ltd. v. NetSuite, Inc.*, 2016 WL 5930273, at *15 (N.D. Cal. Oct. 12, 2016) (stressing that "when the property in question comes into the defendant's hands, *it must already have the character of having been stolen*") (emphasis in original); *Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 971 (2018) (same).

### 3. Plaintiffs Have Not Pleaded A Tortious Interference Claim

Interference with prospective economic advantage claims must be dismissed where, as here, damages are "wholly speculative." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 808 (1979) (denying recovery where the injury is "part of the plaintiff's ordinary business risk"); *see also Fifty-Six Hope Rd. v. Jammin Java Corp.* 2017 WL 2457487, at *12 (C.D. Cal. Jan. 25, 2017) (dismissing claim where "the prospective economic advantage [was] too speculative"). Plaintiffs allege that their economic relationship with Bronzelink was "substantially likely to result in … a share of the projected US$1.5 billion or more in anticipated profits when the Satellite Project was

successfully completed." (SAC ¶ 333.)  But as set forth in Milbank's Motion to Dismiss, Plaintiffs' claimed damages are wholly speculative where they depend on both the assertion that the Satellite Project would have been wildly successful, and the conclusion that it will not be now. Plaintiffs' claim also implausibly assumes, without factual support, that the Bronzelink transaction somehow would have successfully closed *and* resulted in substantial economic benefits *without* the financing from Dong Yin.

Plaintiffs' assertion that Dong Yin disrupted their economic relationship with Bronzelink via the Facility Agreement is moreover belied by their own pleading. Plaintiffs have alleged (insufficiently) that Dong Yin controlled Bronzelink *before* Plaintiffs contracted with Bronzelink. (SAC ¶ 120 ("Prior to entering into the Bronzelink JVA, [Plaintiffs] were falsely assured by DONG YIN's agents … that Bronzelink was fully independent of DONG YIN.")  Dong Yin could not have disrupted a relationship with an entity that Plaintiffs allege was merely a "fraudulent device" used by Dong Yin. (SAC ¶ 122.) *See Stiles v. Trader Joe's Co.*, 2017 WL 3084267, at *3 (C.D. Cal. Apr. 4, 2017) (dismissing a claim where plaintiffs had "plead[ed] themselves out of court by pleading particulars that show they have no legal claim").

### 4.   *Plaintiffs' UCL Claim Should Be Dismissed.*

Plaintiffs' UCL claim should be dismissed for the reasons set forth in the Milbank and COAMI Motions to Dismiss, including that the SAC does not adequately plead any unlawful conduct on the part of Dong Yin (as set forth above), does not plead a basis for restitutionary disgorgement, and is not based on representations that are likely to deceive the public. Moreover, Plaintiffs do not sufficiently allege that Dong Yin engaged in any conduct in California. Because the UCL applies only to conduct occurring in California, Plaintiffs' UCL claim as to Dong Yin must fail. *See Gross v. Symantec Corp.*, No. C 12-00154 CRB, 2012 WL 3116158, at *6 (N.D. Cal. July 31, 2012) ("[T]he location of the alleged conduct giving rise to liability controls

- 23 -

application of UCL, not the domicile of the plaintiff or defendant."); *Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, No. 09-5815 CW, 2010 WL 2198200, at *10 (N.D. Cal. May 28, 2010) ("The conduct of which ICD complains largely took place outside of California and, as a result, cannot provide a basis for its UCL claim.").

## IV.    **CONCLUSION**

For the reasons set forth above, Dong Yin respectfully requests that this Court grant Dong Yin's Motion and dismiss all claims against Dong Yin.

Dated:  September 21, 2018

HUESTON HENNIGAN LLP

By:  /s/ John C. Hueston
John C. Hueston
Attorneys for Specially Appearing
Defendant DONG YIN
DEVELOPMENT (HOLDINGS)
LIMITED