JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG　　　　　　　　　　　　　　　Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:　　ATTORNEYS PRESENT FOR DEFENDANT:

　　Not Present　　　　　　　　　　　　　　　　　　Not Present

**PROCEEDINGS:**　(IN CHAMBERS) ORDER GRANTING DEFENDANT DONG YIN'S MOTION TO STAY (Doc. 96) AND GRANTING PLAINTIFFS' *EX PARTE* APPLICATION TO FILE SUR REPLY (Doc. 132)

　　Before the Court is a Motion to Stay Pending Arbitration filed by Defendant Dong Yin Development (Holdings) Limited ("Dong Yin"). (Doc. 96.) Plaintiffs opposed. (Opp., Doc. 110.) Dong Yin replied. (Reply, Doc. 124.) Plaintiffs filed a sur reply. (Sur Reply, Ex. A to Doc. 132; *and see infra* at n. 1.) On January 18, 2019, the Court held a hearing on the Motion. For the reasons given below, the Court GRANTS the Motion.

**I.　　Background**

　　The parties are familiar with the facts underlying this dispute, which the Court has summarized in prior Orders in this case and *Emil Youssefzadeh et al. v. Global IP Cayman et al.*, No. 2:18-cv-02522-JLS-JCG (the "Related Case"). (*See, e.g.*, Order re Judicial Determination, Doc. 56; Order Compelling Arbitration, Doc. 30 in the Related Case.) The following account highlights certain facts particularly relevant to the instant Motion.

　　Plaintiffs are individuals and their closely-held corporate entities who endeavored to build and launch a communications satellite to provide internet access to underserved parts of Africa. (Second Amended Complaint, Doc. 68 ¶¶ 1, 7-9, 65.) To facilitate this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG          Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

project (the "Satellite Project"), Plaintiffs incorporated Global-IP Cayman ("GIP-Cayman"), to which they transferred assets, capital and intellectual property related to the Satellite Project. (*Id.* ¶¶ 18, 64, 73, 153.)

In early 2015, Plaintiffs sought to sell equity in GIP-Cayman to raise capital to finance the Satellite Project. (*Id.* ¶ 78.) In July 2015, Plaintiffs were approached by Dong Yin and its parent company, non-party China Orient Asset Management Company ("COAMC"), who expressed interest in financing the Satellite Project. (*Id.* ¶ 79.) Plaintiffs allege COAMC (and by extension, Dong Yin) are owned and controlled by the People's Republic of China ("PRC"). (*Id.*) After preliminary negotiations, Plaintiffs determined that COAMC or Dong Yin control of the Satellite Project would run afoul of various export control laws. (*Id.* ¶ 82.) Plaintiffs courted other investors and ultimately signed a memorandum of understanding with Huaxun Shenzhen/CCT Group ("CCTG") in September 2015. (*Id.* ¶¶ 83-88.) Shortly thereafter, however, CCTG backed out of the deal. (*Id.* ¶¶ 89-91.) Plaintiffs allege that COAMC and Dong Yin had pressured CCTG to withdraw. (*Id.* ¶ 91.)

In October 2015, Dong Yin advised Plaintiffs that it was prepared to finance an investment in GIP-Cayman by China Orient Smart Ecotech Investment Group Limited ("COSEIG"). (*Id.* ¶¶ 92-93.) Plaintiffs allege that they requested and received numerous and ample assurances from Dong Yin that COSEIG was independent and not owned or controlled by Dong Yin. (*Id.* ¶¶ 94-98.) Specifically, Plaintiffs sought and received assurances that (1) Dong Yin would act only as a lender; (2) COSEIG was truly independent; and (3) the investment and financing would be structured to leave GIP-Cayman free from PRC influence. (*Id.* ¶ 101.) In December 2015, Plaintiffs signed a Joint Venture Agreement ("JVA") with COSEIG by which—subject to due diligence and closing conditions—COSEIG would make a $175 million investment in GIP-Cayman in exchange for a 75% equity stake and appointment rights for six of the nine seats on the GIP-Cayman Board of Directors. (*Id.* ¶¶ 103-104.) During the course of due diligence inquiries, Plaintiffs allege that they received multiple assurances from Dong Yin and its agents that COSEIG was independent. (*Id.* ¶ 109.)

In February 2016, Dong Yin informed Plaintiffs that it would be financing an investment in GIP-Cayman by Bronzelink instead of moving forward with COSEIG. (*Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG                              Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

¶ 112.) Dong Yin represented that Bronzelink had some of the same Hong Kong-based owners as COSEIG and was similarly independent from Dong Yin. (*Id.* ¶ 113.) Through a number of instruments, COSEIG's rights and obligations under the original JVA were transferred to Bronzelink. (*Id.* ¶¶ 114, 116, 119, 147.) Throughout this process, Plaintiffs claim they received continued assurances of Bronzelink's independence from Dong Yin, including representations that the deal would not give Dong Yin control of GIP-Cayman and that Plaintiffs would retain operational oversight of the Satellite Project. (*Id.* ¶¶ 115, 118, 120, 121, 149.)

The culminating contracts were a Share Purchase Agreement ("SPA") and Shareholder Agreement ("SHA"), entered into by Plaintiffs, Bronzelink and GIP-Cayman in May 2016. (*Id.* ¶ 147.) These agreements transferred to Bronzelink a 75% controlling interest in GIP-Cayman, as well as the right to fill six of the nine seats on GIP-Cayman's Board of Directors. (*Id.* ¶¶ 151, 160; *and see* SHA, Ex. A to Friedberg Decl., Doc. 110-2 §§ 3.2-3.3.) Additionally, the SHA gave Bronzelink authority to select the Chairman of the GIP-Cayman Board of Directors and GIP-Cayman's Chief Financial Officer. (SAC ¶ 160; SHA §§ 3.5, 3.12.) Moreover, the SHA set forth the authority of the Board to act on behalf of GIP-Cayman, the process by which individual Directors could notice Board meetings, the definition of a quorum for Board action, and the voting requirements for particular types of Board action. (SHA §§ 3.6-3.9.)

In the months after closing the Bronzelink investment, Plaintiffs came to realize that Bronzelink was and always had been under Don Yin's control, and GIP-Cayman had thus also come under Dong Yin's control. (SAC ¶¶ 162-165, 190-228.) They further allege that COSEIG had also been merely a front for Dong Yin created to induce Plaintiffs into the original JVA. (*Id.* ¶ 99.)

Plaintiffs believed that Dong Yin's assertion of influence over GIP-Cayman and access to the Satellite Project—via Bronzelink—violated various export control laws. (*Id.* ¶¶ 229-235.) Plaintiffs allege that their attempts to raise these compliance issues with GIP-Cayman's Bronzelink-controlled (and thus Dong Yin-controlled) Board of Directors were rebuffed by Bronzelink and Dong Yin, who wielded their power on the GIP-Cayman Board to ultimately force Plaintiffs out of their executive roles at GIP-Cayman and any involvement in the Satellite Project. (*Id.* ¶¶ 236-263.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG                              Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

      Plaintiffs filed the instant action against Dong Yin and its alleged agents and co-conspirators seeking damages associated with Plaintiffs' ouster from GIP-Cayman and loss of control of the Satellite Project as a result of Defendants' alleged misconduct perpetrated to induce the various agreements by which Dong Yin took control of GIP-Cayman from Plaintiffs in purported violation of export control law. Specifically, Plaintiffs bring causes of action for (1) civil conspiracy; (2) fraud; (3) civil theft, Cal. Pen. Code § 496; (4)-(6) three counts of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(b)-(d), 1964(c); (7) interference with prospective economic advantage; (8) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 *et seq.*; and (9) unjust enrichment. (SAC at 1-2.)

      As discussed at length in the Court's July 30, 2018 Order Compelling Arbitration in the Related Case, the SHA contains a broad and enforceable arbitration provision requiring Plaintiffs to arbitrate "any dispute" between them and Bronzelink or GIP-Cayman, neither of which is party to this action. (Order Compelling Arbitration, Doc. 30 in the Related Case; SHA § 13.2.) None of the Defendants in this action, however, are signatories to the SHA; Plaintiffs are suing signatory GIP-Cayman only in the Related Case and are not suing Bronzelink at all.

      On September 21, 2018, Dong Yin filed the instant Motion seeking to stay this action under Section 3 of the Federal Arbitration Act, as codified at 9 U.S.C. § 3 ("§ 3"). At that time, no arbitration was pending between Plaintiffs and any other signatory to the SHA. On November 6, 2018, however, Bronzelink filed an Arbitration Demand against Plaintiffs under the terms of the SHA.[1] (Arbitration Demand, Ex. A to Martin Decl., Doc. 120-1.)

---

[1] The Arbitration Demand was filed several days *after* Plaintiffs filed their opposition to the instant Motion. (*See* Sur Reply at 5.) Thus, the Court hereby GRANTS Plaintiffs' *Ex Parte* Application for leave to file a sur reply (Doc. 132) to address this change in circumstance. The Court deems the memorandum attached to said *Ex Parte* Application to be a properly filed sur reply and considers the arguments therein for purposes of deciding the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG                              Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

## II.     Discussion

###      A.     The Federal Arbitration Act

The Court begins with the text of the statute:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The statute is clear: where a suit is upon an issue "referable to arbitration" under an arbitration agreement, a stay of such suit is mandatory.

This Motion presents the following questions: (1) Does § 3 permit a litigation defendant to invoke a mandatory stay of the litigation where the litigation plaintiff is a signatory to the underlying arbitration agreement but the invoking defendant is not a signatory to that agreement? (2) If so, under what circumstances?

The Supreme Court has addressed and answered the first question. A non-signatory party may seek a stay pursuant to § 3 "if the relevant state contract law allows him to enforce the [arbitration] agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Hence, the Court turns to the second question: whether California law empowers Dong Yin to enforce the arbitration agreement in the SHA against Plaintiffs (and, in turn, invoke a § 3 stay).[2]

---

[2] The SHA provides that its terms "shall be governed by and construed in accordance with the laws of England and Wales." (SHA § 13.1.) Regardless of any such choice-of-law provision, however, the Court applies law of the forum state (California) absent a showing by the parties that (1) law of the foreign state materially differs from the forum state; (2) the foreign state has an interest in having its laws applied; and (3) the foreign state would be more impaired by not having its laws applied than would the forum state. *In re Henson*, 869 F.3d 1052, 1059-60 (9th

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG                      Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

### B. California Law

Dong Yin argues that California's doctrine of equitable estoppel provides for its enforcement of the arbitration agreement. (Mot. at 5; Reply at 6-9.)

"California law permits non-signatories to invoke arbitration agreements in limited circumstances under the doctrine of equitable estoppel." *Henson*, 869 F.3d at 1060. "The theory behind equitable estoppel is that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" *Id.* (quoting *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013)); *and see Goldman v. KPMG LLP*, 173 Cal. App. 4th 209 (2009).

The Ninth Circuit has "adopted as a controlling statement of California law the equitable estoppel rule set forth in *Goldman v. KPMG LLP*." *Murphy*, 724 F.3d at 1229 That is:

> Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013) (citing *Goldman*, 173 Cal. App. 4th at 219, 221) (internal citations omitted). The Court addresses each of the two *Goldman* circumstances in turn.

---

Cir. 2017); *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001). Neither party attempts such a showing.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG                                                   Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

### 1. Reliance

The first circumstance requires more than "merely making reference to an agreement with an arbitration clause . . . Equitable estoppel applies [only] when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Goldman*, 173 Cal. App. 4th at 218 (internal quotation marks omitted). Hence, Plaintiffs are equitably estopped from pursuing claims against Dong Yin insofar as they "seek to hold [Dong Yin] liable pursuant to duties imposed by the [SHA]." *Id.* at 220.

In *Murphy*, consumer plaintiffs purchased satellite television equipment from a retailer. 724 F.3d at 1223. The equipment was specific to a certain service provider. *Id.* Although the plaintiffs believed themselves to be purchasing the equipment outright, a "purchase" from the retailer actually entered the purchaser into a lease of the equipment from the service provider. *Id.* Separately, the plaintiffs entered into customer agreements with the service provider for television service. *Id.* at 1224. The customer agreements contained arbitration provisions. *Id.* When the plaintiffs brought claims against both the service provider and the retailer alleging that the leases were unlawful—including allegations that the retailer misrepresented the lease transaction as a "sale"—the non-signatory retailer attempted to invoke the arbitration provision in the plaintiffs' customer agreements with the service provider. *Id.* Reversing the district court's order compelling plaintiffs to arbitrate their claims against the retailer, the Ninth Circuit found that such claims "ha[d] nothing to do with the [c]ustomer [a]greement[s]." *Id.* at 1230. The plaintiffs were not seeking to enforce the customer agreements against the retailer; their claims relied solely on state consumer protection laws against misrepresentation. *Id.* at 1230-31 (citing *Kramer*, 705 F.3d at 1130-32). Indeed, the Ninth Circuit noted that the plaintiffs could have sued the retailer "regardless of whether or not they signed largely unrelated contracts with [the service provider]." *Id.* at 1231.

Similarly, in *Henson*, cellular and data subscribers entered customer agreements with a network provider. 869 F.3d at 1056. These agreements contained arbitration provisions. *Id.* The provider had a separate licensing agreement with an advertiser that allowed the advertiser to use the network to target subscribers. *Id.* The subscribers sued

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG                                            Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

the advertiser for improperly collecting their data in contravention of state consumer protection and privacy laws. *Id.* at 1056-57. The non-signatory advertiser attempted to invoke the arbitration provision in the subscribers' customer agreements with the network provider. *Id.* at 1057. Vacating the district court's order compelling arbitration, the Ninth Circuit found that the first *Goldman* condition did not apply because the subscribers claims did not "rely on the [c]ustomer [a]greement[s] or attempt to seek any benefit from [their] terms." *Id.* at 1061. As in *Murphy*, the subscribers' claims could have been brought even if the subscribers had never signed the customer agreements. *Id.*

In contrast, plaintiff pharmacies in *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.* brought trade-secret misappropriation claims against a group of affiliate prescription drug benefit claims administrators. 748 F.3d 249, 254 (5th Cir. 2014). The pharmacies had provider agreements with only one of the defendant affiliates, as well as with one non-party affiliate. *Id.* Under the provider agreements, the pharmacies would fulfill patient prescriptions for claims administered by the affiliates at discounted prices in exchange for access to the affiliates' patient network. *Id.* at 255. The provider agreements also contained an arbitration clause. *Id.* at 254. The affiliates moved to compel arbitration of all of the plaintiffs' claims, including those against non-signatory affiliates. *Id.* at 254-55. Applying California law, vis-à-vis *Goldman*, the Fifth Circuit held that equitable estoppel applied, finding that the pharmacies' "'claims against the nonsignatory [affiliates] are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause.' The [pharmacies'] trade-secret misappropriation claim, for instance, alleges that the [affiliates] misused patient and prescription information. However, this information would not have been provided but for the [pharmacies'] participation in the [affiliates'] network pursuant to the [p]rovider [a]greement[s]." *Id.* at 260-61 (quoting *Goldman*, 173 Cal. App. 4th at 219) (internal citation omitted); *and see Muecke Co. v. CVS Caremark Corp.*, 615 F. App'x 837, 842 (5th Cir. 2015) (applying *Goldman* in a related case and finding "[t]he only way to determine how the defendants received the information and the manner in which they were allowed to use it is by referring to the provider agreements").

The instant case more resembles *Crawford* than it does *Murphy* or *Henson*. Plaintiffs' claims are not incidental to the arbitration-mandating SHA. Rather, Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG                              Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

allege precisely that they did not receive the benefits of a bargain *as manifested in the terms of the SHA*. Plaintiffs allege that their injuries stem from loss of control of GIP-Cayman and the Satellite Project. Such loss would not have occurred but for the SHA. That is, the only way to trace how Dong Yin wrested control from Plaintiffs is through the terms of the SHA. Indeed, Plaintiffs explicitly allege to have signed the SHA in reliance on the false representations of Dong Yin. (SAC at 87.) Inasmuch as Plaintiffs wield such reliance as an element of their fraud-based claims, those claims flow from an assertion of SHA-based contract rights and therefore allow non-signatory Dong Yin to invoke equitable estoppel.

Moreover, the Ninth Circuit noted that cases like *Murphy* and *Henson*, in which "plaintiffs seek the protection of consumer protection laws against misconduct that is unrelated to any contract except to the extent that a customer service agreement is an artifact of the consumer-provider relationship itself," stand in "obvious contrast" to cases in which equitable estoppel is invoked in response to purely contract-based causes of action. *Murphy*, 724 F.3d at 1231, n. 7 (citing *Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal. App. 4th 1705, 1717-18 (2003) (applying equitable estoppel to a plaintiff's claims that turned on an alleged breach of the underlying contract and fraud in obtaining it)). Here, Plaintiffs do not assert any claims that could be brought without the existence of the SHA; each cause of action stems from incongruity between expectations formed during contract negotiations and the actual effects of the resulting written agreement.

### 2. Substantial Interdependence

Regarding the second *Goldman* route to contractual enforcement by a non-signatory, "the doctrine of equitable estoppel may apply in certain cases where a signatory to an arbitration agreement attempts to evade arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *Murphy*, 724 F.3d at 1231 (internal quotation marks omitted); *and see Henson*, 869 F.3d at 1061. The analysis here is much the same as under the first test, though the second circumstance casts a wider net by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG                                                  Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

allowing a non-signatory defendant to invoke equitable estoppel where the claims against it are "inextricably bound up with[] the terms or duties of the agreement containing the arbitration clause," even if they do not flow directly from the plaintiff's explicit assertion of contractual rights. *Goldman*, 173 Cal. App. 4th at 221. "[M]ere allegations of collusive behavior between signatories and nonsignatories to a contract are not enough," however. *Id.* at 223. "It is the relationship of the *claims*, not merely the collusive behavior of the signatory and nonsignatory parties, that is key." *Id*. (emphasis original).

If the first *Goldman* condition is present here, the second is doubly so. Plaintiffs' claims against Dong Yin stem from allegations of a concerted effort by Dong Yin, Bronzelink, and others to wrest control of GIP-Cayman and the Satellite Project from Plaintiffs. Far more than allegations of parallel misconduct resulting in discrete injuries to Plaintiffs—and thus discrete *claims*—Plaintiffs allege a single scheme to achieve a single aim. As described above, these allegations—as to both signatory and non-signatory co-conspirators—center around the rights and obligations created by the SHA. In essence, Plaintiffs allege that Dong Yin played a shell game with shell companies to surreptitiously seize control of GIP-Cayman and the Satellite Project knowing that Plaintiffs would never agree to cede such control because of regulatory concerns. These games, however, were merely lead-up to the instrument by which the conspiracy is accused of concretizing Plaintiffs' injury: the SHA. That Bronzelink is the sole co-conspirator to ultimately sign that instrument does not create a meaningful distinction in the nature of Plaintiffs' respective claims against each alleged co-conspirator. Thus Plaintiffs' claims against non-signatory Dong Yin "are based on the same facts and are inherently inseparable from arbitrable claims against signatory [Bronzelink]." *Murphy*, 724 F.3d at 1231.

### C.    Effect of *Yang v. Majestic Blue Fisheries*

Plaintiffs argue Dong Yin is foreclosed by *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996 (9th Cir. 2017) from pursuing a remedy based on equitable estoppel. (Opp. at 14-15.) In *Yang*, the Ninth Circuit rejected a non-signatory's attempt to compel arbitration under a theory of equitable estoppel because the United States is party to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG                                                      Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, which governs "arbitration agreements entered into by foreign entities or individuals" and "does not allow non-signatories or non-parties to compel arbitration" under such agreements. *Yang*, 876 F.3d at 999-1001. *Yang*, however, precludes only the *remedy* of actual arbitration. Nothing in *Yang* suggests that *alternative equitable relief*, such as a stay, runs afoul of the Convention. To the contrary, the Court agrees with Dong Yin that the weight of authority demonstrates that § 3 stays are proper where the arbitration agreement at issue is governed by the Convention. (*See* Reply at 5-6 (citing, *e.g.*, *Reid v. Doe Run Resources Corp.*, 701 F.3d 840, 845-46 (8th Cir. 2012).)

### D.    Nature of the Bronzelink Arbitration

In their sur reply, Plaintiffs argue that their pending arbitration with Bronzelink does not implicate the issues disputed in this action. (Sur Reply at 4-6.) They argue that (1) Bronzelink's remedy in arbitration is limited by contract to a transfer of shares (a remedy that Plaintiffs argue is easily siloed from their own prayer for monetary damages) and (2), more fundamentally, the Arbitration Demand alleges a discrete *breach of contract* by Plaintiffs against non-party Bronzelink, whereas Plaintiffs' claims against party Defendants here arise from *fraud antecedent to the contract*. *Id.*

These arguments are unavailing. As discussed above, although Plaintiffs allege a fraud stretching far back in time, their ultimate injuries are the precipitate of contractual rights and obligations manifested in the SHA. Hence, "[Plaintiffs'] argument based on the differences in [their] legal and equitable theories is not a plausible defense to this [stay]." *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 345 (5th Cir. 2004). "Fundamentally, we have one dispute." *Id.*[3]

---

[3] Prior to *Arthur Andersen*'s direction that lower courts look to state law in determining when non-signatory litigants can invoke § 3 stays, many federal courts followed *Waste Management* and its progeny in employing a three-factor test "for invoking § 3 on the application of a non-signatory: 1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be 'inherently inseparable'; and 3) the litigation must have a 'critical impact' on the arbitration." 372 F.3d at 343. "Courts determining whether a particular claim falls within the scope of the arbitration agreement focus on factual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:18-cv-01269-JLS-JCG                                                      Date: February 15, 2019
Title: STM Atlantic N.V. et al. v. Dong Yin Development Holdings Limited et al.

### III.   Conclusion

For the foregoing reasons, the Court GRANTS Dong Yin's Motion to Stay Pending Arbitration.  The Court STAYS the proceedings pending arbitration between Plaintiffs and Bronzelink.  Plaintiffs are ORDERED to file a status report at the earlier of six months from the date of this Order or within ten (10) days of the completion of arbitration.  This action shall remain stayed until further order of the Court.

Initials of Preparer:  tg

---

allegations in the complaint rather than the legal causes of action asserted." *Id.* at 344 (internal quotation marks omitted).  This test closely resembles the *Goldman* test for equitable estoppel under California law.  Hence, though not controlling decisions of California law, the *Waste Management* line of cases are persuasive insofar as they underscore the propriety of a § 3 stay in this case.  Such persuasiveness is bolstered by continued reliance of other district courts in California on *Waste Management* to implement § 3 and the absence of contrary suggestion by the Ninth Circuit.  *See, e.g.*, *CPB Contractors Pty Ltd. v. Chevron Corp.*, 2017 WL 7310776, at *5 (N.D. Cal. Jan. 17, 2017); *Sharp Corp. v. Hisense USA Corp.*, 2017 WL 6017897, at *5 (N.D. Cal. Dec. 5, 2017).